1  WILLIAM J. FRIMEL (Bar No. 160287)
   Seubert French Frimel & Warner LLP
2  1075 Curtis Street
   Menlo Park, CA  94025
3  Tel:  650.322.3048
   Fax:  650.833.2976
4

5  Attorneys for Respondent
   GLASSDOOR, INC.
6

7

8                  UNITED STATES DISTRICT COURT

9

10                NORTHERN DISTRICT OF CALIFORNIA

11

12                   SAN FRANCISCO DIVISION

13  | In Re: Petition for Judicial Assistance for | Misc. Case No. 3:16-mc-80150-JSC |
    the Issuance of a Subpoena Pursuant to 28
14  U.S.C. § 1782 to Obtain Discovery for Use | **RESPONDENT GLASSDOOR, INC.'S**
    in a Foreign Proceeding. | **OPPOSITION TO PETITIONERS**
15                                            | **DIGITAL SHAPE TECHNOLOGIES,**
    DIGITAL SHAPE TECHNOLOGIES, | **INC.'S AND RADOMIR NIKOLAJEV'S**
16  INC. and RADOMIR NIKOLAJEV, | **MOTION TO COMPEL PRODUCTION OF**
                                              | **DOCUMENTS**
17          Petitioners.
                                              | Hearing Date:  October 6, 2016
18  v.                                        | Time:  9:00 a.m.
                                              | Judge:  Hon. Jacqueline Scott Corley
19  GLASSDOOR, INC.,                          | Courtroom:  F

20          Respondent.

21

22

23

24

25

26

27

28

## **<u>TABLE OF CONTENTS</u>** <span style="float:right"><u>Page(s)</u></span>

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 5

ARGUMENT ................................................................................................................. 8

I.  THIS COURT IS NOT BOUND BY THE QUEBEC ORDER ........................... 9

   A.  This Court Has Discretion to Depart from the Quebec Court's Conclusions ... 9

   B.  The Quebec Court Could Not Exercise Personal Jurisdiction over Glassdoor ... 10

II.  PETITIONERS' MOTION SHOULD BE DENIED AS TO REQUEST NO. 3 ... 12

   A.  Petitioners Do Not Need Mikulec's E-Mail and IP Addresses Because Petitioners Already Know that She Authored the Review ... 12

   B.  To Require Production of Mikulec's E-Mail and IP Addresses, Petitioners Must State a Prima Facie Case of Defamation, but Fail to Do So ... 15

      1.  Petitioners must establish a prima facie case of defamation ... 15

         a.  Canadian defamation law ... 16

         b.  United States defamation law ... 17

         c.  Protections under the Federal Rules of Civil Procedure ... 18

      2.  Petitioners cannot make the requisite prima facie case ... 18

III.  PETITIONERS' MOTION SHOULD BE DENIED AS TO REQUEST NO. 4 ... 22

   A.  Ordering Glassdoor to Produce the IP Addresses of Individuals Who Read the Review Would Violate both Canadian and United States Law ... 22

      1.  Glassdoor's users' IP addresses can be used, and Petitioners plainly intend to use them, to learn the identities of Glassdoor's users ... 22

      2.  Disclosing Glassdoor's readers' IP addresses to Petitioners would violate those readers' privacy rights ... 23

RESPONDENT GLASSDOOR, INC.'S OPPOSITION TO MOTION TO COMPEL

1

2

B. The Statistics Sought Constitute Glassdoor's Confidential and Proprietary
Business Information ......................................................................................... 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1654776 Ontario Ltd. v. Stewart*, 2013 ONCA 184 (CanLII)   16

*Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681 (S.D. Fla. 2011)   12-13

*Bank of Montreal v. Kough*, 430 F. Supp. 1243 (N.D. Cal. 1977)   10

*Breaking Glass Pictures, LLC v. Doe*, No. CV–13–00599, 2013 WL 3805637 (D. Ariz. Jun. 22, 2013)   22-23

*Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955 (N.D. Cal. 2015)   14

*Catlin v. U.S.*, 324 U.S. 229 (1945)   9

*Chevron Corp. v. Donziger*, No. 12-mc-65, 2013 WL 3228753 (N.D.N.Y. Jun. 15, 2013)   2

*In re Civil Rogatory Ltrs.*, 640 F. Supp. 243 (S.D. Tex. 1986)   10

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999)   21-22

*Columbia Ins. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999)   18

*Comcast Cable Comms., LLC v. Hourani*, No. 15-cv-1724, 2016 WL 2992053 (D.D.C. May 23, 2016)   2, 9, 13

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997)   11

*Desjean v. Intermix Media Inc.*, 2006 FCJ 1395 (CanLII)   10-11

*Doe v. 2TheMart.Com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001)   15

*Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010)   17

*Fers et metaux americains, s.e.c. c. Picard*, 2013 QCCA 2255 (CanLII)   16

*Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005)   14

*Gagne v. McKay*, 2014 QCCS 2281 (CanLII)   19-21

*Global Telemedia Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001)   20

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006)   25

*Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005)   18

RESPONDENT GLASSDOOR, INC.'S OPPOSITION TO MOTION TO COMPEL

*Hilton v. Guyot*, 159 U.S. 113 (1895) — 9

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) — 4, 8, 12, 18

*In re iPhone Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) — 14

*IPCom GMBH & Co. v. Apple Inc.*, 61 F. Supp. 3d 919 (N.D. Cal. 2014) — 8

*Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198 (C.D. Cal. 2004) — 4, 19

*In re Ex Parte App. of Jommi*, No. C 13-80212, 2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) — 18

*Kechara House Buddhist Ass'n. Malaysia v. Does*, No. 15–cv–00332, 2015 WL 5538999 (N.D. Cal. Sept. 18, 2015) — 19

*In re King.com Ltd.*, No. 16-mc-80070, 2016 WL 4364286 (N.D. Cal. Aug. 16, 2016) — 5, 25

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) — 20, 21

*In re App. of Lazaridis*, 865 F. Supp. 2d 521 (D. N.J. 2011) — 13, 15, 23

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) — 14

*McVicker v. King,* 266 F.R.D. 92 (W.D. Pa. 2010) — 15, 24

*In re Metallgesellschaft*, 121 F.3d 77 (2d Cir. 1997) — 17

*In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006) — 13, 15

*Morris v. Johnson*, 2011 ONSC 3996 (CanLII) — 16, 19

*Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581 (D. Ariz. 2003) — 9

*Music Grp. Macao Comm. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015) — 4, 18, 20

*New Sensations, Inc. v. Does 1-306*, No. 2:12-cv-1885, 2012 WL 5031651 (E.D. Cal. Oct. 17, 2012) — 5, 22

*In re Application of IPC Do Nordeste, LTDA*, No. 12–50624, 2012 WL 4448886 (E.D. Mich. Sept. 25, 2012) — 3, 12, 13, 15

*In re App. of Ontario Principals' Counsel*, No. MC-14-00050, 2014 WL 3845082
(D. Ariz. Aug. 1, 2014) ........................................................................................ 5, 24

*Osario v. Harza Eng'g. Co.,* 890 F. Supp. 750 (N.D. Ill. 1995) ........................... 3, 10

*Piping Rock Ptnrs. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957 (N.D. Cal.
2013) ..................................................................................................................... 19

*Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008) .................................. 14

*In re Application of Schmitz*, 259 F. Supp. 2d 294 (S.D.N.Y. 2003) ................... 17

*Sergeeva v. Tripleton Int'l. Ltd.*, --- F.3d ----, 2016 WL 4435616 (11th Cir. 2016) ... 8

*Shell Oil Co. v. Franco*, No. CV 03-8846, 2005 WL 6184247 (C.D. Cal. Nov. 10,
2005) ................................................................................................................... 3, 10

*Sidense Corp. v. Kilopass Tech. Inc.*, No. C 11–04112, 2012 WL 3545289 (N.D.
Cal. Aug. 16, 2012) .............................................................................................. 22

*In re Sveaas*, 249 F.R.D. 96 (S.D.N.Y. 2008) ....................................................... 18

*Transat Tours Canada Inc. v. Tescor, S.A.*, 2007 SCC 20 (CanLII) ..................... 11

*Underwager v. Channel 9 Australia*, 69 F.3d 361 (9th Cir. 1995) ........................ 20

