# Saint Laurent, Hugo

| | |
|---|---|
| **De:** | Legal Inquiries <legalinquiries@glassdoor.com> |
| **Envoyé:** | February-24-16 2:59 PM |
| **À:** | Tremblay, Tommy |
| **Objet:** | Response to Legal Letter Regarding Posts About Digital Shape Technologies, Inc. on Glassdoor |
| **Pièces jointes:** | Glassdoor Legal FAQs October 2014.pdf |

Dear Mr. Tremblay,

We have received your letter requesting that we remove from our site certain content concerning Digital Shape Technologies, Inc.

By way of response, I've attached a Legal FAQ (also found here: http://help.glassdoor.com/category/Legal_FAQs/en_US) that explains the application of our content policies to moderation, the protections afforded Glassdoor under applicable law, and our approach to legal action in connection with the content on our site. We have taken another look at the cited content and, for the reasons described in the attached Legal FAQ, we will not be removing it at this time. In addition, your request that we disclose the identifying information of the user(s) who posted the cited content and/or reviewed, the Legal FAQ explains why we do not disclose this information in response to a demand letter.

Please note: our Community Guidelines, found here http://help.glassdoor.com/article/Community-Guidelines/en_US/, explain the following: "We do allow comments about individuals who represent the public face of the company if they have great influence over the broad work environment (CEO, C-Suite, President, Owner, etc.) and the comments are related to their behavior in the work environment. We believe this information is generally representative of the company and informative to job seekers." If a review discusses senior management behavior in the workplace, we believe this information may be relevant to a job-seeker.

In addition, comments are not deemed "malicious" or personal attacks if they can be interpreted as serving the purpose of providing information to job-seekers about what it's like to work at company; this includes statements that can be construed as a warning to prospective employees about the workplace conduct and style of the management team.

As explained in the final section of the FAQ, the employer has the option of responding to reviews directly on our site. We encourage employers to reply to all of the reviews, both positive and negative, with professional replies. In our experience, when an employer replies to a review, it can not only balance out a critical review, but actually cast an even more positive light on the company. We allow employers to post these responses for free when they sign up for a free Employer Account.

Lastly, we understand that you would like your client's company to be removed from Glassdoor. We have noted the following in the Legal FAQs provided to you: Because we believe in creating a robust and transparent resource for all employees, and because it is not unlawful for us to host discussion of specific companies on our forum, we do not remove companies from our website.

Regards,

Glassdoor Legal | Glassdoor

legalinquiries@glassdoor.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

# glassdoor — Legal FAQs

**Q: Why won't Glassdoor remove a review after being informed that the review contains false facts?**

A: When it comes to whether or not the substance of the reviews on Glassdoor are true or false, it is often impossible for us to make that determination. We do not remove content in these circumstances, as we do not feel that we can act as the finder of fact. Glassdoor's general position is that a review is valid from the standpoint that it is one person's personal experience and understanding of their job and company.

Each review on our site contains the author's own subjective opinions and may also contain factual statements reflecting that individual's personal experience working at a company. When members accept our Terms of Use by submitting reviews, they are representing to us that the factual statements they make (those capable of being proven true or false) are indeed true.

We endeavor to screen from our site posts that, in our discretion, contain obvious falsehoods (i.e. those that do not involve weighing the believability of the author vs. a party who objects to a post). But we do not act as judge and jury for factual disputes. And our Terms of Use makes clear that the user alone is responsible for what they post.

**Q: Why won't Glassdoor remove a review after being informed that the review represents a breach of an employee or candidate contractual obligation (such as confidentiality or non-disparagement)?**

A: Our Terms of Use prohibit users from posting content that violates contractual obligations. This means that when users accept our Terms of Use by submitting content, they are representing to us that they are not violating a binding contractual obligation. When it comes to determining whether or not the author of the post is violating a binding obligation, it is often impossible for us to make that determination. We are not in a position to conclusively determine the existence of an obligation, its applicability to the posted content, and whether the obligation is enforceable under applicable federal and state law. We do not remove content in these circumstances, as we do not feel that we can act as the finder of fact.

Employers should also bear in mind that employee policies and contractual provisions that restrict the rights of workers to share information with each other about wages and working conditions are unlawful under Federal law.

We endeavor to screen from our site posts that appear to us, in our sole discretion, to contain valuable trade secret information (e.g. source code, customer lists, manufacturing techniques, R&D activities, budgets, technical know-how). But we do not act as judge and jury for factual disputes about violations of contractual obligations. And our Terms of Use makes clear that the user alone is responsible for what they post.