*United Kingdom v. United States*, 238 F.3d 1312 (11th Cir. 2001) ....................... 8, 9

*Warman v. Wilkins-Fournier*, 2010 ONSC 2126 (CanLII) .................................... 4, 16

*ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 790 (N.D. Cal. 2010) ............... 21

**Statutes**

28 U.S.C. § 1782 ..................................................................................................... 1

Quebec Civ. Code Art. 3148 ................................................................................. 7, 11

### INTRODUCTION

Petitioners are the plaintiffs in a Quebec, Canada defamation lawsuit (the "Quebec Action") regarding a critical review of DST posted on glassdoor.ca, an employer review website operated by Respondent Glassdoor, Inc. ("Glassdoor").  Without serving a Canadian subpoena or any other form of discovery on Glassdoor, which is headquartered in California and a nonparty to the Quebec Action, Petitioners obtained an order from the Quebec court (the "Quebec Order") purporting to compel Glassdoor to produce identifying information concerning not only people who anonymously *posted* allegedly defamatory statements on glassdoor.ca, but also users who did nothing more than *read* those statements.  Petitioners have now, under 28 U.S.C. § 1782, brought this motion to compel Glassdoor to provide the information ordered produced by the Quebec court, claiming the Quebec Order is binding on this Court even though Glassdoor has no contacts with Canada and plainly is not subject to personal jurisdiction there.  Section 1782 does not authorize the approach Petitioners have taken, and their motion should be denied.

Glassdoor's principal website, glassdoor.com, provides a forum for current and former employees of companies to anonymously voice opinions regarding those businesses.  An employee can express an opinion about an employer on glassdoor.com by posting a "review" assigning the employer between one and five stars in a number of categories and discussing the employer's "pros and cons."  Glassdoor also operates a site with the uniform resource locator ("URL"), or web address, "glassdoor.ca," which is a "mirror" of glassdoor.com, meaning its content is substantially identical to that of glassdoor.com.  On March 7, 2013, an individual anonymously posted a review of DST (the "Review") on glassdoor.ca.  The review criticized DST in exaggerated, emotionally charged terms, stating that DST is a "[h]orrible place" characterized by "[e]xtreme paranoia," with "no policies or structure" and "no communication." (Decl. of Thomas O'Brien, Sept. 8, 2016 ("O'Brien Decl."), Exh. A.)  The reviewer advised DST's management to "[t]reat treat [sic] staff better" and not to "treat them like trained monkeys," and to "[g]et a grip on the paranoia."  (*Id.*)

The defendant in the Quebec Action is Kelly Mikulec, a former employee of DST whom Petitioners claim posted the Review.  Without serving a Canadian subpoena or any other form of

discovery, Petitioners' counsel wrote to Glassdoor asking for, *inter alia*, Mikulec's e-mail and Internet Protocol ("IP") addresses,[1] the IP addresses of glassdoor.com users who read the Review, and statistics regarding the number and locations of those readers. When Glassdoor advised Petitioners that it would not, in response to their informal request, turn over private and nonpublic information regarding its users, Petitioners moved to compel production of that and other information in the Quebec court. As Glassdoor has no employees or assets, and does no business, in Quebec, and thus is not subject to jurisdiction there, Glassdoor did not appear in the hearing on Petitioners' motion, and the Quebec court entered an order purporting to require Glassdoor to produce the information sought. This Court granted Petitioners' *ex parte* application to serve a subpoena seeking the information ordered produced by the Quebec court, allowing for the possibility that Glassdoor could later "contest the subpoena if it has a good faith basis to do so." (Ord. Granting Req. for Ord. to Conduct Discovery, Jul. 20, 2016, Dkt No. 4 ("Jul. 20 Order"), at 6.) The parties reached a resolution regarding three of the five Requests for Production in the subpoena, and Petitioners now move to compel Glassdoor to respond to the remaining two.

As an initial matter, Petitioners' suggestion that the Quebec Order is "preclusive" is incorrect. District Courts have discretion regarding whether to grant the discovery requested in a Section 1782 application, including when a foreign court has ordered the discovery sought. *See, e.g., Comcast Cable Comms., LLC v. Hourani*, No. 15-cv-1724, 2016 WL 2992053, *5 (D.D.C. May 23, 2016) (court "exercise[d] its discretion to deny the request for a § 1782 enforcement order" enforcing English court's order requiring "release of . . . identifying information" regarding Comcast subscriber, because "the U.K. Order seeks information that is not relevant to the allegations of the U.K. complaint"). Contrary to Petitioners' assertions, the mere fact that the Quebec court referred to its order as a "judgment" does not alter the analysis. The Quebec Order is not a "judgment" in any accepted sense of the term, as it is an interlocutory discovery order that does not concern the merits of Petitioners' defamation claim. But even if the Quebec Order is a

---

[1] "An Internet Protocol address (or 'IP address') is a numeric value used to identify the network location of a computer or set of computers on the Internet. Every computer on the Internet needs to have an IP address in order to communicate with other computers on the internet." *Chevron Corp. v. Donziger*, No. 12-mc-65, 2013 WL 3228753, *2 (N.D.N.Y. Jun. 15, 2013).

judgment, it is not enforceable in this Court, as the Quebec court lacked personal jurisdiction over Glassdoor.  *See, e.g., Shell Oil Co. v. Franco*, No. CV 03-8846, 2005 WL 6184247, *6 (C.D. Cal. Nov. 10, 2005) ("[A] foreign judgment is unenforceable if the foreign court's personal jurisdiction over the defendant was not, 'at a minimum, in compliance with the requirements of traditional notions of fair play and substantial justice'").  Petitioners offer no argument to the contrary — in fact, they implicitly concede the Quebec court's lack of jurisdiction by recognizing that "the evidence may be unattainable absent the aid of this Court."  (Pets.' *Ex Parte* App. for Order Pursuant to 28 U.S.C. § 1782, Jul. 15, 2016, Dkt. No. 1 ("*Ex Parte* App.") at 1.)  Moreover, Section 1782 cannot be used to enforce foreign judgments in any event — only to obtain discovery in aid of ongoing or contemplated foreign litigation.  *See Osario v. Harza Eng'g. Co.*, 890 F. Supp. 750, 753 (N.D. Ill. 1995) (Section 1782 "authorizes district courts, in response to letters rogatory, to assist foreign tribunals by compelling evidence or documents for use in foreign proceedings," but "the request for judicial assistance pursuant to a letter rogatory is an incorrect vehicle to enforce a foreign judgment").  Moreover, the Court should exercise its discretion to deny Petitioners' application with respect to the disputed requests in Petitioners' subpoena.

  *Request for Production No. 3.*  Request No. 3 in Petitioners' subpoena seeks the e-mail and IP addresses of the Review's author.  There is no good reason for Petitioners to request this information, because Mikulec, as Petitioners concede, has admitted to authoring the Review.  *See In re Application of IPC Do Nordeste, LTDA,* No. 12–50624, 2012 WL 4448886, *1 (E.D. Mich. Sept. 25, 2012) (because "all of the evidence [Section 1782 petitioner] seeks 'would obviously be in the possession of'" respondent's Brazilian subsidiary, "the evidence sought is obtainable absent § 1782(a) aid" and thus Section 1782 application denied).  Petitioners claim they need Mikulec's e-mail and IP addresses because Petitioners suspect that she wrote another critical review of DST on a site called "Jobwings," and Petitioners want to know if she anonymously commented on that review to "bolster its credibility."  However, Petitioners nowhere explain why Mikulec's e-mail and IP addresses would purportedly help them identify the Jobwings commenter.

  Petitioners' motion should be denied as to Request No. 3 for the further reason that the request is "unduly intrusive or burdensome," which is a basis for denying a Section 1782

application.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004).  To obtain the identity of the anonymous Jobwings speaker, Petitioners must make a prima facie showing that the speaker's statement was defamatory.  Both the United States Constitution and the Canadian Charter of Rights and Freedoms, as well as the prohibition on overly intrusive discovery in the Federal Rules of Civil Procedure, afford Mikulec and whoever posted the Jobwings comment this protection.  *See Music Grp. Macao Comm. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 985 (N.D. Cal. 2015) (denying motion to enforce subpoena seeking anonymous speakers' identities, as plaintiff "has not shown a 'real evidentiary basis' for its defamation claim against" defendant); *Warman v. Wilkins-Fournier*, 2010 ONSC 2126, ¶ 45 (CanLII) (because "the motion judge did not take into consideration whether the respondent had established a prima facie case of defamation before ordering disclosure," trial court erred in compelling production of anonymous individuals' identities).[2]  Petitioners cannot make the requisite prima facie case.  As noted above, Petitioners apparently seek to use the information called for by Request No. 3 to learn the identity of a commenter on Jobwings, and thus they must show that the Jobwings comment is defamatory.  However, Petitioners' failure to identify the language of the comment renders them incapable of doing so.  *See Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (because, "although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified," and "the plaintiff fails to identify and state the substance of the allegedly defamatory statement, the defamation claim is insufficient").