**Q: Will Glassdoor consider evidence offered to substantiate that a review is false or was posted in breach of a contractual obligation?**

A: We are not well suited to determine the accuracy, completeness, or authenticity of evidence supplied by an interested party objecting to a particular post. And evidence supplied by an interested party is nearly always open to some degree of dispute. We do not want to find ourselves censoring the viewpoints expressed on our site when we cannot be certain it is warranted.

**Q: How do you verify the information is really from employees and job candidates?**

A: Since we're unable to fully verify the identity of an anonymous user, we require each user to certify their employee relationship to the company when they post any content. We also require all users to validate their email address before their posts are made available to the community. This verification process allows us to put measures in place to identify suspicious users and/or posts. And all of these, combined with active community moderation and our commitment to review every post, allow us to have confidence in our information.

**Q: Will Glassdoor remove my company from the site?**

A: No. Because we believe in creating a robust and transparent resource for all employees, and because it is not unlawful for us to host discussion of specific companies on our forum, we do not remove companies from our website.

[1]

# glassdoor — Legal FAQs

**Q: Can Glassdoor be held liable for the content of the reviews hosted on its site?**

A: Glassdoor cannot be held liable for the user-generated content we host on our site. In 1996, the US Congress – recognizing the threat to the development of the internet if web platforms were held responsible for the accuracy of every piece of content posted by their users – enacted Section 230 of the **Communications Decency Act**, 47 U.S.C. §230, (the "CDA"). The CDA provides that, with limited exceptions for certain intellectual property claims and federal criminal activity, web platforms cannot be held liable for the content authored and posted by third parties. Specifically, the CDA states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Because Glassdoor is not the "publisher" or "speaker" of the content submitted by our users, we are not liable for most types of claims arising from this content.

**Q: Does Glassdoor waive its immunity under the CDA by moderating content to decide whether or not to display a post?**

A: No. A website's decision whether or not to display a post does not, by itself, amount to participation in the creation of that content and thus does not constitute a waiver of immunity. In addition, the CDA specifically provides (in 47 U.S.C. §230 (c)(2)): "No provider or user of an interactive computer service shall be held liable on account of – (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or users considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable whether or not such material is constitutionally protected." Wikipedia has an informative entry to explain that Section 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.

**Q: Does Glassdoor waive its immunity under the CDA by leaving content up after Glassdoor has been notified it is defamatory?**

A: No. Websites do not have to remove content from their site if they receive notice that the material is defamatory. For more information on this point and others, the Digital Medial Law Project has an informative entry on online activities covered by the CDA.

**Q: What if an Employer believes a posting violates Glassdoor's Community Guidelines but Glassdoor will not remove the post?**

A: Glassdoor's Community Guidelines are recommendations for how users can write reviews so that other members of our community will find them credible and useful. They also represent an effort to encourage a certain quality of discourse on our site. But while the Guidelines help inform our decision on whether or not to remove a particular post, they do not operate as a guarantee that we will remove a post whenever a user claims to have identified an infraction.

If a user believes a post does not follow the recommendations of a Community Guideline, we ask that the user flag the post for further review. Our content team will then re-review the flagged post and decide whether we think the challenged content should be considered "Prohibited Content" under the Terms of Use. If we agree with the user who flagged the post, we will remove the content.

We ask our users to understand that we apply the same standard of review for all content (irrespective of whether or not the content concerns an employer client of Glassdoor). Ultimately, content decisions are within our sole discretion and we do not negotiate about our application of a Guideline to our final decision as to whether or not a piece of content warrants removal.

**Q: Does Glassdoor breach its own Terms of Use by declining to remove content that an employer believes to be a violation of those terms?**

A: No. Our Terms of Use make clear that the user alone is responsible for what they post on our site. Moreover we are normally not in a position to determine whether a particular piece of content is actually "Prohibited Content" as defined by our Terms of Use. Given the important free speech principles involved, we may defer to the relevant court to make that determination. Lastly, Section 4.3 of our Terms of Use explains that our enforcement of the Terms of Use by removal of content is our right but not an obligation.