  ***Request for Production No. 4.***  This request seeks the IP addresses of all persons who read the Review, and the number, and locations, of those readers.  Petitioners take issue with Glassdoor's privacy objections to this request on the ground that learning the readers' IP addresses would not allow Petitioners to identify them by name.  It is true that, in general, knowing the IP address used to post a review on glassdoor.com is not enough, by itself, to identify the reviewer, but Petitioners' response does not tell the full story.  As Petitioners

---

[2] The Canadian authorities cited herein are attached as exhibits to the concurrently filed Declaration of William J. Frimel.

-4-

concede, it is possible to determine, based on a user's IP address, the internet service provider ("ISP") used by the reviewer, and/or the business the reviewer is associated with.  Thus, once Petitioners have a user's IP address, they can identify the user if they serve a subpoena on the ISP or business the IP address is associated with, or simply infer the user's identity from the company the user works for.  *See, e.g., New Sensations, Inc. v. Does 1-306*, No. 2:12-cv-1885, 2012 WL 5031651, *5 (E.D. Cal. Oct. 17, 2012) ("[S]eek[ing] information about the 'ISP subscribers who were assigned certain IP addresses . . . has the potential to draw numerous innocent internet users into the litigation'").  Petitioners make clear that this is exactly what they mean to do — Petitioners say they need the readers' IP addresses "to determine whether any actual or potential DST clients, employees, service providers or competitors read the allegedly defamatory post" (Mem. of Ps. & As. in Supp. of Mot. to Compel, Aug. 25, 2016, Dkt. No. 5 ("Pet. Mem."), at 10), which they plainly could not do without knowing the identities of those "clients, employees, service providers or competitors."  Petitioners should not be allowed to seek evidence of the Reviews' readers' identities.  *See In re App. of Ontario Principals' Counsel*, No. MC-14-00050, 2014 WL 3845082, *1 (D. Ariz. Aug. 1, 2014) (although first three *Intel Corp.* factors favored granting Section 1782 application to compel ISP to "identify the subscribers of [certain] IP addresses" associated with allegedly defamatory statements, denying application because "[t]he potential to draw numerous innocent internet users into the litigation, placing a burden upon them, outweighs Applicants' need for the discovery").

Finally, the statistics Petitioners request concerning the numbers and locations of Glassdoor's users are competitively sensitive, as they are measures of the success of Glassdoor's business, and should not be disclosed.  *See In re King.com Ltd.*, No. 16-mc-80070, 2016 WL 4364286, *8 (N.D. Cal. Aug. 16, 2016) (quashing subpoena pursuant to Section 1782 on the ground that, in *Intel*, "[t]he Supreme Court . . . discussed the use of § 1782 applications for 'fishing expeditions,' suggesting that district courts may prevent discovery of business secrets and confidential information," and subpoenaing party sought such information via its subpoena).

## STATEMENT OF FACTS

Glassdoor operates glassdoor.com, which provides a forum for current and former

employees of companies to anonymously voice opinions regarding those businesses.  (O'Brien Decl. ¶ 2.)  An employee can express an opinion about an employer on glassdoor.com by posting a "review," in which the employee assigns the employer between one and five stars in a number of categories, and discusses the employer's "pros and cons."  (*Id.*)  Glassdoor does not compose or edit the reviews posted on its site.  (*Id.*)  Glassdoor makes explicit to users that reviews on its site are "posted anonymously by employees and job seekers" (*id.* Exh. B), and "assume[s] no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful Content" on the site (*id.* Exh. C, ¶ 3(A)).

Glassdoor is headquartered in Mill Valley, California (Pls' Mem. at 2), and has no employees, assets or bank accounts in Canada (O'Brien Decl. ¶ 3).  Glassdoor is not licensed to do business, has not incurred or paid taxes, and has no agent for service, in Canada.  (*Id.*)  Glassdoor does not own or lease any servers in Canada, and the glassdoor.ca site is not hosted on servers in Canada.  (*Id.*)  The glassdoor.ca site is a "mirror" of the glassdoor.com site, meaning it has the same content as glassdoor.com (with minor exceptions unrelated to the content of employer reviews, such as its references to Canadian currency and the metric system), but uses a different URL.  (*Id.* ¶ 4.)

Petitioners allege that DST "is a Montreal company that develops sophisticated financial analysis software for the alternative investment sector . . . ."  (Pet. Mem. at 2.)  On March 7, 2013, a glassdoor.ca user anonymously posted a review of DST.  (O'Brien Decl. Exh. A.)  The review criticized DST in exaggerated, emotionally charged terms, stating, *inter alia*, that DST is a "[h]orrible place" characterized by "[e]xtreme paranoia," with "no policies or structure" and "no communication."  (*Id.*)  The reviewer advised DST's management to "[t]reat treat [sic] staff better" and not to "treat them like trained monkeys," and to "[g]et a grip on the paranoia."  (*Id.*)

Petitioners filed suit in the Superior Court of Montreal, Quebec, Canada, alleging the Review was defamatory.  (Pet. Mem. at 1.)  Petitioners named Kelly Mikulec, a former employee, as the defendant, and Mikulec admitted to authoring the Review.  (*Id.* at 6.)  In February 2016, Petitioners wrote to Glassdoor, "ask[ing] that [Glassdoor] provide," among other things, "the number of individuals having read the Posts," including the Review, "their email addresses,

names and IP addresses . . . ."  (O'Brien Decl. Exh. D.)  Glassdoor advised Petitioners that it is Glassdoor's policy not to disclose private user information.  (*Id.* Exh. E.)  Petitioners did not serve Glassdoor with a subpoena or any other form of legally-sanctioned discovery request.  (*Id.* ¶ 5.)  Instead, Petitioners filed an "Application for Disclosure and Communication of Documents Relating to a Dispute" in the Quebec court (the "Quebec Motion").  (*Id.* Exh. F.)  The Quebec Motion sought an order directing Glassdoor to produce, *inter alia*, the "IP address[] and email address[] of the individual[]" who posted the Review, and "the number of individuals having read the" Review, "their email addresses, names and IP addresses . . . ."  (*Id.* Exh. F, at 7.)

As Glassdoor, due to its lack of contacts with Canada, is not subject to jurisdiction there, Glassdoor did not appear in the hearing on the Quebec Motion.  (*Id.* ¶ 5.)  On June 16, 2016, the Quebec court issued an order directing Glassdoor to produce, *inter alia*, "the email address and IP address of the user who posted the [Review]," and "statistics reports relating to the [Review] . . ., including the number of users having viewed the [Review] . . ., the time and date of viewing, the city associated with the IP addresses of these users, as well as their IP addresses."  (*Id.* Exh. G, ¶ 25.)  The Quebec court appeared to find that it had personal jurisdiction over Glassdoor, despite Glassdoor's lack of contacts with Canada, based on Article 3148(3) of the Civil Code of Quebec, which states that "Quebec authorities have jurisdiction" where "a fault was committed in Quebec[] and injury was suffered in Quebec."  (*Id.* Exh. G, ¶ 7.)  The court further stated that the IP addresses of users who read the Review were discoverable because "the Policies" listed on "Glassdoor's website modulate [sic] the expectations of privacy for their users in that" (1) "the Terms and Conditions Policy provides" that users should not post content that "is false or misleading" or "defamatory or libelous," and (2) the "Glassdoor confidentiality policy" provides that "[w]e will disclose data . . . as we otherwise deem necessary to protect and defend the rights or property of us, the users of our services, or third parties."  (*Id.* Exh. G, ¶ 15.)