**Q: What happens if, despite the CDA, someone sues Glassdoor for a claim arising from the user-generated content hosted by Glassdoor?**

A: Every party filing a lawsuit has a duty to review the facts and the law before they file suit so that they can demonstrate that the lawsuit was filed in good faith. Glassdoor conducts its business so that we do not run afoul of any exceptions to our CDA immunity from liability for third party content. If someone chooses to ignore the clear application of CDA immunity to Glassdoor and attempts to sue us for the content provided by our users, that party could be required to pay attorneys' fees and be subject to sanctions for having filed a frivolous lawsuit.

# glassdoor
## Legal FAQs

**Q: Can Glassdoor be sued outside the United States?**

A: Glassdoor is incorporated in Delaware, USA and located in California, USA. We operate our website and host all our content within the USA. Proper jurisdiction for a lawsuit is in the U.S. For suits filed outside the U.S., the SPEECH Act precludes enforcement in the US of foreign defamation judgments that are contrary to (1) the US Constitution's First Amendment protections for speech or (2) the immunity for internet service providers hosting such speech under the CDA (an immunity that applies to Glassdoor's hosting of employee reviews). Wikipedia provides some useful background on the SPEECH Act.

Foreign parties should consider the application of the SPEECH Act and the penalties for failure to prevail in a US enforcement action before undertaking legal action in a foreign jurisdiction in connection with a post on Glassdoor.

**Q: How does Glassdoor respond to civil subpoenas requesting identifying information of our users?**

A: Glassdoor is located in Marin County, California. The California Civil Code requires that subpoenas for out-of-state actions must be domesticated in California by way of a validly-issued and properly-served California subpoena in order to be enforceable in California. In addition, other states' discovery procedures require such subpoenas to be served in compliance with the law of the state where the recipient of the subpoena is located – in this case, California. Subpoenas should be served on our registered agent in California: Glassdoor, Inc., c/o CT Corporation, 818 W Seventh Street, Los Angeles, CA 90017.

Because such subpoenas request the identifying information of individuals exercising their qualified First Amendment privilege of anonymous free speech, and because our users have an expectation that we will safeguard their privacy when they post on our site, we do not simply hand over this information upon receipt of a civil subpoena. We require the party requesting this information to make the proper legal showing to demonstrate that the user has waived their First Amendment privilege.

**Q: Why does Glassdoor have this policy regarding demand letters and subpoenas?**

A: If Glassdoor were to comply with demand letters requesting the removal of content where we cannot independently determine a violation of our Terms of Use, or if we released the identifying information of a user promptly upon receipt of a civil subpoena (or left it solely to our users to challenge such subpoenas), the resulting chilling effect on free speech would undermine the utility of our site as a public forum for job seekers to share and discover the full spectrum of views about workplace experiences.

**Q: Does Glassdoor remove negative reviews for employers who buy its services?**

A: No. We apply the same standard of review for all content (whether or not the content concerns an employer client of Glassdoor). We take this policy extremely seriously. If we decline to remove a negative review before an employer becomes a client, that employer won't have any better luck convincing us to remove the review once they do become a client (no matter how much they spend with us).

Furthermore, we believe each employer has the right to respond to a review left by a member for free. The tools we offer employers to manage their reviews are the same for client and non-client companies alike. Non-client companies can gain access to these tools for free by requesting a Free Employer Account. So when we suggest an employer engage with Glassdoor to manage its reviews on our site, it is not restricted in any way by whether they are a paid client or not.

**Q: How do employers manage their reviews on Glassdoor?**

A: In our experience, those companies that recognize the value of social media, notwithstanding their concerns about individual reviews, benefit from the decision to manage their reviews through meaningful engagement with our website. Employers can flag reviews on our site that they feel violate our terms. Those reviews will be given a second look by the content moderation team to see if we missed something the first time. If we do not find a violation of our Terms of Use and an employer believes a review is not representative of the workplace experience at their company, we recommend that the employer provide an employer response to the post at issue – a response which is the only comment we allow. In our experience, thoughtful, professional employer responses go a long way to diffusing the effect of negative posts (especially those posts not so professional in tone). Also, those companies that encourage their workforce to provide unbiased reviews generally benefit from the resulting larger sample size of content: the greater number of reviews, the more likely that extreme reviews will interpreted as outliers (to the extent they do not reflect the prevailing view of employees) – and readers tend to discount the reliability of outlier reviews. Here's a link to our tips for managing reviews on Glassdoor.

This Legal FAQ is provided for informational purposes only and does not constitute legal advice. You should not rely upon this information without seeking advice from an attorney who is competent in the relevant field of law.

[ 3 ]