Petitioners obtained this Court's authorization, based on an *ex parte* application, to serve a subpoena on Glassdoor seeking the documents ordered produced in the Quebec Order.  (Jul. 20 Order.)  The parties reached a resolution as to three of the five categories of documents in the subpoena.  (Decl. of Sean Gates, Aug. 25, 2016, Dkt. No. 5-1 ("Gates Decl."), ¶ 7.)  The disputed

requests are Requests for Production Nos. 3 and 4, which are identical to the provisions in the Quebec Order directing Glassdoor to produce "the email address and IP address of the user who posted the March 7, 2013 review," and "the Google Analytics statistics reports relating to the March 7, 2013 review . . ., including the number of users having viewed the March 7, 2013 review . . ., the time and date of viewing, the city associated with the IP addresses of these users, as well as their IP addresses."  (*Id.* Exh. A, Att. A.)

## ARGUMENT

Section 1782(a) provides, in part, that "[t]he district court of the district in which a person resides or is found *may* order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  28 U.S.C. § 1782(a) (emphasis added).

"[T]his statutory language 'authorizes, but does not require,' that district courts provide judicial assistance to § 1782 applicants."  *Sergeeva v. Tripleton Int'l. Ltd.*, --- F.3d ----, 2016 WL 4435616, *3 (11th Cir. 2016) (citing *Intel Corp.*, 542 U.S. at 255, 264); *see also United Kingdom v. United States*, 238 F.3d 1312, 1318-19 (11th Cir. 2001) ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 [is] committed to . . . the district court.").  "A district court has wide discretion to grant or deny a Section 1782 application, and '[t]he Supreme Court has provided a 'non-exhaustive' list of factors that a court should consider:'" (1) whether the "person from whom the discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome."  *IPCom GMBH & Co. v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (quoting *Intel Corp.*, 542 U.S. at 264).

I.      **THIS COURT IS NOT BOUND BY THE QUEBEC ORDER**

    A.      **This Court Has Discretion to Depart from the Quebec Court's Conclusions**

Petitioners' assertion that "[t]his Court should . . . give preclusive effect" to the Quebec Order "under principles of comity" (Pet. Mem. at 5) is mistaken.  District Courts are not required to comply with foreign courts' orders in ruling on a Section 1782 application, and may exercise their discretion not to do so.  *See United Kingdom*, 238 F.3d at 1320 (because "the district court was not obliged to grant [petitioners'] application simply by virtue of the English court's order" finding "secret grand jury materials" relevant to English criminal investigation, court properly denied Section 1782 application); *Comcast Cable Comms., LLC*, 2016 WL 2992053, *5 (court "exercise[d] its discretion to deny the request for a § 1782 enforcement order" enforcing English court's order requiring "release of . . . identifying information" of Comcast subscriber because "the U.K. Order seeks information that is not relevant to the allegations of the U.K. complaint").

The century-old authority Petitioners rely on, *Hilton v. Guyot*, 159 U.S. 113 (1895), did not involve Section 1782 or discovery.  Rather, it held that, because a French court rendered a judgment against the defendants after "opportunity for a full and fair trial . . . before a court of competent jurisdiction, after . . . voluntary appearance of the defendant," the defendants could not, "in an action brought in this country upon the judgment," "tr[y] afresh" "the merits of the case." *Id.* at 202-03.  Here, of course, there was no trial, judgment or appearance by Glassdoor in the Quebec court.  Petitioners attempt to portray the Quebec Order as a judgment based on the Quebec court's reference to its order as a "Rectified Judgment" (Pet. Mem. at 3), but the Quebec Order clearly does not fit the accepted definition of that term, as Glassdoor is not a party to the Quebec Action and the Quebec Order did not go to the merits of the case.  *See, e.g., Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 582 n.1 (D. Ariz. 2003) ("Because this Court's order . . . did not 'end [] the litigation on the merits and leave[] nothing for the court to do but execute the judgment,' the challenged order is not a final judgment . . . .") (citing *Catlin v. U.S.*, 324 U.S. 229, 233 (1945)).  In addition, even if the Quebec Order *is* a judgment, it cannot be enforced under Section 1782, as that statute's sole function is to allow District Courts to order discovery for use in foreign proceedings, and Petitioners' motion thus must be denied.  *See*

*Osario,* 890 F. Supp. at 753 (Section 1782 "authorizes district courts, in response to letters rogatory, to assist foreign tribunals by compelling evidence or documents for use in foreign proceedings," but "the request for judicial assistance pursuant to a letter rogatory is an incorrect vehicle to enforce a foreign judgment"); *In re Civil Rogatory Ltrs.*, 640 F. Supp. 243, 244 (S.D. Tex. 1986) ("The scope of" Section 1782 "is limited to the court's role in procuring testimony or evidence for use in a foreign tribunal," and "[n]othing in this or any other section provides for the enforcement of a foreign judgment through the use of letters rogatory").

**B.      The Quebec Court Could Not Exercise Personal Jurisdiction over Glassdoor**

The Quebec Order is non-binding for the further reason that the Quebec court's purported exercise of jurisdiction over Glassdoor did not comport with the "traditional notions of fair play and substantial justice" needed to enforce a foreign court's order in the United States.  *See, e.g., Shell Oil Co.*, 2005 WL 6184247, *6 ("[U]nder both the [California] Recognition Act and the Restatement" of Foreign Relations, "a foreign judgment is unenforceable if the foreign court's personal jurisdiction over the defendant was not, 'at a minimum, in compliance with the requirements of traditional notions of fair play and substantial justice'"); *Bank of Montreal v. Kough*, 430 F. Supp. 1243, 1246 (N.D. Cal. 1977) ("[A] foreign judgment is not conclusive in California" if foreign court's exercise of jurisdiction was not "in compliance with the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution").

Glassdoor, which is headquartered in California, has no employees, assets or bank accounts in Canada.  (O'Brien Decl. ¶ 3.)  Glassdoor is not licensed to do business, has not incurred or paid taxes, and has no agent for service of process, in Canada.  (*Id.*)  Glassdoor does not own or lease any servers located in Canada, and the glassdoor.ca site is not hosted on servers in Canada.  (*Id.*)[3]  Under either Canadian or United States law, based on these facts, the Quebec

---

[3] Notably, glassdoor.ca contains the same Terms of Use that appear on glassdoor.com, which provide, *inter alia*, that "any and all claims or disputes by or between you," the user of the site, and Glassdoor "shall be governed by the *laws of the State of California*," and that, "[f]or any claim or dispute not subject to the Arbitration provision below," which provides for arbitration in San Francisco, California, "the claim or dispute shall be brought and litigated exclusively in the state courts located within *Marin County, California or federal courts located in the Northern District of California . . . .*"  (O'Brien Decl. Exh. C (emphasis added).)

court did not have personal jurisdiction over Glassdoor (and, even assuming the Quebec court's exercise of jurisdiction was permitted under Canadian law, it did not comport with due process). *See Desjean v. Intermix Media Inc.*, 2006 FCJ 1395 (CanLII), ¶¶ 29-34 (court lacked personal jurisdiction over U.S. defendant that allegedly included "invasive software" in its products on the grounds that defendant (1) "has no servers in Canada"; (2) did not host its site "on servers located in Canada, but on a server situated in California"; (3) "does not have, nor has it ever had, any employees in Canada"; (4) "does not have any offices in Canada"; (5) "has no bank accounts in Canada"; (6) "does not pay taxes to either the federal government or any provincial government" in Canada; and (7) "is not registered as doing business in any Canadian jurisdiction"); *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (because "[a]ll that [defendant] did was post an essentially passive home page on the web," although "there is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that Cybersell FL deliberately directed its merchandising efforts toward Arizona residents," and thus personal jurisdiction could not be established based on mere accessibility of defendant's website in Arizona).

      In apparently finding it had jurisdiction over Glassdoor, the Quebec court relied on a Quebec statute providing that "Quebec authorities have jurisdiction" where "a fault was committed in Quebec" and "injury was suffered in Quebec."  (O'Brien Decl. Exh. G, ¶ 7 (quoting Civil Code of Quebec, § 3148(3).)  Whether or not this statute authorizes jurisdiction over a defamation *defendant*, it is plainly inapplicable to Glassdoor, as Petitioners make no claim that Glassdoor committed "faults," or caused "injury," in Quebec.  Similarly, the case cited by the Quebec court on the issue of jurisdiction (*id.* ¶ 9) involved the assertion of jurisdiction over foreign companies sued based on transactions with persons in Quebec — not nonparties, like Glassdoor, who have no contacts with Quebec.  *See Transat Tours Canada Inc. v. Tescor, S.A.*, 2007 SCC 20 (CanLII), ¶ 1 (Quebec court had personal jurisdiction over "Mexican corporations" who assertedly "had been parties to th[e]" alleged "breach [of contract] by agreeing to make blocks of rooms available to a Canadian company . . . which has a place of business in the province of Quebec").

Nor do Petitioners offer facts or law to support the claim that the Quebec court had jurisdiction to issue its order.  To the contrary, in their application for an order authorizing their subpoena, Petitioners contended that, because "Glassdoor has its principle [sic] place of business within the Northern District" of California, "the evidence may be unattainable absent the aid of this Court" — in other words, due to the Quebec court's *lack* of jurisdiction, the only court with the power to direct Glassdoor to produce the requested discovery is this Court.  (*Ex Parte* App. at 1.)  Indeed, Petitioners must argue as much to seek Section 1782 relief, because, if the Quebec court had jurisdiction over Glassdoor, there would be no reason for this Court's assistance.  *See Intel Corp.*, 542 U.S. at 264 (Section 1782 assistance not necessary "when the person from whom discovery is sought is a participant in the foreign proceeding," because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence").

## II.   PETITIONERS' MOTION SHOULD BE DENIED AS TO REQUEST NO. 3

### A.   Petitioners Do Not Need Mikulec's E-Mail and IP Addresses Because Petitioners Already Know that She Authored the Review

As Petitioners note (Pet. Mem. at 5-6), Glassdoor objected to Request No. 3, which seeks the e-mail and IP addresses of the Review's author, on the ground that Petitioners already know the reviewer's identity.  Petitioners insist that they are entitled to Mikulec's e-mail and IP address, "[e]ven though Ms. Mikulec has admitted to the posting," because "[t]he email and IP address are relevant to confirm that Ms. Mikulec in fact posted the review."  (Pet. Mem. at 6.)

This makes no sense — Mikulec, by Petitioners' admission, does not dispute that she posted the Review, and thus there is no need to "confirm" that fact.  Petitioners further claim that "[m]erely because an item may be available from another source is not a proper objection to discovery" (Pet. Mem. at 6 (quoting *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 699 n.18 (S.D. Fla. 2011)), but that is a *non sequitur*.  Glassdoor's objection is not that documents tending to show Mikulec wrote the Review "may be available from another source," but that there is no need for Petitioners to seek such documents at all, as Mikulec does not dispute that she authored the Review.  In any event, (1) *Adelman* did not concern a Section 1782 application, and (2) the fact that information sought under Section 1782 is available from a party to the underlying

litigation *is* a proper objection.  *See In re Application of IPC Do Nordeste, LTDA,* 2012 WL 4448886, *1 (because "all of the evidence [Section 1782 petitioner] seeks 'would obviously be in the possession of'" Brazilian subsidiary of respondent, "the evidence sought is obtainable absent § 1782(a) aid," and thus Section 1782 application denied); *In re App. of Lazaridis*, 865 F. Supp. 2d 521, 528 (D. N.J. 2011) ("*Lazaridis*") (denying Section 1782 petition because, *inter alia*, petitioner's "need for the documents remains unclear at best," and he "has not shown that he cannot obtain the information from other sources, without imposing this burden on" nonparty); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (because foreign antitrust commission already "has (or will have) possession of all of the documents that [petitioner] seeks to discover" for use in that commission, "§ 1782 aid is both unnecessary and improper").  Moreover, as Petitioners admit (Pet. Mem. at 3), Mikulec objects to the disclosure of her identifying information.  *See Comcast Cable Comms., LLC*, 2016 WL 2992053, *5 ("[T]he Court will exercise its discretion to deny the request for a § 1782 enforcement order" because, *inter alia*, "[t]he subscriber, John Doe, objects to the release of his identifying information").

Petitioners further assert that Request No. 3 "is . . . relevant to the intentional nature of Ms. Mikulec's actions and therefore to punitive damages," because it would help Petitioners determine "whether Ms. Mikulec sought to bolster her Glassdoor review (or her similar review posted on another site, Jobwings) by commenting on her own posts."  (Pl.'s Mem. at 6.)  Why learning Mikulec's e-mail and IP addresses would be helpful in this regard is not immediately obvious, but Petitioners seem to imply (although they provide no evidence) that they are aware of e-mail and/or IP addresses associated with "comments" made on the Review or on Mikulec's "similar review posted on Jobwings," and seek to determine whether the e-mail and IP addresses associated with the Review match the addresses already in Petitioners' possession.  As to the Review, Petitioners' theory disregards the facts, as no one commented on the Review, and thus learning Mikulec's e-mail and IP addresses would be of no help to Petitioners.  (O'Brien Decl. ¶ 6 & Exh. A.)  Regarding the "similar review" Petitioners say Mikulec "posted on Jobwings," Petitioners have offered no evidence that (1) Mikulec wrote any reviews on Jobwings; (2) any comments were posted on the review allegedly written by Mikulec; or (3) assuming any

-13-

comments were posted, Petitioners have the e-mail or IP addresses associated with such comments.  Thus, Petitioners' position lacks factual support, and their motion should be denied as to Request No. 3.  *See In re Application of IPC Do Nordeste, LTDA,* 2012 WL 4448886, *1; *Lazaridis*, 865 F. Supp. 2d at 525; *In re Microsoft Corp.*, 428 F. Supp. 2d at 194.

Petitioners further claim that, as the California Constitution does not apply to Mikulec, her identifying information is not protected from disclosure.  (Pet. Mem. at 7-8.)  At the outset, the above-cited cases denying Section 1782 applications because the information sought was irrelevant and/or available from other sources did not rely on the California Constitution, but on Section 1782's incorporation of the Federal Rules' protections against intrusive and burdensome discovery.  Thus, even if the California Constitution does not apply, Section 1782 still protects her private information from disclosure.  In any event, the authorities Petitioners cite to show that the California Constitution does not apply do not support that proposition.  *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005), merely stated that the California Constitution "creates a legal and enforceable right of privacy for every Californian" in the context of holding that the plaintiffs, who *were* Californian, did not state a claim for invasion of privacy. *Id.* at 1143.  *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955 (N.D. Cal. 2015), held that the California courts did not have personal jurisdiction over the defendant.  *Id.* at 965.

Nor do Petitioners' authorities support their position that the disclosure of Mikulec's e-mail and IP addresses would not infringe her right of privacy.  Those authorities (Pet. Mem. at 8) concerned attempts to assert a *cause of action* for invasion of privacy under common law and the California Constitution, as opposed to privacy-based *protections* against intrusive discovery.  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Plaintiffs have failed to allege sufficient facts to establish a highly offensive disclosure of information" based on allegation that LinkedIn "disclosed to third parties the LinkedIn ID and the URL of the LinkedIn profile page that the user viewed"); *In re iPhone Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (plaintiffs' "claim under the California Constitutional right to privacy" dismissed because alleged disclosure of iPhone users' information, *i.e.*, "unique device identifier number, personal data, and geolocation information," "does not constitute an egregious breach of social norms");

-14-

*Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (defendant's alleged failure to prevent the disclosure of plaintiff's social security number did "not constitute an egregious breach and therefore" was not a "violation[] of the California Constitutional right to privacy").  In the discovery context, compelling disclosure of a person's e-mail and IP addresses, particularly where, as here, such information is not reasonably calculated to lead to admissible evidence, is not permitted.  *See McVicker v. King,* 266 F.R.D. 92, 94, 96 (W.D. Pa. 2010) (because, *inter alia,* "any registered user" of blog at issue had "an expectation of privacy" in "personal identifiable information," including their "e-mail address," motion to compel production in defamation action denied); *Doe v. 2TheMart.Com Inc.*, 140 F. Supp. 2d 1088, 1095-96 (W.D. Wash. 2001) (in defamation action, quashing subpoena where "as originally issued the subpoena . . . was extremely broad," as it "required the disclosure of personal e-mails and other personal information that has no relevance to the issues raised in the lawsuit," and thus "disregard[ed] . . . the privacy and First Amendment rights of the online users").

> **B.      To Require Production of Mikulec's E-Mail and IP Addresses, Petitioners Must State a Prima Facie Case of Defamation, but Fail to Do So**

Glassdoor objected on the additional ground that ordering Glassdoor to provide Petitioners with Mikulec's e-mail and IP addresses would infringe her right to speak anonymously, whether under the First Amendment or the Canadian Charter of Rights and Freedoms (the "Charter"). (Gates Decl. Exh. B.)  Petitioners dispute Glassdoor's objections on the grounds that (1) Mikulec is Canadian and the First Amendment hence does not apply to her, and (2) Mikulec has no right to prevent the disclosure of her private information because she is not an anonymous speaker and her "identity is known."  (Pet. Mem. at 7.)  Petitioners are incorrect.

> **1.  Petitioners must establish a prima facie case of defamation**

As an initial matter, Petitioners assert that, regardless of whether they must set forth a prima facie case of defamation to obtain an anonymous speaker's identity, that requirement does not apply to Mikulec because her "identity is known."  (*Id.*)  However, if Petitioners know Mikulec's identity and do not seek the identity of any other anonymous speaker, there is no good reason for Petitioners to seek Mikulec's e-mail and IP addresses, and their motion should be

-15-

denied.  *See In re App. of IPC Do Nordeste, LTDA*, 2012 WL 4448886, *1; *Lazaridis*, 865 F. Supp. 2d at 525; *In re Microsoft Corp.*, 428 F. Supp. 2d at 194.  On the other hand, if the Court accepts Petitioners' claim that they need Mikulec's e-mail and IP addresses to determine whether she authored a comment on the Jobwings website, Petitioners *are* attempting to determine the identity of an anonymous speaker, *i.e.*, the Jobwings commenter.  In that event, Petitioners are required, but fail, to establish the requisite prima facie case.

### a.  Canadian defamation law

In *Warman v. Wilkins-Fournier*, 2010 ONSC 2126 (CanLII), the plaintiff "commenced a defamation action" against "eight John Doe defendants with respect to messages posted on an Internet message board."  *Id.* ¶ 2.  In determining whether the plaintiff was entitled to compel disclosure of "the IP addresses for the allegedly defamatory postings made by the John Doe defendants," *Warman* observed that "both the right of freedom of expression, guaranteed by s. 2(b) of the Charter, as well as privacy interests that are also recognized by the Charter, are engaged," *id.* ¶ 15, and "removal of an individual's right to remain anonymous may constitute an unjustified breach of freedom of expression," *id.* ¶ 17.  Thus, "the motion judge was therefore required to have regard to . . . whether the respondent has established a prima facie case against the unknown alleged wrongdoer," and "whether the public interests favouring disclosure outweigh the legitimate interests of freedom of expression and right to privacy of the persons sought to be identified if the disclosure is ordered."  *Id.* ¶ 34.  Because "the motion judge did not take into consideration whether the respondent had established a prima facie case of defamation before ordering disclosure of the documents sought by the respondent," the trial court erred in granting the plaintiff's motion to compel.  *Id.* ¶ 45; *see also Fers et metaux americains, s.e.c. c. Picard*, 2013 QCCA 2255 (CanLII), ¶ 6 (in considering whether to permit pre-litigation discovery of anonymous speaker's identity, asking "[w]hether the applicant has provided evidence sufficient to raise a valid, *bona fide* or reasonable claim"); *Morris v. Johnson*, 2011 ONSC 3996 (CanLII), ¶¶ 35-36 ("In order to establish whether a prima facie case exists, the Court must engage in a detailed and contextual analysis of each statement alleged to be defamatory," and plaintiff failed to establish prima facie case because he "has failed to set forth the specific words

-16-

1   complained of as being defamatory").[4]

2   Petitioners insist that their Section 1782 application must be granted unless Glassdoor

3   provides "authoritative proof" that Canadian law would require Petitioners to submit evidence

4   supporting their defamation claim, citing *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373

5   (5th Cir. 2010), which in turn relied on the statement in *In re Metallgesellschaft*, 121 F.3d 77, 79

6   (2d Cir. 1997), that, "absent 'authoritative proof that a foreign tribunal would reject the evidence

7   obtained with the aid of section 1782,' . . . a district court should not refrain from granting the

8   assistance afforded under the Act based simply on allegations to that effect." *Id.* at 378.  As

9   explained in *In re Application of Schmitz*, 259 F. Supp. 2d 294 (S.D.N.Y. 2003), Petitioners

10   misread this statement — *In re Metallgesellschaft* "did not hold that the petition should be

11   granted in the absence of authoritative proof that the foreign tribunal would reject the Documents.

12   Rather, it stated that 'a district court should not refrain from granting the assistance afforded'

13   under section 1782 based *simply on allegations* that the foreign tribunal would reject the

14   Documents." *Id.* at 299 (quoting *In re Metallgesellschaft*, 121 F.3d at 80) (emphasis added).

15   Consistent with this formulation, *Ecuadorian Plaintiffs* held that the plaintiffs in that case failed

16   to show that an Ecuadorian-law privilege precluded discovery of the information sought in the

17   defendant's Section 1782 application, as the plaintiffs did "not point[] to any 'judicial, executive

18   or legislative declaration' that clearly demonstrate[d] that allowing discovery . . . would offend

19   Ecuadorian social norms." *Ecuadorian Plaintiffs,* 619 F.3d at 378.  In contrast, Glassdoor does

20   more than "merely allege" that Canadian law provides protections to anonymous speakers — as

21   noted above, Glassdoor cites Canadian authority to that effect.

22   **b.  United States defamation law**

23   The First Amendment requires that, to obtain an anonymous speaker's identity, the

24   _____

25   [4] In *1654776 Ontario Ltd. v. Stewart*, 2013 ONCA 184 (CanLII), the Ontario Court of
     Appeal, in discussing whether a newspaper could be compelled to disclose the identities of its
26   confidential sources, stated that, rather than requiring a prima facie case, the court should
     consider "the nature and apparent strength of the [plaintiff's] case," and held that the sources'
27   identities would not be disclosed because the plaintiff "has not put forward any evidence that the
     statements were false or materially misleading." *Id.* ¶ 137.  Thus, regardless of whether the
28   applicable test should require a "prima facie" case or a "strong" one, it is clear that Petitioners are
     required to set forth evidence in support of their claims.

1    plaintiff must "persuade the court that there is a real evidentiary basis for believing that the

2    defendant has engaged in wrongful conduct that has caused real harm to the interests of the

3    plaintiff that the laws plaintiff has invoked were intended to protect." *Highfields Capital Mgmt.*

4    *L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005).  To meet this requirement, "the plaintiff

5    must adduce *competent evidence* — and the evidence plaintiff adduces must address all of the

6    inferences of fact that plaintiff would need to prove in order to prevail under at least one of the

7    causes of action plaintiff asserts." *Id.* (emphasis in original); *see also Music Group Macao*

8    *Comm. Offshore Ltd.*, 82 F. Supp. 3d at 985 (denying motion to enforce subpoena seeking

9    anonymous speakers' identities because plaintiff "has not shown a 'real evidentiary basis' for its

10   defamation claim against" defendant, as required by *Highfields Capital*).

11                    **c.   Protections under the Federal Rules of Civil Procedure**

12          Moreover, regardless of whether the First Amendment, the Charter, or both apply to

13   Mikulec, in a Section 1782 proceeding, the discovery sought must not be "unduly intrusive or

14   burdensome" under the Federal Rules of Civil Procedure.  *See Intel Corp.*, 542 U.S. at 265; *In re*

15   *App. of IPC Do Nordeste, LTDA,* 2012 WL 4448886, *8 ("unduly intrusive or burdensome"

16   "factor is based on the incorporation by reference in § 1782 of the Federal Rules of Civil

17   Procedure"); *In re Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008) ("The proper scope of the

18   discovery sought under section 1782, like all federal discovery, is governed by Federal Rule

19   26(b).").  Under "the standards in the Federal Rules of Civil Procedure," "in evaluating whether

20   there is good cause to allow early discovery to determine the identity of an unknown party, courts

21   consider whether the applicant" "demonstrates that the action can withstand a motion to dismiss;

22   and . . . proves that the discovery is likely to lead to identifying information."  *In re Ex Parte App.*

23   *of Jommi*, No. C 13-80212, 2013 WL 6058201, *4 (N.D. Cal. Nov. 15, 2013) (citing *Columbia*

24   *Ins. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)).  Hence, solely as a matter of

25   federal procedure, Petitioners must establish, at the very least, that their defamation claim would

26   withstand a Rule 12(b)(6) motion to dismiss.  As set forth below, Petitioners cannot do so.

27                    **2.   Petitioners cannot make the requisite prima facie case**

28          As Petitioners concede, they do not need Mikulec's e-mail and IP addresses to identify the

-18-

Review's author, as "Ms. Mikulec has admitted to authoring the post."  (Pet. Mem. at 6.)

However, Petitioners claim to need that information to assist in identifying the author of an

anonymous comment on Jobwings.[5]  (*Id.*)  To determine whether Petitioners are entitled to that

information, the relevant question is whether Petitioners have made a prima facie case of

defamation as to the Jobwings comment whose author they wish to identify.  *See Kechara House*

*Buddhist Ass'n. Malaysia v. Does*, No. 15–cv–00332, 2015 WL 5538999, *4 (N.D. Cal. Sept. 18,

2015) (per *Highfields Capital*, plaintiff must "show[] a 'real evidentiary basis' for its defamation

claim" to identify author of allegedly defamatory statement).  However, Petitioners have not even

recited the language of the alleged Jobwings comment.  As determining whether the comment is

defamatory requires an analysis of its language and context, and the Court cannot perform such

an analysis without knowing what the comment says, Petitioners cannot state a prima facie case.

*See Jacobson*, 357 F. Supp. 2d at 1216 (because, "although a plaintiff need not plead the

allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically

identified, and the plaintiff must plead the substance of the statement," and "the plaintiff fails to

identify and state the substance of the allegedly defamatory statement, the defamation claim is

insufficient"); *Morris*, 2011 ONSC at ¶¶ 35-36 (plaintiff failed to establish prima facie case

because he "failed to set forth the specific words complained of as being defamatory").

Even if the relevant issue is whether the Review itself is defamatory, despite Petitioners'

claim that they do not seek to identify the Review's author, Petitioners cannot make a prima facie

case of defamation as to the Review.  A reasonable reader would not construe the Review as

making actionable statements of fact, but rather constitutionally protected statements of opinion.

*See Piping Rock Ptnrs. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 971 (N.D. Cal. 2013)

("Generally, statements of opinion are not actionable as defamation, whereas statements of fact

are actionable."); *Gagne v. McKay*, 2014 QCCS 2281 (CanLII), ¶ 75 ("Although [defendant] was

aggressive in expressing his disagreement with [plaintiff's] political remarks in a newspaper

---

[5] As discussed above, Petitioners must, necessarily, be seeking a Jobwings commenter's identity, as no one commented on the Review on glassdoor.com (O'Brien Decl. Exh. A), and hence Petitioners cannot claim that Mikulec attempted to "bolster" the Review by leaving a comment on it.

article that the latter posted on Facebook, his remarks remain criticism and do not cross the line into defamation.  [Plaintiff] has not convinced the Court that a reasonable person informed of the context would conclude any differently.").  Determining how a reasonable reader would interpret the Review depends on an analysis of the Review's language and context.  *See Knievel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (in deciding whether allegedly defamatory statement is fact or opinion, "[o]ur first inquiry is into the . . . 'the general tenor of the entire work, the subject of the statements, the setting, and the format of the work,'" and "the 'specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation'") (quoting *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995)); *see also Gagne*, 2014 QCCS at ¶ 75.

In the Review, Mikulec expresses dislike for DST in vague and hyperbolic terms. Mikulec asserts that DST is a "[h]orrible place" characterized by "[e]xtreme paranoia," and has "no policies or structure" and "no communication."  (O'Brien Decl. Exh. A.)  She advises DST's management to "[t]reat treat [sic] staff better" and not to "treat them like trained monkeys," and to "[g]et a grip on the paranoia."  (*Id.*)  Plainly, the statement that DST treats employees like "trained monkeys" is exaggerated.  So, too, is the statement that "no communication" occurs at DST — the Review also says "[f]orget about positive feedback — you only hear negative, sometimes delivered loudly and angrily" (*id.*), and it cannot be the case that there is "no communication" at the company if management gives "negative feedback."  In light of this language, the Review is properly viewed as opinion and thus protected from defamation liability. *See Music Group Macao*, 82 F. Supp. 3d at 986 (quashing subpoena seeking anonymous defendant's identity because, "[v]iewed 'in context,' . . . amid the blizzard of invective from an obviously disgruntled person," defendant's statement that plaintiff evaded taxes was a "rant among countless others from someone with an obvious grudge against" plaintiff).

The fact that the Review was written by an anonymous individual in an internet forum also counsels in favor of finding the Review to be non-actionable opinion.  *See Global Telemedia Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) ("[T]he general tenor, the setting and the format of [the allegedly defamatory] statements strongly suggest that the postings

are opinion," because they "were posted anonymously in the general cacophony of an Internet chat-room in which about 1,000 messages a week are posted about" plaintiff).  Further, Glassdoor's site makes clear that Glassdoor does not control the contents of users' posts, and that it simply provides a forum for third parties to express opinions.  (O'Brien Decl. Exh. B (glassdoor.com's front page stating that its content is "all posted anonymously by employees and job seekers"); *id.* Exh. C (glassdoor.com's Terms of Use stating that "we assume no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful Content made available by other Users," and "[w]e are not responsible for any incorrect or inaccurate Content . . . posted on the Services," *i.e.*, the Glassdoor website).)  These disclaimers also support a finding that a reasonable reader would take the Review as opinion.  *See ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 790, 797 (N.D. Cal. 2010) (in defamation action concerning review of plaintiff's products, the fact that the review stated that "[t]he opinions expressed herein are subject to change without notice" supported finding that review was protected opinion).

Finally, Petitioners contend that, even if a prima facie case of defamation is required, Petitioners have made one.  (Pet. Mem. at 7.)  Petitioners assert that the Review "contain[s] a number of false assertions of fact," but do not say what those are, instead referring the Court to a declaration by Nikolajev.  (*Id.*)  *First*, however, even if the Review contains statements that, taken in isolation, could be construed as factual, the Review's use of figurative and hyperbolic language, and the context in which that language appeared, render those statements opinion for defamation purposes.  *See Knievel*, 393 F.3d at 1077; *Gagne*, 2014 QCCS at ¶ 75.  *Second*, the statements relied on by Nikolajev are too vague to be proven true or false, and thus are not actionable.  For instance, Nikolajev asserts that (1) the Review's statement that DST has "[v]ery high turnover" is false because, "[d]uring Ms. Mikulec's employment at DST, there were 30 employees, seven of which had been with DST for over ten years" (Nikolajev Decl. ¶ 13); and (2) the statement that DST is "saturated with family members" is false because, "[o]n [sic] a total of 30 employees," during an unspecified time period, "one wife and one son worked for DST and neither held a managerial position" (*id.* ¶ 17).  But due to the ambiguity of the terms "very high turnover" and "saturated with family members," it is not clear that the information provided by

-21-

1    Nikolajev disproves those statements.  *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,

2    173 F.3d 725, 731 (9th Cir. 1999) (statement that competitor was "too small" to handle potential

3    customer's business was "vague and subjective" and therefore not defamatory); *Sidense Corp. v.*

4    *Kilopass Tech. Inc.*, No. C 11–04112, 2012 WL 3545289, *5 (N.D. Cal. Aug. 16, 2012) ("The

5    statement that a type of technology is not reliable or manufacturable in high volume production . .

6    . is too subjective and vague to be subject to a defamation claim").

7    **III.**      **PETITIONERS' MOTION SHOULD BE DENIED AS TO REQUEST NO. 4**

8       **A.**      **Ordering Glassdoor to Produce the IP Addresses of Individuals Who Read the Review Would Violate both Canadian and United States Law**

9

10       Request No. 4 in Petitioners' subpoena demands "statistics reports relating to the

[Review] . . ., including the number of users having viewed the [Review] . . ., the time and date"

11    on which each user viewed the Review, "the city associated with the IP addresses of these users,

12    as well as their IP addresses."  (Pet. Mem. at 9.)  Glassdoor objected on the grounds that, *inter*

13    *alia*, producing this information would violate the privacy rights of the Reviews' readers.

14    Petitioners respond that disclosing "[t]he IP addresses of users who viewed the allegedly

15    defamatory post" "does *not* disclose the identity of the user[s]," but "may indicate whether any

16    actual or potential DST clients, employees, service providers, or competitors read the allegedly

17    defamatory post."  (*Id.* at 9-10 (emphasis in original).)  Petitioners are incorrect.

18

19       **1.**    **Glassdoor's users' IP addresses can be used, and Petitioners plainly intend to use them, to learn the identities of Glassdoor's users**

20       As an expert declaration Petitioners provided to the Quebec court explained, "[a]n IP

21    address may be registered to and assigned by an Internet Service Provider (ISP) or can be

22    registered to another entity such as a business which uses a single IP address," or, in rare cases,

23    "registered to an individual."  (Gates Decl. Exh. C, ¶ 10.)  To determine, with certainty, the

24    identity of a user who posted a review using a particular IP address, "one would have to obtain

25    the information from the entity (*e.g.*, an ISP or a business corporation) to which the IP address is

26    registered" — *e.g.*, via a subpoena to the ISP or business.  (*Id.* ¶ 18.)  *See, e.g., New Sensations,*

27    *Inc. v. Does 1-306*, No. 2:12-cv-1885, 2012 WL 5031651, *5 (E.D. Cal. Oct. 17, 2012)

28    ("[S]eek[ing] information about the 'ISP subscribers who were assigned certain IP addresses . . .

1  has the potential to draw numerous innocent internet users into the litigation'"); *Breaking Glass*

2  *Pictures, LLC v. Doe*, No. CV–13–00599, 2013 WL 3805637, *3 (D. Ariz. Jun. 22, 2013)

3  ("Plaintiff has the IP addresses of the computers that it alleges were part of the swarm in which

4  Defendants participated.  It does not, however, have the identity of the persons using the IP

5  addresses . . . . It seeks to have this Court issue subpoenas to ISPs to identify the subscriber

6  associated with each IP address, to assist in ascertaining, if possible, the user of the IP address

7  during the swarm.").  Stated differently, once they have the IP addresses, Plaintiffs can seek the

8  identities of the people associated with them via further discovery.  Or, if some or all of the IP

9  addresses are associated with entities Plaintiffs are familiar with, Plaintiffs may be able to infer

10  the identities of the users based on the IP addresses alone.

11      Petitioners' intent to use Glassdoor's readers' IP addresses to learn their identities is

12  confirmed by several of Petitioners' statements.  In their initial letter requesting a "voluntary"

13  production by Glassdoor, Petitioners' counsel asked that Glassdoor provide "the number of

14  individuals having read the Posts and the comments [and] *their email addresses, names* and IP

15  addresses . . . ."  (O'Brien Decl. Exh. D (emphasis added).)  Petitioners' Quebec Motion sought

16  the same information, including the readers' names and e-mail addresses.  (*Id.* Exh. F.)

17  Petitioners' goal in seeking this information, according to them, was "to determine whether any

18  actual or potential clients, employees, service providers or competitors have read the false and

19  defamatory Posts . . . ."  (*Id.*)  Similarly, Petitioners' motion states that, based on the IP addresses

20  of the Review's readers, Petitioners can learn whether the readers were "actual or potential DST

21  client[s], employee[s], service provider[s], or competitor[s]."  (Pet. Mem. at 10.)  Plainly, without

22  knowing the identity of a given reader, it would be impossible for Petitioners to determine

23  whether that individual was a "client, employee, service provider, or competitor."

24          **2.  Disclosing Glassdoor's readers' IP addresses to Petitioners would violate
             those readers' privacy rights**

25      As Petitioners can, and do intend to, use Glassdoor's readers' IP addresses to identify

26  them, and releasing identifying information regarding Glassdoor users against whom Petitioners

27  have not even asserted claims in the Quebec Action would be an unjustified invasion of their

28

-23-

privacy, Petitioners' motion must be denied with respect to Request No. 4.  *See Lazaridis*, 865 F. Supp. 2d at 528 (denying Section 1782 application for discovery in aid of Greek defamation suit because, *inter alia*, "the Court finds that [nonparty] has raised serious concerns with regard to the First Amendment implications that would arise were it to provide private e-mail addresses, names, and ISP [sic] addresses to a third party," and "[c]ourts have held that anonymous speakers posting on the internet are afforded First Amendment protections" that cannot be overridden "absent a showing of compelling need"); *see also In re App. of Ontario Principals' Counsel*, No. MC-14-00050-PHX-SPL, 2014 WL 3845082, *1 (D. Ariz. Aug. 1, 2014) (although first three *Intel Corp.* factors supported granting Section 1782 application to compel ISP to "identify the subscribers of [certain] IP addresses" associated with allegedly defamatory statements, denying application because "[t]he potential to draw numerous innocent internet users into the litigation, placing a burden upon them, outweighs Applicants' need for the discovery").

Petitioners claim that Glassdoor's readers do not have a reasonable expectation of privacy based on the statement, in glassdoor.com's Privacy Policy, that Glassdoor "will share [users'] information as Glassdoor 'deem[s] necessary' to protect its interests or those of third parties." (Pet. Mem. at 10.)  Petitioners omit to quote the key next sentence, which states that "[o]ur general procedure with respect to civil subpoenas requesting user data is to require a court order, binding on Glassdoor, before we release such information."  (O'Brien Decl. Exh. H.)  In light of this, Petitioners' suggestion that, as Glassdoor has discretion to disclose user data, its users have no reasonable expectation of privacy is baseless.  *See, e.g., Lazaridis*, 865 F. Supp. 2d at 528 (denying Section 1782 application for discovery in aid of Greek defamation suit because, *inter alia*, nonparty "has a privacy policy that informs members of the website that their private information will be protected"); *McVicker*, 266 F.R.D. at 96 (First Amendment precluded disclosure of anonymous bloggers' identities, because, *inter alia*, the website on which they posted had a "Privacy Policy clearly reflect[ing] that [the website] will disclose its users' personally identifiable information only in very limited situations").  Petitioners further cite the Quebec Order, which quotes a section of Glassdoor's Terms of Use in which users agree "not [to] post any Content that" "[i]s false or misleading" or "defamatory or libelous."  (O'Brien Decl.

1
2

Exh. G, ¶ 14.)  But that section is obviously inapplicable to people who did nothing more than read the Review, as they did not "post any Content."[6]

3

**B.    The Statistics Sought Constitute Glassdoor's Confidential and Proprietary Business Information**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

Request No. 4 also calls for "statistics reports" showing "the number of users having viewed the [Review] . . ., the time and date of viewing, [and] the city associated with the IP addresses of" the Review's readers.  (Pet. Mem. at 9.)  Glassdoor does not release statistics concerning viewership of its site to the public, and Glassdoor's "proprietary operating procedures and systems" are among the items Glassdoor employees agree to protect in a Proprietary Information and Inventions Agreement they execute as a condition of their employment. (O'Brien Decl. ¶ 7.)  If competing employment-related websites learned the size of Glassdoor's user base and the location of its users, they could draw inferences about the success of Glassdoor's business strategies and reformulate their own strategies accordingly.  (*Id.*)  *See, e.g., Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) ("The disclosure of a statistically significant sample of Google's search index or query log may permit competitors to estimate information about Google's indexing methods or Google's users.").  Petitioners should not be permitted to use Section 1782 to obtain such information.  *See In re King.com Ltd.*, No. 16-mc-80070, 2016 WL 4364286, *8 (N.D. Cal. Aug. 16, 2016) (quashing subpoena pursuant to Section 1782 on the ground that, in *Intel*, "[t]he Supreme Court . . . discussed the use of § 1782 applications for 'fishing expeditions,' suggesting that district courts may prevent discovery of business secrets and confidential information," and subpoenaing party sought such information via its subpoena) (citing *Intel*, 542 U.S. at 265).

22
23
24
25

/s/ William J. Frimel

Dated:  September 8, 2016              WILLIAM J. FRIMEL
                                      Attorneys for Respondent GLASSDOOR, INC.

26
27
28

---

[6] Even if this provision could somehow be interpreted to apply to *readers* of an allegedly defamatory review, to say that this section diminished such persons' expectation of privacy would be to assume what Petitioners are required to show — *i.e.*, that the Review is defamatory.