C A N A D A

PROVINCE OF QUEBEC
DISTRICT OF MONTREAL

N°:  500-17-080160-131

SUPERIOR COURT

---

**DIGITAL SHAPE TECHNOLOGIES INC.**

-and-

**RADOMIR NIKOLAJEV**

Plaintiffs/Cross-Defendants

v.

**KELLY MIKULEC**

Defendant/Cross-Plaintiff

-and-

**LES CARRIÈRES JOBWINGS INC.**, a legal person, duly constituted according to the law, having a place of business at 107-1689, rue St-Patrick, Montréal, Québec, district of Montreal, H3K 3G9

Mise en cause

-and-

**GLASSDOOR INC.**, a legal person, duly constituted according to the laws of Delaware, having a place of business at 100 Shoreline Highway, Building A, Mill Valley, California, 94941, USA

Mise en cause

---

# APPLICATION FOR DISCLOSURE AND COMMUNICATION OF DOCUMENTS RELATING TO A DISPUTE
## (Art. 251 CCP)

TO ONE OF THE JUDGES OF THE SUPERIOR COURT, SITTING IN THE PRACTICE DIVISION FOR THE DISTRICT OF MONTREAL, PLAINTIFFS DIGITAL SHAPE TECHNOLOGIES INC. AND RADOMIR NIKOLAJEV RESPECTFULLY STATE AS FOLLOWS:

### A. INTRODUCTION

1.  Digital Shape Technologies Inc. ("**DST**") is a company specialized in the development and marketing of a financial analysis software through a sophisticated product named Webfolio;

2.  The president and one of the founders of DST is Mr. Radomir Nikolajev;

3.  Because of the high degree of complexity as well as the various innovative features of its product, DST offers its services to an exclusive group of clients operating, among others, in the insurance, banking and hedge funds industries;

4.  DST operates in a highly competitive market and its reputation and credibility, as well as that of its managers, are highly relevant in a client's decision to retain DST's services rather than those of a competitor;

5.  Mise en cause Les Carrières Jobwings Inc. (hereinafter "**Jobwings**"), a legal person duly constituted under the laws of Quebec, operates a website which is accessible to the general public at "www.ratemyemployer.ca", as appears from an extract of the *Registre des entreprises du Québec* communicated in support hereof as **Exhibit R-1**;

6.  Mise en cause Glassdoor Inc. (hereinafter "**Glassdoor**"), a legal person duly constituted under the laws of Delaware, also operates a website which is accessible to the general public at "www.glassdoor.ca", as appears from an extract of Glassdoor's website communicated in support hereof as **Exhibit R-2**;

7.  Defendant is a former employee of DST, who was employed by the latter from July 9, 2012 to January 28, 2013, as it appears from the Court record;

8.  On March 7, 2013, DST and Mr. Nikolajev (hereinafter, collectively "**Plaintiffs**") were the subject of false and defamatory posts published on Jobwings' and Glassdoor's respective websites (the "**Posts**"), as appears from a copy of the Posts communicated in support hereof as **Exhibit R-3,** and as further pleaded in the Court record;

9.  DST identified Defendant as being the author of at least one of the Posts;

10. Consequently, on December 6, 2013, Plaintiffs instituted a defamation suit against Defendant, as it appears from the Court record (the "**Dispute**");

11. Defendant has since admitted being the author of the Posts, the whole as it appears from the Court record;

12. DST has also instituted legal proceedings against another former employee for false and defamatory posts published on Jobwings' website at "www.ratemyemployer.ca" on April 15 and 17, 2012, as it appears from the Court record in file number 500-17-075087-125;

13. In the context of their defamation suit, it is relevant for Plaintiffs to determine the outreach of the Posts and to what extent they were viewed and/or commented;

14. It is also relevant for Plaintiffs to obtain information in order to determine whether any actual or potential clients, employees, service providers or competitors have read the Posts, as well as whether any of the latter have commented or endorsed the Posts, thereby aggravating the damages;

15. Jobwings and Glassdoor hold such relevant information and/or documentation, whether in electronic or any other form, relating to the Dispute (hereinafter the "**Documentation**") which, if made accessible to Plaintiffs, will allow them to introduce further evidence as to the extent of the damages that they have suffered in connection with the Posts;

16. To Plaintiffs' knowledge, no other entity than Jobwings and Glassdoor can provide them with the requested Documentation;

### B. PRIOR CORRESPONDENCE WITH JOBWINGS

17. On February 11 2016, Plaintiffs sent a letter to Jobwings, seeking its collaboration to obtain the following:

> En considération de ce qui précède, nous vous demandons de nous communiquer les informations suivantes :
>
> (1) (…)
>
> (2) copie de tous les commentaires émis à l'égard de DST, que ces commentaires aient été supprimés ou non de votre Site, la période de publication de ces commentaires, de même que l'adresse courriel, les noms et les adresses IP de toutes les personnes ayant émis ces commentaires (supprimés ou actuels), les URL correspondants à la soumission de ces formulaires, de même que la date de soumission des formulaires ;
>
> Si ces informations ne sont pas disponibles, veuillez nous fournir toute information utile permettant de les retracer ;
>
> (3) le nombre de personnes ayant consulté les Propos, leur adresse IP et, lorsque cette information est disponible, leurs adresses courriel et leur nom, ainsi que les URL correspondants aux pages visitées et la date des visites ;

> (4) le nombre de personnes ayant coché que cette revue des Propos leur était utile ou non, leur adresse IP et, lorsque cette information est disponible, leur adresse courriel et leur nom, les URL correspondants à la soumission du formulaire, de même que la date de soumission du formulaire.

as it appears from a copy of Plaintiffs attorneys' February 11, 2016 letter to Jobwings, communicated in support hereof as **Exhibit R-4**;

18.   On February 22, 2016, Jobwings replied that it was unwilling to communicate any documentation to Plaintiffs in the absence of a court order, as it appears from a copy of Jobwings' attorneys' February 22, 2016 letter, communicated in support hereof as **Exhibit R-5**;

19.   In its letter (R-5), Jobwings confirmed holding the following with respect to the March 7, 2013 Posts:

> En ce qui a trait aux renseignements demandés dans votre lettre, veuillez prendre note de ce qui suit :
>
> (…)
>
> 4. En ce qui a trait à l'évaluation du 7 mars 2013, veuillez être avisé que notre cliente dispose de ce qui suit : texte du commentaire, notes données aux questions, date et heure de création, adresse IP de la personne ayant affiché l'évaluation, adresse courriel de la personne ayant affiché l'évaluation.
>
> 5. Notre cliente possède encore tous les commentaires émis à l'égard de votre cliente, que ces commentaires aient été supprimés au [sic] non, ainsi que la période d'affichage des commentaires.
>
> 6. En ce qui a trait aux personnes ayant consulté les évaluations et les commentaires, notre cliente dispose du nombre de visiteurs uniques mais ne détient aucune information nominative à leur égard.

20.   It remains unclear whether Jobwings is in possession or able to retrieve the remainder of the requested Documentation;

21.   On April 5, 2016, Plaintiffs, without waiving their rights to request the Court's authorization to obtain all relevant Documentation in Jobwings' possession, requested that Jobwings communicate part of the above Documentation that it confirmed detaining and which Plaintiffs consider neither identifying information (*"renseignement nominatif"*) nor confidential information, as it appears from a copy of Plaintiffs' attorneys' April 5, 2016 letter, communicated in support hereof as **Exhibit R-6**;

22.   On April 8, 2016, Jobwings reiterated that it was unwilling to collaborate with Plaintiffs in the absence of a court order, as it appears from a copy of Jobwings' attorneys' April 8, 2016 letter, communicated in support hereof as **Exhibit R-7**;

23.   On April 19, 2016, in order to clearly circumscribe the legal debate and avoid any ambiguity, Plaintiffs requested details from Jobwings as to the documentation

that it possesses, as it appears from a copy of Plaintiff's attorneys' April 19, 2016 letter, communicated in support hereof as **Exhibit R-8**;

24.   In light of the above, Plaintiffs request that this Honourable Court order Jobwings to communicate the Documentation that it has in its possession regarding the Posts and which was requested in Plaintiff's February 11, 2016 letter (R-4);

25.   Notwithstanding the foregoing, Plaintiffs are willing to limit the conclusions of the present Application regarding Jobwings, upon formal confirmation that the latter does not hold the remainder of the requested Documentation, including in its back-ups, and that it cannot access it in any other way;

## C. PRIOR CORRESPONDENCE WITH GLASSDOOR

26.   On February 11, 2016 Plaintiffs also sent a letter to Glassdoor, seeking its collaboration to obtain the following: :

> In view of the foregoing, we respectfully ask that you provide us with the following information:
>
> (1)   a copy of all comments made with respect to DST, notwithstanding the fact they have since been removed, the email addresses, names and IP addresses of the individuals who posted such comments, the URL corresponding to the submission of such forms, as well as the submission date;
>
> If this information is not available, we would ask that you provide us any and all relevant information which would help trace such data;
>
> (2)   the number of individuals having read the Posts and the comments, their email addresses, names and IP addresses, when such information is available, the URL corresponding to the visited page and the date of the visit;
>
> (3)   the number of individuals having indicated that the Posts and/or comments were "helpful", their IP addresses, email addresses and names, the URL corresponding to the submission of such forms, as well as the submission date.

as it appears from a copy of Plaintiffs attorneys' February 11, 2016 letter to Glassdoor, communicated in support hereof as **Exhibit R-9**;

27.   On February 24, 2016, Glassdoor replied by email that it was unwilling to provide the requested documentation, as it appears from a copy of said email communicated in support hereof as **Exhibit R-10**;

28.   On April 5, 2016, Plaintiffs, without waiving their rights to request the Court's authorization to obtain all relevant documentation in Glassdoor's possession, reiterated its request concerning the non-identifying Documentation, as it appears from a copy of Plaintiffs' attorneys' April 5, 2016 letter, communicated in support hereof as **Exhibit R-11**;

We understand from your February 24, 2016 response that, as per your terms and conditions, you are not willing to disclose any identifying information regarding your users.

However, we respectfully submit that the following information requested in our letter is not identifying and/or confidential information and is not provided for in your terms and conditions:

(1) a copy of all comments made with respect to our Clients, notwithstanding the fact that they have since been removed, as well as the submission date (such information has been or still is public);

(2) the number of individuals having read the Posts and the comments (this information is not identifying information)

(3) the number of individuals having indicated that the Posts and/or comments were "helpful" as well as the submission date (this information is not identifying information).

29. On April 7, 2016, Glassdoor replied by email that it "generally does not retain such information upon user deletion", as appears from a copy of said email dated April 7, 2016, communicated in support hereof as **Exhibit R-12**;

30. On April 15, 2016, given the unprecise nature of Glassdoor's April 7, 2016 response (R-10), Plaintiffs requested details from Glassdoor as to the documentation that it possesses and advised the latter of its intention to file the present Application, as it appears from a copy of Plaintiff's attorneys' April 15, 2016 email, communicated in support hereof as **Exhibit R-13**;

31. To date, no response was provided by Glassdoor to the April 15, 2016 email (R-13);

32. In light of the above, Plaintiffs request that this Honourable Court order Glassdoor to communicate the Documentation that Glassdoor has in its possession regarding the Posts and which was requested in their February 11, 2016 letter (R-9) ;

33. Notwithstanding the foregoing, Plaintiffs are willing to withdraw the conclusions of the present Application regarding Glassdoor upon formal confirmation that the latter does not hold the requested Documentation, including in its back-ups, and that it cannot access it in any other way;

34. The present Application is well founded in fact and in law;

**FOR THE REASONS DETAILED HEREIN, MAY IT PLEASE THIS HONOURABLE COURT TO:**

A. **ORDER** Mise en cause LES CARRIÈRES JOBWINGS INC. to disclose and communicate to DIGITAL SHAPE TECHNOLOGIES INC. and RADOMIR

NIKOLAJEV the documentation in its possession holding the following information, within 15 days of the judgment to be rendered :

    (1) a copy of all Posts and comments made with respect to DST, notwithstanding the fact they have since been removed;

    (2) the time and date of creation as well as the period for which all of these Posts and comments were published;

    (3) the notes attributed to the questions;

    (4) IP addresses and email addresses of the individuals who posted such Posts and/or comments, as well as the URL corresponding to their submission;

    (5) the number of individuals having read the Posts and/or comments, their email addresses, names and IP addresses, and the URL corresponding to the visited page and the date of the visit;

    (6) the number of people having indicated that they found the Posts useful or not, their e-mail addresses, names and IP addresses, the URL corresponding to the submission of such forms, as well as the submission date;

B.    **ORDER** Mise en cause GLASSDOOR INC. to disclose and communicate to DIGITAL SHAPE TECHNOLOGIES INC. and RADOMIR NIKOLAJEV the documentation in its possession holding the following information, within 15 days of the judgment to be rendered:

    (1) a copy of all Posts and comments made with respect to DST, notwithstanding the fact they have since been removed;

    (2) The submission date of the Posts and/or comments as well as the period for which they were published;

    (3) the email addresses, names and IP addresses of the individuals who posted such Posts and/or comments, as well as the URL corresponding to their submission;

    (4) the number of individuals having read the Posts and the comments, their email addresses, names and IP addresses, the URL corresponding to the visited page and the date of the visit;

    (5) the number of individuals having indicated that the Posts and/or comments were "helpful", their IP addresses, email addresses and names, the URL corresponding to the submission of such forms, as well as the submission date;

C.    **ORDER** any other conclusions that it may deem necessary in the present circumstances;

-8-

D.   **THE WHOLE** without costs, unless contested.

Montreal, April 19, 2016

**Borden Ladner Gervais LLP**
Attorneys for Plaintiffs DIGITAL SHAPE
TECHNOLOGIES INC. and RADOMIR
NIKOLAJEV

# AFFIDAVIT

I, the undersigned, Eve Gaudet, practising my profession as a lawyer with Borden Ladner Gervais LLP located at 1000 De La Gauchetière Street West, Suite 900, Montréal, Province of Québec, H3B 5H4, solemnly declare:

1.      I am one of the lawyers for Plaintiffs in the present case;

2.      I have read the attached Application for Disclosure and Communication of Documents Relating to a Dispute and all the facts set forth are true.

**AND I HAVE SIGNED:**

_____

Eve Gaudet

Solemnly declared before me in
Montréal, this 19th day of April 2016

_____
Commissioner for Oaths for Québec

Commissaire à l'assermentation
NATHALIE ANGERS
# 137908
Pour le Québec

## NOTICE OF PRESENTATION

TO:   **Me Marion Dana**
      O'REILLY DANA
      451, Boul. Beaconsfield, bureau 202
      Beaconsfield (Québec)  H9W 4C2

      **Attorney for Defendant //Cross-Plaintiff
      Kelly Mikulec**

TO:   **Me Alexandre Ajami**
      MILLER THOMSON SENCRL
      1000 rue de la Gauchetière O, bureau 3700
      Montréal (Québec)
      H3B 4W5

      **Attorney for Mise-en-cause Les Carrrières
      Jobwings inc.**

TO :  **Glassdoor inc.**
      100 Shoreline Highway
      Building A
      Mill Valley, California
      94941 USA

      **Mise-en-cause**


**TAKE NOTICE** that the Plaintiffs' *Application for Disclosure and Communication of Documents Relating to a Dispute* will be presented for adjudication before one of the honourable judges of the Superior Court, sitting in the practice division, in **Room 2.16** of the Montreal Courthouse located at 1 Notre-Dame Street East, on **April 25, 2016** at **9:00 a.m.** or as soon as counsel may be heard.

**DO GOVERN YOURSELF ACCORDINGLY**.

                              Montreal, April 19, 2016

                              **Borden Ladner Gervais** LLP
                              Lawyers for Plaintiffs

R-1

Case 3:16-mc-80150-JSC   Document 8-7   Filed 09/08/16   Page 13 of 79



*Registraire
des entreprises*
Québec

# Rechercher une entreprise au registre

### État de renseignements d'une personne morale au registre des entreprises

Renseignements en date du 2016-03-24 09:31:32

## État des informations

### Identification de l'entreprise

| | |
|---|---|
| Numéro d'entreprise du Québec (NEQ) | 1149841919 |
| Nom | LES CARRIÈRES JOBWINGS.COM INC. |
| Version du nom dans une autre langue | JOBWINGS.COM CAREERS INC. |

### Adresse du domicile

| | |
|---|---|
| Adresse | 107-1689 RUE Saint-Patrick<br>Montréal Québec H3K3G9<br>Canada |

### Adresse du domicile élu

| | |
|---|---|
| Adresse | Aucune adresse |

### Immatriculation

| | |
|---|---|
| Date d'immatriculation | 2001-02-02 |
| Statut | Immatriculée |
| Date de mise à jour du statut | 2001-02-02 |
| Date de fin de l'existence | Aucune date de fin d'existence n'est déclarée au registre. |

### Forme juridique

| | |
|---|---|
| Forme juridique | Société par actions ou compagnie |
| Date de la constitution | 2001-01-31 Constitution |
| Régime constitutif | |

|  | QUÉBEC : Loi sur les compagnies partie 1A, RLRQ, C. C-38 |
| Régime courant | QUÉBEC : Loi les sociétés par actions (RLRQ, C. S-31.1) |

### Dates des mises à jour

| | |
|---|---|
| Date de mise à jour de l'état de renseignements | 2015-02-03 |
| Date de la dernière déclaration de mise à jour annuelle | 2015-02-03 2015 |
| Date de fin de la période de production de la déclaration de mise à jour annuelle de 2016 | 2016-08-01 |
| Date de fin de la période de production de la déclaration de mise à jour annuelle de 2015 | 2015-08-01 |

### Faillite

L'entreprise n'est pas en faillite.

### Fusion et scission

Aucune fusion ou scission n'a été déclarée.

### Continuation et autre transformation

Aucune continuation ou autre transformation n'a été déclarée.

### Liquidation ou dissolution

Aucune intention de liquidation ou de dissolution n'a été déclarée.

### Activités économiques et nombre de salariés

### 1$^{er}$ secteur d'activité

| | |
|---|---|
| Code d'activité économique (CAE) | 7721 |
| Activité | Services d'informatique |
| Précisions (facultatives) | SITE TRANSACTIONNEL EN RECHERCHE D'EMPLOI |

### 2$^{e}$ secteur d'activité

Aucun renseignement n'a été déclaré.

### Nombre de salariés

Nombre de salariés au Québec

De 6 à 10

## Convention unanime, actionnaires, administrateurs, dirigeants et fondé de pouvoir

### Actionnaires

#### Premier actionnaire

Le premier actionnaire est majoritaire.

| | |
|---|---|
| Nom | FRANCISCI, MANUEL |
| Adresse | 1564 av. Summerhill Montréal (Québec) H3H1B9 Canada |

#### Deuxième actionnaire

| | |
|---|---|
| Nom | Manuel FRANCISCI, Nathalie BAROUX et Christian PICHETTE, ès qualités de fiduciaires de la FIDUCIE FAMILIALE MANUEL FRANCISCI (2011) |
| Adresse | 1564 av. Summerhill Montréal (Québec) H3H1B9 Canada |

### Convention unanime des actionnaires

Il n'existe pas de convention unanime des actionnaires.

### Liste des administrateurs

| | |
|---|---|
| Nom | FRANCISCI, MANUEL |
| Date du début de la charge | |
| Date de fin de la charge | |
| Fonctions actuelles | Président, Secrétaire |
| Adresse | 1564 av. Summerhill Montréal (Québec) H3H1B9 Canada |

### Dirigeants non membres du conseil d'administration

Aucun dirigeant non membre du conseil d'administration n'a été déclaré.

### Fondé de pouvoir

Aucun fondé de pouvoir n'a été déclaré.

### Administrateurs du bien d'autrui

Aucun administrateur du bien d'autrui n'a été déclaré.

## Établissements

Aucun établissement n'a été déclaré.

### Documents en traitement

Aucun document n'est actuellement traité par le Registraire des entreprises.

## Index des documents

### Documents conservés

| Type de document | Date de dépôt au registre |
|---|---|
| DÉCLARATION DE MISE À JOUR ANNUELLE 2015 | 2015-02-03 |
| Déclaration de mise à jour courante | 2014-07-23 |
| Déclaration de mise à jour courante | 2014-04-29 |
| DÉCLARATION DE MISE À JOUR ANNUELLE 2014 | 2014-03-20 |
| Déclaration de mise à jour courante | 2013-06-20 |
| Déclaration de mise à jour courante | 2013-05-23 |
| DÉCLARATION DE MISE À JOUR ANNUELLE 2013 | 2013-02-05 |
| Déclaration de mise à jour courante | 2012-05-30 |
| DÉCLARATION DE MISE À JOUR ANNUELLE 2012 | 2012-02-27 |
| Déclaration annuelle 2011 | 2011-05-10 |
| État et déclaration de renseignements 2010 | 2010-07-15 |
| Déclaration annuelle 2008 | 2009-04-15 |
| État et déclaration de renseignements 2009 | 2009-03-05 |
| Avis de défaut | 2008-11-24 |
| Déclaration annuelle 2007 | 2008-09-30 |
| Avis de défaut | 2007-12-05 |
| Certificat de modification | 2007-07-05 |
| Déclaration annuelle 2006 | 2006-10-18 |
| Déclaration annuelle 2005 | 2005-11-22 |
| Déclaration annuelle 2004 | 2004-12-08 |
| Déclaration annuelle 2003 | 2003-10-30 |
| Déclaration annuelle 2002 | 2002-12-16 |
| Déclaration modificative | 2002-05-01 |
| Déclaration initiale | 2001-03-19 |
| Certificat de constitution | 2001-02-02 |

## Index des noms

Date de mise à jour de l'index des noms          2014-04-29

### Nom

| Nom | Versions du nom dans une autre langue | Date de déclaration du nom | Date de déclaration du retrait du nom | Situation |
|---|---|---|---|---|
| LES CARRIÈRES JOBWINGS.COM INC. | JOBWINGS.COM CAREERS INC. | 2001-01-31 | | En vigueur |

### Autres noms utilisés au Québec

| Autre nom | Versions du nom dans une autre langue | Date de déclaration du nom | Date de déclaration du retrait du nom | Situation |
|---|---|---|---|---|
| ADMINJOB.CA | | 2010-07-15 | | En vigueur |
| BAJOB.CA | | 2008-09-30 | | En vigueur |
| BELJOB.CA | | 2010-07-15 | | En vigueur |
| COMPTA.CA | | 2008-09-30 | | En vigueur |
| COMPTABILITE.CA | | 2008-09-30 | | En vigueur |
| DETAIL.CA | RETAIL.CA | 2014-04-29 | | En vigueur |
| EMPLOIENSANTE.CA | | 2008-09-30 | | En vigueur |
| EMPLOIETE.CA | SUMMERJOBS.CA | 2014-04-29 | | En vigueur |
| EMPLOIHIVER.CA | WINTERJOBS.CA | 2014-04-29 | | En vigueur |
| EMPLOIS.CA | JOBS.CA | 2014-03-20 | | En vigueur |
| EMPLOISANTE.CA | HEALTHCAREJOB.CA | 2014-04-29 | | En vigueur |
| HEALTHCARE.CA | | 2008-09-30 | | En vigueur |
| HRJOB.CA | | 2008-09-30 | | En vigueur |
| ITJOB.CA | | 2008-09-30 | | En vigueur |
| LA TOILE DES RECRUTEURS | | 2002-05-01 | | En vigueur |
| LEGALJOB.CA | | 2008-09-30 | | En vigueur |
| LES CARRIÈRES JOBWING | | 2008-09-30 | | En vigueur |
| LES CARRIÈRES JOBWINGS | JOBWINGS CAREERS | 2014-04-29 | | En vigueur |
| NICEJOB.CA | | 2008-09-30 | | En vigueur |
| PARALEGALJOB.CA | | 2008-09-30 | | En vigueur |
| PART-TIME.CA | | 2008-09-30 | | En vigueur |
| PHARMAJOB.CA | | 2010-07-15 | | En vigueur |
| PMJOB.CA | | 2008-09-30 | | En vigueur |
| PUBLIPAC.CA MD | | 2010-07-15 | | En vigueur |
| RATEMYEMPLOYER.CA | | 2008-09-30 | | En vigueur |
| RATEMYEMPLOYER.COM | | 2008-09-30 | | En vigueur |

| Autre nom | Versions du nom dans une autre langue | Date de déclaration du nom | Date de déclaration du retrait du nom | Situation |
|---|---|---|---|---|
| RECRUTECH.CA | | 2008-09-30 | | En vigueur |
| RETAILJOB.CA | | 2008-09-30 | | En vigueur |
| SALESREP.CA | | 2008-09-30 | | En vigueur |
| TECHJOBS.CA | | 2014-04-29 | | En vigueur |
| TEMPS-PARTIEL.CA | | 2008-09-30 | | En vigueur |
| ADMJOB.CA | | 2008-09-30 | 2010-07-15 | Antérieur |

© Revenu Québec, 2015

R-2

Emplois    Entreprises    Salaires    Entretiens                    Se connecter

Rechercher des emplois ou des entreprises...                                   Employeurs

**Qui sommes-nous ?**
- Présentation
- La direction
- Conseil d'administration
- Règles de la communauté
- Centre d'aide

› Centre de presse

› Conditions d'utilisation et confidentialité

## Qui sommes-nous ?

### Notre mission

Aider les gens à trouver des emplois et des entreprises qui leur plaisent, où qu'ils soient.

### Qu'est-ce que Glassdoor ?

Glassdoor est le site d'offres d'emploi et de recrutement à la croissance la plus rapide.

Glassdoor a une base de données croissantes de plus de 8 millions d'avis d'entreprises, d'évaluations de PDG, de salaires, d'avis et de questions d'entretiens, d'avis sur les avantages sociaux, de photos de bureaux, et bien plus. Contrairement à d'autres sites d'emploi, toutes ces informations sont partagées uniquement par ceux qui connaissent le mieux les entreprises : les employés. Publiez une offre d'emploi qui viendra s'ajouter aux millions d'offres d'emploi existantes un autre site vous permet de voir quels employeurs embauchent, les conditions de travail réelles dans l'entreprise ou comment sont les entretiens d'embauche selon les employés, et les niveaux de salaires possibles. Glassdoor est également disponible via son application mobile sur les plates-formes iOS et Android.

La section Glassdoor pour employeurs offre aux employeurs des solutions efficaces en matière de recrutement et d'image de marque. Nous aidons plus de 2 000 clients et partenaires à promouvoir leur marque d'employeur et leurs emplois auprès de candidats ciblés, qui pourraient ne pas les connaître. Glassdoor se différencie des autres canaux de recrutement par la qualité des candidats que nous proposons et par notre influence sur les décisions des candidats à la recherche d'emplois et d'entreprises.

Glassdoor a son siège social à Mill Valley en Californie et a été fondée en 2007 par Robert Hohman, Rich Barton et Tim Besse.

### En savoir plus

Des informations supplémentaires sur Glassdoor sont disponibles sur le blogue de Glassdoor, le blogue de Glassdoor pour les employeurs et nous suivant sur   Twitter,   Facebook,   Google+ et   Youtube.

### Contribuez

**Pour les employeurs**

Racontez l'histoire de votre entreprise grâce au profil employeur amélioré. Mettez en avant votre marque d'employeur, faites la promotion de vos offres d'emploi, intégrez votre profil à Facebook et accédez à des analyses avancées et à des études comparatives de la concurrence. En savoir plus.

### Mentions légales

Glassdoor, Inc., 100 Shoreline Highway, Building A, Mill Valley, California, 94941, USA
Une corporation du Delaware, Fichier No : 4366729
PDG   Robert Hohman
content-fr@glassdoor.com

Glassdoor vous permet de découvrir gratuitement comme si vous y étiez, les emplois et les entreprises grâce à des informations sur les salaires, des avis sur les entreprises et des questions d'entretien d'embauche — tous publiés de manière anonyme par les employés et les demandeurs d'emplois.

**Glassdoor**              **Employeurs**           **Communauté**          **Partenariats**

À propos & Mentions      Solutions recrutement    Centre d'aide           Sites d'emploi
légales                  Centre employeur         Règlement               Annonceurs
Palmarès &                                        Conditions d'utilisation
Tendances                                         Confidentialité et
Blogue                                            cookies
Nous contacter

Vous travaillez dans le secteur des RH ou du recrutement ?

Copyright © 2008–2016, Glassdoor  Glassdoor ® est une marque déposée de Glassdoor, Inc.

Vous travaillez dans le secteur des RH ou du recrutement ?

R-3

Jobs Companies Salaries Interviews Sign Up | Sign In | Write a Review |

Companies | Company Name | Location | Search | Advanced

PIÈCE/EXHIBIT P-2

Featured Jobs powered by monster Click to see more

Recent Graduate... ME Events Group has been a global leader in t... Montreal, QC

Manager, Mercha... Mega Group Inc. - Boucherville or Mississauga... Boucherville, QC

# Digital Shape Technologies

1.0 of 5 – 1 reviews

www.dst.ca Montreal Canada 16 to 50 Employees

Work in HR? Unlock Your Company Profile

Write a Review | Follow

Overview | Salaries | Reviews | Interviews | Jobs | More

## See all Digital Shape Technologies Reviews (1)

Digital Shape Technologies Employee Review

Mar 07, 2013

### "Toxic environment and extreme paranoia"

Culture & Values
Senior Management
Comp & Benefits
Career Opportunities
Work/Life Balance

Anonymous Employee (Former Employee)

I worked at Digital Shape Technologies full-time for less than a year

**Pros** – Beautiful offices and great salary. Downtown location.

**Cons** – Extreme paranoia, very stressful, no policies or structure. Upper management rules by intimidation. Very high turnover. No communication. They won't do performance appraisals because that would mean putting something in writing - back to the paranoia. Horrible place to work. Privately owned - saturated with family members. Forget about positive feedback - you only hear negative, sometimes delivered loudly and angrily. No culture, no values.

**Advice to Senior Management** – Treat treat staff better. These talented people work hard and care about their contributions. Instead you treat them like trained monkeys. Staff deserve recognition, the chance for advancement and added responsibilities. Get a grip on the paranoia.

**No, I would not recommend this company to a friend** – I'm not optimistic about the outlook for this company

Was this review helpful? Yes | No Flag Review

Sponsored Jobs

Accounting Clerk
MD Physician Services – Montreal

Manager, Business Development
Ryan, LLC – Montreal

Featured Jobs powered by monster Click to see more

Engineering St... RioTinto Rio Tinto is a leading international mining group headquartered in ... Montréal, QC

Fieldwork Manager - Great opp... Are you looking to build a career in p... Montreal, QC

Chargé de Projet Senior RestaurationPremièreAction est la plus... Dorval, QC

Featured Jobs Post a Job

Operations Assistant
CAPERIO GROUP – Montreal

Administrative Assistant (Term)
Richardson International Limited – Boucherville

Sales Representative- Montreal
XPO Logistics – Vaudreuil-Dorion

Développeur Java senior - Java Senior Developer
Expedia – Montreal

Clinical Application Specialist
Fresenius Medical Care - North America – Montreal

## Reviews by Company

Honda Reviews
Sony Reviews
The Bay Reviews
Apple Reviews
Google Reviews
Nokia Reviews
Microsoft Reviews
GE Reviews
Logitech Reviews
Lenovo Reviews
TELUS Reviews
AMD Reviews
CIBC Reviews
WIND Mobile Reviews

Work in HR or Recruiting?



IBM Reviews

**Salaries by Company**

Air Canada Salaries
RBC Salaries
UBC Salaries
Government of Canada Salaries
University of Toronto Salaries
Canada Post Salaries
Bank of Canada Salaries
British Columbia Government Salaries
TELUS Salaries
SAP Salaries
Starbucks Salaries
University of Waterloo Salaries
WestJet Salaries
Hydro One Salaries
Statistics Canada Salaries

About Us  |  Employers  |  Careers  |  Feedback  |  Help  |  Post a Job

Glassdoor is your free inside look at Digital Shape Technologies reviews and ratings. All reviews posted anonymously by Digital Shape Technologies employees.

Browse    Salaries by Job  |  Salaries by Company  |  Salaries by City  |  Reviews by Company  |  Interview Questions by Job  |  Interviews by Company  |  Jobs by Title  |  Jobs by Company  |  Jobs by City

Copyright © 2008-2013  Glassdoor. All Rights Reserved. Your use of this service is subject to our Terms of Use and Privacy & Cookies Policy. Glassdoor ® is a registered trademark of Glassdoor, Inc.

Work in HR or Recruiting?

Digital Shape Technologies Communications Interview | Glassdoor.ca                    Page 1 of 2



Digital Shape Technologies Communications Interview | Glassdoor.ca                    Page 2 of 2

Canada Revenue Agency Interview

**Salaries by Company**

Air Canada Salaries
RBC Salaries
UBC Salaries
Government of Canada Salaries
University of Toronto Salaries
Canada Post Salaries
Bank of Canada Salaries
British Columbia Government Salaries
TELUS Salaries
SAP Salaries
Starbucks Salaries
University of Waterloo Salaries
WestJet Salaries
Hydro One Salaries
Statistics Canada Salaries

About Us  |  Employers  |  Careers  |  Feedback  |  Help  |  Post a Job

|  |  |

Glassdoor is your free inside look at Digital Shape Technologies Communications interview questions and advice. All interview reviews posted anonymously by Digital Shape Technologies employees and interview candidates.

Browse:   Salaries by Job  |  Salaries by Company  |  Salaries by City  |  Reviews by Company  |  Interview Questions by Job  |  Interviews by Company  |  Jobs by Title  |  Jobs by Company  |  Jobs by City

Copyright © 2008–2013 Glassdoor. All Rights Reserved. Your use of this service is subject to our Terms of Use and Privacy & Cookies Policy. Glassdoor ® is a registered trademark of Glassdoor, Inc.

Work in HR or Recruiting?

HOME   EMPLOYER RATINGS   FAQ   CONTACT   | FRANÇAIS

PIÈCE/EXHIBIT
P-3

Rate this Employer!

Search for another employer

Add an Employer

Explore 8116 employers and 37093 ratings

**Best rated employers in this industry**

1. Digital Extremes
2. KMI
3. SAP Labs
4. Qualicom Innovations
5. Microsoft

**Best rated employers of this size**

1. Jumpstart Sales & Marketing Inc.
2. Beelineweb.com
3. Inspire Fundraising Solutions
4. Element Technical Services Carlyle
5. Simcoe Muskoka Tree Services

## Digital Shape Technologies Inc.

based on 1 ratings

Size of company: Small (1 - 49 employees)
Industry: IT: Software

Rater's overall score for Digital Shape Technologies Inc.
View detailed rating

I had the misfortune of working at this company. Privately owned, family members hold top positions along with a few "trusted" individuals. There is absolutely no structure or policies, no HR support and zero communication from upper management or even among staff. (Everyone is too afraid to be seen talking to one another. The environment is very stressful due to the extreme paranoia that prevails. Everyone is watched over by upper management and intentionally intimidated. People quit after just days on the job or are fired after a few months. The firings are not explained to staff. In fact, it looks like they clean house often – most people do not last a year. They offer high salaries so that you sit there day after day tolerating an intolerable work day just for the money. In my opinion, this is not worth it. Run from this place.

Posted on 7 March 2013 by Rater #3 | Flag as inappropriate

Was this review helpful?   👍 5   👎 0

0

### Add Comment

Your email address is used for validation purposes only and is kept private in accordance with our privacy policy.

Your e-mail

Message

☐ Subscribe me to this message board

Add

Terms of Use   Privacy Policy   Posting Guidelines

0

R-4

Tommy Tremblay
514 954 2520
ttremblay@blg.com



Borden Ladner Gervais

Montréal, le 11 février 2016

**PAR MESSAGER**

**Les carrières JobWings inc.**
107-1689, rue St-Patrick
Montréal, QC, H3K 3G9

Attention:  M. Manuel Francisci, président

Objet :   Propos et commentaires publiés sur le site web RateMyEmployer.ca les
15 et 17 avril 2012 et le 7 mars 2013 concernant Digital Shape
Technologies inc.

Monsieur,

Nous sommes les procureurs de Digital Shape Technologies (« **DST** ») et de son
président, M. Radomir Nikolajev (ci-après collectivement désignés « **nos Clients** »),
lesquels nous ont donné instructions de vous faire parvenir la présente.

Les 15 et 17 avril 2012 ainsi que le 7 mars 2013, nos Clients ont fait l'objet de
commentaires de nature diffamatoire et préjudiciable à leur endroit (les « **Propos** »),
publiés votre site web www.RateMyEmployer.ca (le « **Site** »). Une copie des Propos est
annexée aux présentes. À titre informatif, les Propos du 15 avril 2012 et du 7 mars 2013
ont été retirés depuis leur publication. Celui du 17 avril 2012 apparait toujours sur votre
Site.

Nos Clients ont identifié les auteurs des Propos comme étant deux anciens employés de
DST. Afin de protéger leur honneur et leur réputation contre des atteintes illicites telles
que celles perpétrées par le biais de votre Site, nos Clients ont intenté des poursuites en
diffamation contre les auteurs des Propos en cause.

Dans le cadre de ces recours, nos Clients doivent obtenir de l'information additionnelle
concernant la personne ayant publié le Propos du 17 avril 2012, de même que
relativement aux personnes ayant lu et/ou commenté les Propos afin de procéder
notamment à une évaluation complète des dommages qu'ils ont subis en lien avec leur
publication. Il est en effet pertinent pour nos Clients de déterminer si certains de leurs
clients actuels ou potentiels, employés, fournisseurs de services ou concurrents, ont pris
connaissance de ces propos diffamatoires; par exemple, les auteurs de ces Propos, de
même que des concurrents de nos Clients, ont pu commenter ces Propos d'une manière
ou d'une autre sur votre Site aggravant ainsi le préjudice commis. En considération de



Borden Ladner Gervais

ce qui précède, nous vous demandons de nous communiquer les informations suivantes :

1) l'adresse courriel, le nom et l'adresse IP de la personne qui a publié le Propos du 17 avril 2012 reproduit en annexe, ainsi que l'URL correspondant à la soumission de ce formulaire. Si ces informations ne sont pas disponibles, veuillez nous fournir toute information utile permettant de les retracer ;

2) copie de tous les commentaires émis à l'égard de DST, que ces commentaires aient été supprimés ou non de votre Site, la période de publication de ces commentaires, de même que l'adresse courriel, les noms et les adresses IP de toutes les personnes ayant émis ces commentaires (supprimés ou actuels), les URL correspondants à la soumission de ces formulaires, de même que la date de soumission des formulaires ;

Si ces informations ne sont pas disponibles, veuillez nous fournir toute information utile permettant de les retracer ;

3) le nombre de personnes ayant consulté les Propos, leur adresse IP et, lorsque cette information est disponible, leurs adresses courriel et leur nom, ainsi que les URL correspondants aux pages visitées et la date des visites ;

4) le nombre de personnes ayant coché que cette revue des Propos leur était utile ou non, leur adresse IP et, lorsque cette information est disponible, leur adresse courriel et leur nom, les URL correspondants à la soumission du formulaire, de même que la date de soumission du formulaire.

Nous vous soulignons que ces informations ne sont pas de nature confidentielle dans le présent contexte. À cet égard, nous vous référons notamment à l'extrait suivant de votre Politique de confidentialité :

> [...] *RateMyEmployer.ca se réserve également le droit de transmettre des informations personnelles vous concernant dans la mesure où la loi obligerait RateMyEmployer.ca à le faire ou de façon à protéger ses droits de propriété du site ou ceux de ses utilisateurs, des annonceurs et/ou des fournisseurs, notamment pour empêcher une utilisation abusive ou non autorisée des services offerts par RateMyEmployer.ca. L'utilisation de ce site implique que vous avez lu et accepté la section « Termes et conditions ».*

Nous attendrons votre confirmation que vous serez en mesure de nous fournir l'information demandée aux points 1 à 4 ci-dessus dans les quinze (15) jours suivant la réception de la présente.

Par ailleurs, nos Clients ont subi, et continuent de subir, d'importants dommages en raison de la nature diffamatoire des Propos et des commentaires publiés sur votre Site. Ces Propos et commentaires (incluant celui du 17 avril 2012) contiennent des informations fausses notamment quant au taux de rétention des employés de DST, quant à l'atmosphère qui y règne et quant à l'attitude de la direction de DST envers ses employés. Leur publication continue à projeter une image négative de l'entreprise et à

2



Borden Ladner Gervais

préjudicier nos Clients. En effet, nos Clients doivent investir d'importantes ressources pour tenter non seulement d'identifier les auteurs qui se cachent derrière l'anonymat que vous leur octroyez, mais aussi pour déterminer l'ampleur des dommages subis. Afin de tenter de réduire la portée de ces dommages, nos Clients vous demandent donc que toutes références actuelles (Propos du 17 avril 2012 et les commentaires) et futures à DST ou à son président, M. Radomir Nikolajev, soient retirées ou exclues de votre Site et ce, tant que votre Site permettra aux gens de publier des propos et des commentaires sous le couvert de l'anonymat.

En vous remerciant d'avance de votre collaboration, veuillez recevoir, Monsieur, l'expression de nos sentiments distingués.

**Borden Ladner Gervais** S.E.N.C.R.L., S.R.L.

Tommy Tremblay

/mv
p.j.

500-17-075087-125
**Pièce P-1**

RateMyEmployer.ca Employ ratings by employees                           Page 1 of 1

**RateMyEmployer.ca**
[ Français ]

Who said background checks and Pre-Employment
Screenings should be reserved for employers only ?

Home
Add an employer
Review employers
FAQ
Terms of service
Privacy policy
Contact us

### Digital Shape Technologies Inc.

Overall Average
Rater Average                                    Rate this employer!

Posted by Rater 1 on 04.15.2012

I currently work for this company and would not recommend it to
anyone. Management does not provide necessary tools to do your job.
Training is never provided, especially to new employees. The
turnaround is extremely high, as I have watched around 80% of the
company leave or be dismissed mostly without just cause. The morale in
the office is low, socializing is frowned upon and the company even
hired private investigators to interrogate each employee about their
after work activities with former employees. It even resulted in a few
employees breaking down and crying because of these interrogation
interviews. Holidays are never clearly expressed in writing or otherwise
and it is even common to work on st. Jean Baptiste. Private information
such as email accounts and facebook are accessed by management so if
you ever log into your account at work, they retain your username and
password to view your personal emails. Many employees have been
terminated because of this, even if the emails were sent from home or
on a weekend. All in all if you don't socialize, don't log into any personal
information on the work computer, and not question the poor
management style, you might make it here for a little while. Do yourself
a favor and don't work here....If I could leave I would.....

Was this review helpful to you? Yes / No | Report this comment

Comments 1 Posted on 04.15.2012

Totally agree with this comment! Digital Shape Technologies Inc is not a
very nice place to work. There is no atmosphere (blank walls, nobody
talks), incompetent and complacent management. I would not
recommend anyone to work for Digital Shape Technologies Inc unless
they have no other alternative.

Report this comment

Add a comment to this rating

Ratings: 29096
Employers: 7996

Preview

**Rater's Scores**

Business model, vision and
strategy
Management's skills
Values and corporate culture
Internal communication
Feedback
Recognition
Pride
Engagement
Work space (layout)
Atmosphere
Recruitment, development,
retention
Tasks and responsibilities
Teamwork and cooperation
Organization of work
Compensation and benefits
Schedule, work load and
holidays
Stress
Work/family life balance
Advancement
Recommendable



RateMyEmployer.ca
[ Français ]

Who said background checks and Pre-Employment
Screenings should be reserved for employers only ?

### Digital Shape Technologies Inc.

**Employer's Score**

Home
Add an employer
Private employers
FAQ
Terms of service
Privacy policy
Contact us

Overall Average
Ratings   1
Size   Small (1 - 49 employees)

Rate this employer!

Oldest | Highest rated | Most helpful

**Posted by RaterZ on 04.17.2012**
I used to work for this company and I do not recommend it. Turnover is
extremely high and nobody knows why employees are living or are fired. In
fact, the management does not communicate any information about the
business strategy and even the company organization itself is not clear. All
employees actions are watched over and general atmosphere is very
stressful.

Was this review helpful to you?

| | |
|---|---|
| Business model, vision and strategy | |
| Management's skills | |
| Values and corporate culture | |
| Internal communication | |
| Feedback | |
| Recognition | |
| Pride | |
| Engagement | |
| Work space (layout) | |
| Atmosphere | |
| Recruitment, development, retention | |
| Tasks and responsibilities | |
| Teamwork and cooperation | |
| Organization of work | |
| Compensation and benefits | |
| Schedule, work load and holidays | |
| Stress | |
| Work/family life balance | |
| Advancement | |
| Recommendable | |

Ratings: 34291

Employers: 9113



HOME    EMPLOYER RATINGS    FAQ    CONTACT   | FRANÇAIS

PIÈCE/EXHIBIT
P-3

Rate this Employer!

Search for another employer

Add an Employer

Explore 8116 employers and 37093 ratings

Best rated employers in this industry

1. Digital Extremes
2. KMI
3. SAP Labs
4. Qualicom Innovations
5. Microsoft

Best rated employers of this size

1. Jumpstart Sales & Marketing Inc.
2. Beelineweb.com
3. Inspire Fundraising Solutions
4. Element Technical Services Carlyle
5. Simcoe Muskoka Tree Services

**Digital Shape Technologies Inc.**

Size of company: Small (1 - 49 employees)
Industry: IT- Software

Rater's overall score for Digital Shape Technologies Inc.
View detailed rating

I had the misfortune of working at this company. Privately owned, family members hold top positions along with a few "trusted" individuals. There is absolutely no structure or policies, no HR support and zero communication from upper management or even among staff. (Everyone is too afraid to be seen talking to one another. The environment is very stressful due to the extreme paranoia that prevails. Everyone is watched over by upper management and intentionally intimidated. People quit after just days on the job or are fired after a few months. The firings are not explained to staff. In fact, it looks like they clean house often → most people do not last a year. They offer high salaries so that you sit there day after day tolerating an intolerable work day just for the money. In my opinion, this is not worth it. Run from this place.

Posted on 7 March 2013 by Rater #3 | Flag as inappropriate

Was this review helpful?          $         0

                                     0

Add Comment

Your email address is used for validation purposes only and is kept private in accordance with our privacy policy.

Your e-mail

Message

☐ Subscribe me to this message board

Add

© 2007-2013 jobWings Careers          Terms of Use    Privacy Policy    Posting Guidelines                    0

R-5

MILLER THOMSON SENCRL

# Miller Thomson

Le 22 février 2016

SOUS TOUTES RÉSERVES

PAR COURRIEL

Me Tommy Tremblay
**Borden Ladner Gervais S.E.N.C.R.L.**
1000, rue De La Gauchetière Ouest, bureau 900
Montréal (Québec)  H3B 5H4

**Me Alexandre Ajami**
Ligne directe : 514.871.5484
aajami@millerthomson.com

N/Réf. : 092957.0014

**Objet :**   **Propos et commentaires publiés sur le site web RateMyEmployer.ca les 15 et 17 avril 2012 et le 7 mars 2013 concernant Digital Shape Technologies inc.**

Cher confrère,

Nous sommes les procureurs de Les Carrières JobWings.com inc. qui nous a remis votre lettre en date du 11 février 2016, dans le dossier cité en titre, pour étude et réponse.

Pour information, vos clients, par le biais de leurs procureurs d'alors, ont déjà envoyé une mise en demeure à notre cliente, en date du 1er mai 2012, portant sur des évaluations et des commentaires au sujet de votre cliente, affichés en date des 15 et 17 avril 2012.

Les procureurs soussignés ont répondu, pour le compte de notre cliente, à cette mise en demeure par une lettre en date du 4 mai 2012. Il n'y a pas eu de suivi de la part de vos clients à cet égard par la suite. Nous vous prions de trouver ci-joint copie, pour information, de ces deux lettres.

Ainsi, notre cliente a, à l'époque, volontairement et sans obligation accepté de retirer une évaluation en date du 15 avril 2012 ainsi qu'un commentaire relatif à cette évaluation, également en date du 15 avril 2012. Par contre, en ce qui a trait à l'évaluation en date du 17 avril 2012, notre cliente n'a pas accepté de la retirer, sur la base de l'article 22 de la *Loi concernant le cadre juridique des technologies de l'information*, qui prévoit ce qui suit :

> « 22. Le prestataire de services qui agit à titre d'intermédiaire pour offrir des services de conservation de documents technologiques sur un réseau de communication n'est pas responsable des activités accomplies par l'utilisateur du service au moyen des documents remisés par ce dernier ou à la demande de celui-ci.
>
> Cependant, il peut engager sa responsabilité, notamment s'il a de fait connaissance que les documents conservés servent à la réalisation d'une activité à caractère illicite ou s'il a connaissance de circonstances qui la rendent apparente et qu'il n'agit pas

promptement pour rendre l'accès aux documents impossible ou pour autrement empêcher la poursuite de cette activité.

De même, le prestataire qui agit à titre d'intermédiaire pour offrir des services de référence à des documents technologiques, dont un index, des hyperliens, des répertoires ou des outils de recherche, n'est pas responsable des activités accomplies au moyen de ces services. Toutefois, il peut engager sa responsabilité, notamment s'il a de fait connaissance que les services qu'il fournit servent à la réalisation d'une activité à caractère illicite et s'il ne cesse promptement de fournir ses services aux personnes qu'il sait être engagées dans cette activité. »

La doctrine portant sur l'interprétation de cet article indique que le simple fait qu'une personne se plaigne du contenu d'un commentaire sur un site web n'est pas suffisant en soi. En effet, il faut que le prestataire de services ait de fait connaissance du caractère illicite du commentaire. Lorsque le caractère illicite d'un commentaire est controversé, la connaissance de fait du prestataire de services ne commence qu'à compter du moment où le caractère illicite a été établi.

Notre cliente maintient à cet égard qu'il n'a pas encore été établi que cette évaluation avait un caractère illicite au sens des lois applicables. Néanmoins, si le caractère illicite de cette évaluation est établi, notre cliente la retirera alors immédiatement. Nous comprenons d'ailleurs de votre lettre que les tribunaux auront l'occasion de trancher cette question.

En ce qui a trait maintenant aux renseignements demandés dans votre lettre, veuillez prendre note de ce qui suit :

1.  En ce qui a trait à l'évaluation du 15 avril 2012, veuillez être avisé que notre cliente ne dispose que de ce qui suit : texte du commentaire, notes données aux questions, date et heure de création, adresse IP de la personne ayant affiché l'évaluation.

2.  En ce qui a trait au commentaire sous l'évaluation du 15 avril 2012, veuillez être avisé que notre cliente ne dispose que de ce qui suit : texte du commentaire, date (et possiblement heure) de création.

3.  En ce qui a trait à l'évaluation du 17 avril 2012, veuillez être avisé que notre cliente ne dispose que de ce qui suit : texte du commentaire, notes données aux questions, date et heure de création, adresse IP de la personne ayant affiché l'évaluation.

4.  En ce qui a trait à l'évaluation du 7 mars 2013, veuillez être avisé que notre cliente ne dispose que de ce qui suit : texte du commentaire, notes données aux questions, date et heure de création, adresse IP de la personne ayant affiché l'évaluation, adresse courriel de la personne ayant affiché l'évaluation.

5.  Notre cliente possède encore tous les commentaires émis à l'égard de votre cliente, que ces commentaires aient été supprimés au non, ainsi que la période d'affichage des commentaires.

6.  En ce qui a trait aux personnes ayant consulté les évaluations et les commentaires, notre cliente dispose du nombre de visiteurs uniques mais ne détient aucune information nominative à leur égard.



Quoi qu'il en soit, nous devons vous souligner que les renseignements que vous demandez (à l'exception du nombre de visiteurs uniques) sont protégés en vertu des diverses lois qui régissent la protection des renseignements personnels. À cet égard, veuillez noter que les adresses IP sont également considérées être des renseignements personnels.

Nous vous prions de trouver ci-joint, à ce sujet, un jugement rendu sur procès-verbal le 1er mars 2013 par l'honorable Benoît Emery dans le dossier *Korhani Manufacture Inc.* c. *Les Carrières JobWings.com inc.*

L'extrait de la Politique de confidentialité de notre cliente, cité dans votre lettre, prévoit d'ailleurs explicitement que les informations personnelles pouvant être transmises doivent l'être <u>dans la mesure où la loi l'obligerait</u>.

Par voie de conséquence, notre cliente considère que si la vôtre désire obtenir ces renseignements, elle doit le faire par le biais d'une demande pour obtenir une ordonnance de nature Norwich, à laquelle notre cliente ne consentira pas nécessairement.

En terminant, en ce qui a trait aux demandes formulées dans le pénultième paragraphe de votre lettre, pour ce qui est de l'évaluation du 17 avril 2012 (pour laquelle il n'y a aucun commentaire), notre cliente réitère le contenu de notre lettre du 4 mai 2012.

Par ailleurs, notre cliente ne peut certainement pas accepter de s'engager pour le futur à exclure de son site web tout commentaire au sujet de votre cliente.

Nous notons d'ailleurs que votre lettre ne demande pas le retrait de l'évaluation #6 qui énonce « Much like working here ». Il apparaît que la position de vos clients est que seuls des commentaires positifs à l'égard de votre cliente sont permis, à l'exclusion de tout commentaire négatif.

Quant au caractère anonyme des évaluations affichées sur le site web de notre cliente, comme vous le savez très certainement, cela n'est pas exceptionnel sur Internet, où par exemple sur des blogues ou sur des sites d'évaluation, les commentaires affichés par les visiteurs sont très souvent publiés de façon anonyme.

Veuillez agréer, cher confrère, l'expression de nos sentiments distingués.

MILLER THOMSON S.E.N.C.R.L.

Alexandre Ajami
AA/jc

p. j.

c. c. Monsieur Manuel Francisci, président



## MICHAUD & SANTORIELLO AVOCATS

Les Carrières Jobwings.com Inc.
3455 ave. de Melrose
Montréal, QC, H4A 2R9

PAR HUISSIER

Montréal, le 1ᵉʳ mai 2012

**Mise en demeure**
**« Sous toutes réserves»**

Ref. : Digital Shape Technologies c. vous-même

Madame, Monsieur,

Nous représentons notre cliente, Digital Shape Technologies, qui nous a donné mandat de vous transmettre cette mise en demeure. Effectivement, notre cliente a pris connaissance de commentaires la concernant sur votre site internet « *Rate my employer.ca* ».

Les commentaires en question ont été émis les 15 et 17 avril dernier et sont diffamatoires et portent préjudice à notre cliente, ceux-ci étant visibles au public et portant atteinte à sa réputation.

Ces commentaires contreviennent à vos propres termes et conditions d'utilisation, notamment en ce qui a trait à la clause 5 concernant la conduite, plus précisément « *vous éviterez toute allégation sans fondement et/ou diffamatoire et rendrez votre contribution aussi claire et argumentée que possible* » et ainsi engagent votre responsabilité de supprimer tout contenu diffamatoire, selon la clause 6.

Ainsi, nous vous mettons en demeure de retirer ces commentaires diffamatoires à l'endroit de notre cliente dans les 48 heures suivant la réception de la présente, à défaut, nous avons instructions d'engager les recours judiciaires appropriés et ce, sans autre avis ni délai.

**Veuillez agir en conséquence,**

**MICHAUD SANTORIELLO, AVOCATS**

Marc Michaud, avocat

Cc : DST



MILLER THOMSON POULIOT SENCRL
MILLERTHOMSONPOULIOT.COM

LA TOUR CIBC 3ᵉ ETAGE · 1155, BOU   RENÉ-LEVESQUE OUEST
MONTREAL QC   H3B 3S6   CANADA

TEL   514 875.5210
TELEC   514 875.4308

Le 4 mai 2012

Mᵉ Alexandre Ajami
Ligne directe : 514.871.5484
aajami@millerthomsonpouliot.com

<u>SOUS TOUTES RÉSERVES</u>

<u>PAR TÉLÉCOPIEUR</u>

Me Marc Michaud
**Michaud Santoriello, Avocats**
5365, rue Jean-Talon Est, bureau 602
Montréal (Québec)  H1S 3G2

Objet :   **Digital Shape Technologies Inc.**
          **c. Les Carrières JobWings.com Inc.**
          **V/Réf. : Inconnue**
          **N/Réf. : 092957.0014**

Cher confrère,

Nous sommes les procureurs de Les Carrières JobWings.com Inc., qui nous a remis votre mise en demeure datée du 1ᵉʳ mai 2012 mais signifiée à notre cliente uniquement le 2 mai 2012 en fin de journée, dans le dossier mentionné en titre, pour étude et réponse.

Le site web www.ratemyemployer.ca est un site par lequel notre cliente offre aux employés ou ex-employés d'une entreprise quelconque la possibilité de s'exprimer, de faire part de leur expérience d'emploi, d'émettre une opinion sur leur employeur ou leur ex-employeur, le tout de façon anonyme, afin d'en faire profiter les autres.

Notre cliente ne procède aucunement à vérifier aucunement à éditer les commentaires des utilisateurs de son site web. Elle ne fait que leur offrir une plateforme pour leur permettre de s'exprimer. Notre cliente n'agit donc pas à titre d'éditeur, mais bien plutôt à titre de prestataire de services en vertu de la *Loi sur le cadre juridique des technologies de l'information*. Par conséquent, il faut se référer à cette loi pour déterminer la responsabilité de notre cliente par rapport à un commentaire émis par un utilisateur de ce site web.

Le principe de base qui se dégage du premier alinéa de l'article 22 de la *Loi sur le cadre juridique des technologies de l'information* est à l'effet que le prestataire de services, comme c'est le cas de notre cliente, qui agit comme intermédiaire pour offrir des services de conservation de documents technologiques sur un réseau de communication, n'est pas responsable des activités accomplies par les utilisateurs du service.

La responsabilité du prestataire de services ne peut être engagée uniquement que s'il a connaissance de fait que des documents conservés servent à la réalisation d'une activité à

Page 2

caractère illicite, ou encore s'il a connaissance de circonstances qui rendent l'activité illicite apparente, et cela conformément aux dispositions du deuxième et du troisième alinéas de l'article 22 de la *Loi sur le cadre juridique des technologies de l'information*.

La doctrine portant sur l'interprétation de cet article nous informe que le simple fait qu'une personne se plaigne du contenu d'un commentaire sur un site web, sans plus, n'est pas suffisant en soi. En effet, il faut que le prestataire de services ait de fait connaissance du caractère illicite du commentaire. Lorsque le caractère illicite d'un commentaire est controversé, la connaissance de fait du prestataire ne commence qu'à compter du moment où le caractère illicite a été établi.

Autrement, il faudrait prendre pour avéré en tout temps les prétentions d'une personne qui se plaint d'un commentaire et cela résulterait à lui accorder un pouvoir préalable de censure. Accorder un tel pouvoir de censure à toute personne qui fait une plainte, sans vérification préalable du bien fondé ou du sérieux de sa plainte, serait contraire à la liberté d'expression et au droit du public à l'information, qui sont des droits fondamentaux et essentiels à une société libre et démocratique.

Dans votre mise en demeure, vous prétendez que plusieurs des commentaires concernant votre cliente serait diffamatoires, mais sans fournir quelque justification que ce soit à cet égard. À ce stade, notre cliente ne peut être considérée comme ayant une connaissance de fait que ces commentaires seraient diffamatoires, et tant que le caractère illicite des commentaires ne sera pas établi, notre cliente ne peut avoir la connaissance de fait du caractère illicite et n'a donc aucune obligation de retirer ces commentaires.

Par ailleurs, vous reprochez à notre cliente le non-respect de certains articles des Conditions d'utilisation du site web de notre cliente par des utilisateurs de ce site. Avec respect, cela est une question qui regarde notre cliente et ses utilisateurs et ce n'est pas à votre cliente à dicter à la nôtre comment elle doit appliquer les Conditions d'utilisation qu'elle a elle-même établies. Votre cliente tente de faire de la stipulation pour autrui, ce pour quoi elle n'a aucune base juridique pouvant la justifier.

Néanmoins, dans un souci d'éviter de se voir reprocher, à tort ou à raison, de maintenir sur son site web des commentaires qui pourraient être considérés comme étant diffamatoires à leur face même, et sans admission à cet égard quant au caractère diffamatoire ou à la responsabilité de notre cliente, veuillez être avisé que notre cliente a déjà retiré de son site web, en date de ce jour, le commentaire suivant concernant votre cliente :

     Rater 1 et Comment 1.

En ce qui concerne l'autre commentaire, nous vous invitons à démontrer à notre cliente en quoi il aurait un caractère illicite. Le simple fait d'affirmer qu'un commentaire est diffamatoire est insuffisant. Sur réception du détail et des circonstances de votre plainte, notre cliente sera alors en mesure d'évaluer le fondement de votre demande.

Veuillez noter que votre cliente peut à tout moment répondre aux commentaires, en tant qu'employeur, sur le site web de notre cliente et ainsi, exprimer son opinion ou sa version des faits au regard des commentaires.



Page 3

Nous vous prions d'agréer, cher confrère, l'expression de nos salutations distinguées.

MILLER THOMSON POULIOT S.E.N.C.R.L.

Alexandre Ajami
AA/jc

| CANADA | PROCÈS-VERBAL D'AUDIENCE | COUR SUPÉRIEURE |
|---|---|---|
| PROVINCE DE QUÉBEC | | |
| DISTRICT DE MONTRÉAL | | |
| No : 500-17-076026-139 | | 1er mars 2013 |
| L'HONORABLE BENOÎT EMERY | | 1E5086 |

| Partie demanderesse | | | Procureur(s) | |
|---|---|---|---|---|
| Korhani Manufacture Inc. et Korhani of Canada Inc. | | Absente | Me André J. Bélanger 400, boul. St-Martin Ouest, bureau 309 Laval (Québec)  H7M 3Y8 | Présent |

| Partie défenderesse | | | Procureur(s) | |
|---|---|---|---|---|
| Les Carrières Jobwings.com Inc. et Manuel Francisci | | Absente | Me Alexandre Ajami Miller Thomson Avocats 1000, rue de La Gauchetière Ouest Bureau 3700 Montréal (Québec)  H3B 4W5 | Présent |

| Nature de la cause |
|---|
| Ordonnance de sauvegarde |

Montant :  $

| Cote(s) | Requête (s) |
|---|---|
| 2 | Motion to Commence Proceedings and Motion for a Safegtuard Order |

| Greffier(ière) Lucie Bouchard | Interprète N/A | Sténographe N/A |
|---|---|---|

## ENREGISTREMENT NUMÉRIQUE

| Audition AM : | Début 10:57 | Fin 12:20 | Audition PM : | Début | Fin |
|---|---|---|---|---|---|

| Affaires référées au maître des rôles | Résultat de l'audition Jugement rendu le 1er mars 2013. |
|---|---|

**HEURE**

**10:57**   **OUVERTURE DE L'AUDIENCE**
Identification des procureurs

Me André J. Bélanger de l'étude Bélanger Avocat, procureur des demanderesses, Korhani Manufacture Inc. et Korhani of Canada Inc.

Me Alexandre Ajami de l'étude Miller Thomson Avocats, procureur des défendeurs, Les Carrières Jobwings.com Inc. et Manuel Francisci.

Gestion préliminaire.

**11:00**   Les défendeurs soulèvent l'absence d'affidavit circonstancié au soutien de la requête pour ordonnance de sauvegarde.

Le Tribunal est d'avis qu'un affidavit simple est suffisant pour être autorisé à présenter la requête avec, toutefois, les limites que comporte un affidavit simple. Le Tribunal autorise les défendeurs à produire au soutien de leur contestation un affidavit circonstancié à la requête pour ordonnance de sauvegarde.

CANADA
PROVINCE DE QUÉBEC
DISTRICT DE MONTRÉAL
No :
500-17-076026-130

L'HONORABLE BENOÎT EMERY

Me Ajami soumet au Tribunal son affidavit circonstancié, accompagné des pièces R-1 à R-5.

11:01    Me Bélanger fait ses représentations et soumet de la jurisprudence.

11:05    Échanges entre le Tribunal et Me Bélanger.

11:13    Me Ajami émet une précision pour compléter les représentations de Me Bélanger.

Le Tribunal s'adresse à nouveau à Me Bélanger.

11:15    Au stade de l'ordonnance de sauvegarde, les demanderesses se désistent de leur conclusion qui visait à obtenir une injonction provisoire obligeant les défendeurs à retirer de leur site Internet le nom des demanderesses et des commentaires qui les visaient.

Les demanderesses requièrent ce matin du Tribunal qu'il ordonne aux défendeurs de communiquer le nom de la ou des personnes qui ont rédigé les commentaires défavorables contre les demanderesses sur le site Internet des défendeurs.

11:16    Me Ajami fait ses représentations et soumet de la jurisprudence au Tribunal.

Le Tribunal s'adresse aux procureurs.

11:17    Me Ajami poursuit ses représentations.

Échanges entre le Tribunal et Me Ajami.

Me Ajami se réfère à la pièce P-2 B.

12:04    Réplique de Me Bélanger.

12:06    **JUGEMENT :**

**ATTENDU QUE** le Tribunal est saisi d'une requête pour ordonnance de sauvegarde de type Norwich visant la divulgation immédiate du nom des auteurs de commentaires défavorables dirigés contre les demanderesses sur le site Internet RateMyEmployer.ca exploité par les défendeurs;

**CONSIDÉRANT QUE** même dans l'hypothèse où une ordonnance de type Norwich peut être appliquée en droit civil québécois, ce que le Tribunal ne décide pas à ce stade-ci, il n'en demeure pas moins que les demanderesses doivent démontrer les conditions nécessaires à l'octroi d'une ordonnance de sauvegarde soit l'urgence, l'apparence de droit, le préjudice irréparable et, le cas échéant, la balance des inconvénients;

**CONSIDÉRANT QUE** la preuve en demande est bien mince, sinon inexistante, puisque la requête n'est appuyée que par un affidavit simple alors que les défendeurs ont produit un affidavit circonstancié de 33 paragraphes;

**CONSIDÉRANT,** quant à l'urgence, que les commentaires apparaissant sur ce site Internet remontent à 2010 et 2011 pour la plupart;

**CONSIDÉRANT QUE** le fait que les demanderesses ne les ont découverts qu'en décembre 2012 est très révélateur de l'absence de préjudice découlant de ces commentaires défavorables;



CANADA
PROVINCE DE QUÉBEC
DISTRICT DE MONTRÉAL
No :
500-17-076026-130
L'HONORABLE BENOÎT EMERY

**CONSIDÉRANT** la bonne foi apparente des défendeurs qui, dès la réception de la mise en demeure en décembre 2012, ont accepté, sans aucune admission, de retirer certains commentaires;

**CONSIDÉRANT QU'**à ce stade-ci, les demanderesses n'ont pas établi une apparence sérieuse de droit quant à la possibilité d'obtenir les informations requises qui opposent deux (2) droits fondamentaux soit la liberté d'expression et le respect de la vie privée;

**CONSIDÉRANT** le jugement de la Cour d'appel fédérale dans l'affaire *BMG Canada inc. c. John Doe* [2005] 4 RCF 81 qui souligne notamment que la divulgation de l'identité d'une personne associée à une adresse IP peut ne pas être associée à la même personne pendant longtemps d'où le risque que le droit à la vie privée de personnes innocentes soit violé, lesquelles pourraient alors être injustement poursuivies;

**Pour ces motifs, LE TRIBUNAL :**

**REJETTE** la requête des demanderesses pour ordonnance de sauvegarde de type Norwich.

**FRAIS À SUIVRE.**

12:20   Fin de l'audience.

L'HONORABLE BENOÎT EMERY, J.C.S.

Lucie Bouchard g.a.c.s.

R-6

Tommy Tremblay
514-954-2520
ttremblay@blg.com

Montréal, le 5 avril 2016

**Par courriel**
*(aajami@millerthomson.com)*

**Me Alexandre Ajami**
MILLER THOMSON SENCRL
1000 rue de la Gauchetière O, bureau 3700
Montréal (Québec)
H3B 4W5

Objet :   Propos et commentaires publiés sur le site web RateMyEmployer.ca les
15 et 17 avril 2012 et le 7 mars 2013 concernant Digital Shape
Technologies inc.

Cher confrère

La présente donne suite à votre lettre du 22 février 2016, laquelle répondait à la nôtre
datée du 11 février 2016.

Dans notre lettre du 11 février 2016, nos Clients cherchaient à obtenir des informations
concernant des propos publiés sur votre site web www.RateMyEmployer.ca (le « **Site** »),
les 15 et 17 avril 2012 ainsi que le 7 mars 2013 (les « **Propos** »).

De façon sommaire, Digital Shape Technologies et son président, M. Radomir Nikolajev
(ci-après collectivement désignés « **nos Clients** »), désirent obtenir certaines
informations nominatives et non nominatives relativement aux auteurs des Propos, aux
personnes ayant consulté les Propos et les ayant évalués et aux personnes ayant publié
d'autres commentaires sur votre Site à l'endroit de nos Clients.

De par votre réponse, nous comprenons que votre cliente Les Carrières JobWings.com
inc. (« **votre Cliente** ») est notamment en possession des informations suivantes:

   a) le texte des Propos et la date et heure de leur création;

   b) dans certains cas, des « notes données aux questions » (premier Propos du 15
   avril 2012, Propos du 17 avril 2012 et Propos du 7 mars 2013);

   c) tous les commentaires émis à l'égard de nos Clients, ainsi que la période
   d'affichage desdits commentaires;

   d) l'information non nominative relativement au « nombre de visiteurs uniques »
   ayant consulté les évaluations et les commentaires à l'égard de nos Clients.

Les informations détaillées aux points a) et c) ci-dessus ne sont pas confidentielles en ce que ce sont des informations qui ont déjà été accessibles via votre Site. Quant aux informations détaillées au point b) ci-dessus, nous ne savons pas ce que sont les « notes données aux questions », mais si ce sont des informations qui ont déjà été accessibles via votre Site, elles ne sont pas non plus confidentielles.

Ensuite, les informations détaillées au point d) ci-dessus ne sont pas nominatives et leur communication ne peut être préjudiciable à quiconque.

À la lumière de ce qui précède, nous vous serions reconnaissants de bien vouloir nous confirmer que votre Cliente consent à nous communiquer les informations détaillées aux point a) à d) ci-dessus et ce, d'ici au 15 avril 2016.

Par ailleurs, dans votre lettre du 22 février 2016, vous nous avez également confirmé que votre Cliente est en possession des adresses IP des auteurs de certains des Propos.  Nous nous questionnons concernant votre affirmation selon laquelle votre cliente possède les adresses IP des auteurs du premier Propos du 15 avril 2012, du Propos du 17 avril 2012 et du Propos du 7 mars 2013, mais pas l'adresse IP de l'auteur du deuxième commentaire du 15 avril 2012 ou celles des auteurs d'autres commentaires publiés relativement à nos Clients. Nous vous serions reconnaissants de nous éclairer à ce sujet.

En vous remerciant d'avance de votre collaboration, veuillez recevoir, cher confrère, l'expression de nos sentiments distingués.

**Borden Ladner Gervais** S.E.N.C.R.L., S.R.L.

Tommy Tremblay

/na

2

R-7



MILLER THOMSON SENCRL

Le 8 avril 2016

<u>SOUS TOUTES RÉSERVES</u>

<u>PAR COURRIEL</u>

Me Tommy Tremblay
**Borden Ladner Gervais S.E.N.C.R.L.**
1000, rue De La Gauchetière Ouest, bureau 900
Montréal (Québec)  H3B 5H4

Mᵉ Alexandre Ajami
Ligne directe : 514.871.5484
aajami@millerthomson.com

N/Réf. : 092957.0014

**Objet :** **Propos et commentaires publiés sur le site web RateMyEmployer.ca les 15 et 17 avril 2012 et le 7 mars 2013 concernant Digital Shape Technologies inc.**

Cher confrère,

La présente fait suite à votre lettre du 5 avril 2016 concernant le dossier cité en objet.

De façon préliminaire, nous nous permettons de vous souligner qu'en ce qui a trait au deuxième paragraphe de votre lettre, il ne s'agit pas de « notre » site web, mais bien de celui de notre cliente.

En ce qui a trait à votre demande que notre cliente vous communique les renseignements détaillés aux points a) à d) de votre lettre, veuillez être avisé que, peu importe qu'il s'agisse de renseignements personnels ou non, notre cliente n'a aucune obligation de vous transmettre les renseignements qui sont demandés dans votre lettre.

Par voie de conséquence, notre cliente ne consent pas à vous fournir les renseignements demandés. Si votre cliente désire les obtenir, elle devra obtenir une ordonnance de la Cour pour ce faire, tel qu'indiqué dans notre lettre du 22 février 2016.

Pour ce qui est des demandes de précisions formulées dans votre lettre, nous vous soumettons respectueusement que notre lettre du 22 février 2016 est claire à ce sujet.

Néanmoins, afin de dissiper tout doute, tel que vous l'avez certainement remarqué sur le site web de notre cliente, il y a une distinction entre une évaluation (« rating » en anglais) et un commentaire sous cette évaluation (« comment » en anglais). En ce qui a trait aux évaluations et aux commentaires publiés en 2012, soit sous l'ancienne plateforme utilisée par notre cliente, notre cliente conservait l'adresse IP de la personne ayant affiché le « rating », mais non pas l'adresse IP des personnes ayant affiché des « comments » sous une évaluation donnée. Vous avez certainement constaté, dans notre lettre du 22 février 2016, que pour ce

Page 2

qui est des évaluations et des commentaires plus récents, notre cliente dispose également des adresses courriels des personnes les ayant affichés.

Veuillez agréer, cher confrère, l'expression de nos sentiments distingués.

MILLER THOMSON S.E.N.C.R.L.

Alexandre Ajami
AA/jc

c. c. Monsieur Manuel Francisci, président

17726164.1

R-8

Tommy Tremblay
514-954 2520
ttremblay@blg.com

Borden Ladner Gervais ...
1000 rue de la Gauchetière Bur E
Bureau / Suite 900
Montréal, Qc, Canada H3B 5H4
T   514-879-1212
F   514-954-1905
blg.com



Borden Ladner Gervais

Montréal, le 19 avril 2016

**Par courriel**
*(aajami@millerthomson.com)*

**Me Alexandre Ajami**
MILLER THOMSON SENCRL
1000 rue de la Gauchetière O, bureau 3700
Montréal (Québec)
H3B 4W5

Objet :   Propos   et   commentaires   publiés   sur   le   site   web
« www.ratemyemployer.ca » les 15 et 17 avril 2012 et le 7 mars 2013
concernant Digital Shape Technologies inc.

Cher confrère,

La présente donne suite à votre lettre du 8 avril 2016, la plus récente des correspondances que nous avons échangées depuis le 11 février 2016. Nous comprenons de par ces différents échanges que Les Carrières Jobwings inc. (votre « **Cliente** » ou « **Jobwings** ») détient certaines informations/documents que Digital Shape Technologies inc. et M. Radomir Nikolajev (nos « **Clients** ») cherchent à obtenir, mais que Jobwings refuse de communiquer en l'absence d'une ordonnance judiciaire. Soyez avisés que nous avons reçu instructions de nos Clients de présenter une demande judiciaire pour obtenir une telle ordonnance. Cette demande judiciaire sera signifiée cette semaine et une date de présentation devra être déterminée en fonction des disponibilités des procureurs des parties et de la Cour.

Dans l'intervalle, en vue d'éviter toute ambiguïté et de permettre aux parties de circonscrire le débat à tenir devant la Cour, nous avons besoin d'obtenir une confirmation claire et précise de votre part concernant certaines des informations/documents que nos Clients désirent obtenir. Par conséquent, nous vous serions reconnaissants de nous indiquer si votre Cliente détient ou ne détient pas les informations listées ci-dessous. Si votre Cliente estime ne pas détenir certaines ou l'ensemble des informations demandées, nous vous saurions gré de nous confirmer qu'elle ne peut non plus y avoir accès d'aucune manière, incluant par une recherche dans ses *back-ups*.

1) Relativement aux Propos des 15 et 17 avril 2012 :

   a) les adresses courriel des personnes ayant publié ces Propos ;

Borden Ladner Gervais

    b) l'URL correspondant à la soumission des formulaires d'envoi de ces Propos au site web correspondant ;

    c) de même que la date de soumission des formulaires en question ;

2) Relativement aux Propos du 7 mars 2013 :

    a) l'URL correspondant à la soumission du formulaire d'envoi de ces Propos au site web correspondant ;

    b) de même que la date de soumission du formulaire en question;

3) Relativement aux commentaires émis à l'égard de DST :

    a) les adresses courriel des personnes ayant émis les commentaires à l'égard de DST ;

    b) les URL correspondants à la soumission des formulaires d'envoi de ces commentaires au site web correspondant ;

    c) de même que la date de soumission des formulaires en question ;

4) Relativement aux consultations des Propos des 15 avril 2012, 17 avril 2012 et 7 mars 2013:

    a) les URL correspondants aux pages visitées ;

    b) la date des visites ;

5) Relativement à l'utilité des Propos des 15 avril 2012, 17 avril 2012 et 7 mars 2013:

    a) le nombre de personnes ayant coché que les Propos leur étaient utiles ou non (« **Qualification de l'utilité** ») ;

    b) les URL correspondants à la soumission des formulaires d'envoi de ces Qualifications de l'utilité au site web correspondant ;

    c) de même que la date de soumission des formulaires en question ;

Tel qu'indiqué ci-haut, nous allons signifier à l'attention de votre Cliente cette semaine deux procédures intitulées « *Application for Disclosure and Communication of Documents Relating to a Dispute* » en vertu de l'article 251 du Code de procédure civile. Elles seront déposées dans les dossiers de la Cour supérieure portant les numéros 500-17-075087-125 et 500-17-080160-131 (les « **Demandes**»). Nous avons formulé les conclusions de nos Demandes de façon à réitérer celles formulées à l'endroit de votre Cliente dans notre lettre du 11 février 2016. Si nous obtenons les clarifications et confirmations demandées ci-dessus en temps utile, nous verrons à amender les conclusions de nos Demandes de façon à ce qu'elles ne visent que l'information/documentation que votre Cliente aura confirmé détenir.

Par ailleurs, sachez que la Demande dans le dossier 500-17-080160-131 visera également Glassdoor inc.

2

Borden Ladner Gervais

Considérant ce qui précède, nous allons faire les deux Demandes présentables provisoirement le lundi, 25 avril 2016 afin de fixer une date d'audition en tenant compte du fait que le débat durera vraisemblablement plus de deux heures.

En vous remerciant d'avance de votre collaboration, veuillez recevoir, cher confrère, l'expression de nos sentiments distingués.

**Borden Ladner Gervais** S.E.N.C.R.L., S.R.L.

Tommy Tremblay

/na

3

R-9

Mr. Tommy Tremblay
Tel: 514-954-2520
ttremblay@blg.com



Borden Ladner Gervais

Montréal, February 11, 2016

<u>By Courier</u>

**Glassdoor.ca**
C/o Legal Department
1 Harbor Drive
Suite 300
Sausalito, California 94965
USA

Re:     Posts and comments regarding Digital Shape Technologies Inc.
        published on *www.glassdoor.ca*

Sir, Madam,

We are the attorneys of Digital Shape Technologies ("**DST**") and its President,
M. Radomir Nikolajev (hereinafter collectively "**our Clients**"), who have instructed us to
send you the present letter.

On March 7, 2013, our Clients were the subject of highly damaging false and defamatory
posts (the "**Posts**"), published on your website *www.glassdoor.ca* (the "**Site**"), a copy of
which is attached to this letter. For information purposes, the Posts have since been
removed.

Our Clients identified a former employee of DST as being the author of at least one of
the Posts and has filed a defamation suit in order to protect their honour and reputation
against illicit attacks of this nature, made using your Site.

In the context of this action, our Clients must obtain additional information regarding the
number of people having read and/or commented the Posts in order to evaluate the
extent of the damages that they have suffered resulting from same. It is highly relevant
for our Clients to determine whether any actual or potential clients, employees, service
providers or competitors have read the false and defamatory Posts, as well as whether
any of their competitors or former employees have commented the Posts, or encouraged
them by claiming that they were "helpful", thereby aggravating the damages.

Avocats | Agents de brevets et de marques de commerce                    Lawyers | Patent & Trade-mark Agents



In view of the foregoing, we respectfully ask that you provide us with the following information:

1) a copy of all comments made with respect to DST, notwithstanding the fact they have since been removed, the email addresses, names and IP addresses of the individuals who posted such comments, the URL corresponding to the submission of such forms, as well as the submission date;

   If this information is not available, we would ask that you provide us any and all relevant information which would help trace such data;

2) the number of individuals having read the Posts and the comments, their email addresses, names and IP addresses, when such information is available, the URL corresponding to the visited page and the date of the visit;

3) the number of individuals having indicated that the Posts and/or comments were "helpful", their IP addresses, email addresses and names, the URL corresponding to the submission of such forms, as well as the submission date.

We await your confirmation that you will be able to provide us with the information requested in points 1 to 3 outlined above, in the twenty (20) days of receipt of this letter.

Furthermore, our Clients have suffered and continue to suffer significant harm resulting from the false and defamatory statements regarding DST and its management which have been published on your Site. This publication continues to project a negative image of DST's business and to undermine the confidence of the public and of DST's customers in DST, and consequently to drive away the public and DST's customers from using its goods and services. Moreover, our Clients have had to invest resources in order to attempt to identify the author(s) of such defamatory comments, who hide behind the anonymity that is provided by your Site, as well as significant resources to determine the extent of damages suffered. In order to reduce the extent of these damages, our Clients ask that all present and future references to DST, or its President, M. Radomir Nikolajev, be withdrawn or excluded from your Site, for as long as your Site enables individuals to publish comments anonymously. Alternatively, we ask you that your Site immediately remove any defamatory comments on demand from our Clients and provide our Clients with all the relevant information regarding the author(s) of such comments and the extent of their dissemination.

We thank you for your collaboration in this matter.

Sincerely,

BORDEN LADNER GERVAIS

Tommy Tremblay
Encl.

2

Jobs   Companies   Salaries   Interviews          Sign Up | Sign In | Write a Review |

| Companies | Company Name | Location | Manager, Mercha... | Search | Advanced |

Featured JOBS powered by monster
Click to see more...

▸ Recent Graduate...
ME Events Group has been a global leader in t...
Montreal, QC

▸ Manager, Mercha...
Mega Group Inc. – Boucherville or Mississauga...
Boucherville, QC

PIÈCE/EXHIBIT
P-2

## Digital Shape Technologies

1.0 of 5 – 1 reviews
www.dtsi.ca   Montreal, Canada   16 to 50 Employees
Work in HR? Unlock Your Company Profile

Write a Review

Follow

| Overview | Salaries | Reviews | Interviews | Jobs | More |

See all Digital Shape Technologies Reviews (1)

Digital Shape Technologies Employee Review

Mar 07, 2013

### "Toxic environment and extreme paranoia"

Anonymous Employee (Former Employee)

I worked at Digital Shape Technologies full-time for less than a year

**Pros** – Beautiful offices and great salary. Downtown location.

**Cons** – Extreme paranoia, very stressful, no policies or structure. Upper management rules by intimidation. Very high turnover. No communication. They wont do performance appraisals because that would mean putting something in writing - back to the paranoia. Horrible place to work. Privately owned - saturated with family members. Forget about positive feedback - you only hear negative, sometimes delivered loudly and angrily. No culture, no values.

**Advice to Senior Management** – Treat treat staff better. These talented people work hard and care about their contributions. Instead you treat them like trained monkeys. Staff deserve recognition, the chance for advancement and added responsibilities. Get a grip on the paranoia.

**No, I would not recommend this company to a friend** – I'm not optimistic about the outlook for this company

Was this review helpful?  Yes | No                                   Flag Review

Sponsored Jobs

MD  Accounting Clerk
MD Physician Services – Montreal

Ryan  Manager, Business Development
Ryan, LLC – Montreal

Featured JOBS Click to see more powered by monster

RioTinto
▸ Engineering St...
Rio Tinto is a leading international mining group headquartered in ...
Montreal, QC

▸ Fieldwork Manager – Great opp...
Are you looking to build a career in p...
Montreal, QC

▸ Chargé de Projet Senior
RestaurationPremièreAction est la plus...
Dorval, QC

**Featured Jobs**                     Post a Job

Operations Assistant
CAPERIO GROUP – Montreal

Administrative Assistant (Term)
Richardson International Limited – Boucherville

XPO  Sales Representative- Montreal
XPO Logistics – Vaudreuil-Dorion

Developpeur Java senior - Java
Senior Developer
Expedia – Montreal

Clinical Application Specialist
Fresenius Medical Care - North America – Montreal

**Reviews by Company**

Honda Reviews
Sony Reviews
The Bay Reviews
Apple Reviews
Google Reviews
Nokia Reviews
Microsoft Reviews
GE Reviews
Logitech Reviews
Lenovo Reviews
TELUS Reviews
AMD Reviews
CIBC Reviews
WIND Mobile Reviews

Work in HR or Recruiting?

IBM Reviews

**Salaries by Company**

Air Canada Salaries
RBC Salaries
UBC Salaries
Government of Canada Salaries
University of Toronto Salaries
Canada Post Salaries
Bank of Canada Salaries
British Columbia Government Salaries
TELUS Salaries
SAP Salaries
Starbucks Salaries
University of Waterloo Salaries
WestJet Salaries
Hydro One Salaries
Statistics Canada Salaries

About Us  |  Employers  |  Careers  |  Feedback  |  Help  |  Post a Job

|     |     |     |

Glassdoor is your free inside look at Digital Shape Technologies reviews and ratings. All reviews posted anonymously by Digital Shape Technologies employees.

Browse:   Salaries by Job  |  Salaries by Company  |  Salaries by City  |  Reviews by Company  |  Interview Questions by Job  |  Interviews by Company  |  Jobs by Title  |  Jobs by Company  |  Jobs by City

Copyright © 2008–2013 Glassdoor. All Rights Reserved. Your use of this service is subject to our Terms of Use and Privacy & Cookies Policy. Glassdoor ® is a registered trademark of Glassdoor, Inc.

Work in HR or Recruiting?

Digital Shape Technologies Communications Interview | Glassdoor.ca                    Page 1 of 2

Jobs   Companies   Salaries   Interviews          Sign Up | Sign In | Write a Review |

| Interviews | Job Title or Company | Location | Search | Advanced |

Prepay and save up to 30%   AVIS   BOOK NOW!

## Digital Shape Technologies

1.0 of 5 – 1 reviews
www.dst.ca   Montreal, Canada   16 to 50 Employees
Work in HR? Unlock Your Company Profile

Share an Interview
Follow

| Overview | Salaries | Reviews | Interviews | Jobs | More |

1 interview experiences   Back to all Digital Shape Technologies Interview Questions & Reviews

### Digital Shape Technologies Communications Interview
Posted Mar 07, 2013

**Accepted Offer** – Interviewed in Montreal, QC – Reviewed Mar 07, 2013

**Interview Details** It was too rushed (I should have suspected something) The HR guy called me 5 minutes after my interview to offer me the position. He also reverted to French during the interview while we were speaking English. This shocked me. He was very intense but I guess that's because he had a job to fill. He contacted me via LinkedIn.

**Interview Question** – None. They HR guy didn't know what he was doing. He asked me a few basic questions, I asked him a few. He was a bit evasive. I showed him my examples of writing and explained my experience.   Answer Question

**Negotiation Details** – nothing much  They wanted me so bad, they gave me top $$. Again this should have warned me.

**Other Details** • The process took 3 days.

Overall Negative Experience        ○ ○ ○ ○ Very Easy Interview

Helpful Interview?   Yes | No                    Problem with this interview?

Sponsored Jobs

MD   Accounting Clerk                          Ryan   Manager, Business Development
MD Physician Services – Montreal                Ryan, LLC – Montreal

Featured JOBS  Click to see more  powered by monster

▸ Sales Account Representative
Location: Sainte-Anne-de-Bellevue (Wes...
Sainte-Anne-du-bell

▸ Receptionist
Multidev Technologies (www.chalndrive....
Montreal, QC

▸ The North Face: Apparel Sales...
At The North Face, we push the boundar...
Saint-Laurent, QC

▸ Customer Service Rep
Delmar International Inc. (www.delmarc...
Lachine, QC

**Featured Jobs**                    Post a Job

Operations Assistant
CAPERIO GROUP – Montreal

Administrative Assistant (Term)
Richardson International Limited –
Boucherville

XPO   Sales Representative- Montreal
XPO Logistics – Vaudreuil-Dorion

Développeur Java senior - Java
Senior Developer
Expedia – Montreal

Clinical Application Specialist
Fresenius Medical Care - North America
– Montreal

**Interviews by Company**

CIBC Interview
UBC Interview
Starbucks Interview
Air Canada Interview
RBC Interview
SAP Interview
University of Toronto Interview
TELUS Interview
ABC Interview
Canada Post Interview
TD Bank Interview
Antrea Interview
Laura Interview
lululemon Interview          Work in HR or Recruiting?

Digital Shape Technologies Communications Interview | Glassdoor.ca                    Page 2 of 2



Canada Revenue Agency Interview

**Salaries by Company**

Air Canada Salaries
RBC Salaries
UBC Salaries
Government of Canada Salaries
University of Toronto Salaries
Canada Post Salaries
Bank of Canada Salaries
British Columbia Government Salaries
TELUS Salaries
SAP Salaries
Starbucks Salaries
University of Waterloo Salaries
WestJet Salaries
Hydro One Salaries
Statistics Canada Salaries

About Us  |  Employers  |  Careers  |  Feedback  |  Help  |  Post a Job

Glassdoor is your free inside look at Digital Shape Technologies Communications interview questions and advice. All interview
reviews posted anonymously by Digital Shape Technologies employees and interview candidates.

Browse    Salaries by Job  |  Salaries by Company  |  Salaries by City  |  Reviews by Company  |  Interview Questions by Job  |  Interviews by Company  |  Jobs by Title  |  Jobs by Company  |  Jobs by City

Copyright © 2008–2013, Glassdoor. All Rights Reserved. Your use of this service is subject to our Terms of Use and Privacy & Cookies Policy. Glassdoor ® is a registered trademark of Glassdoor, Inc.

Work in HR or Recruiting?

R-10

## Saint Laurent, Hugo

| | |
|---|---|
| **De:** | Legal Inquiries <legalinquiries@glassdoor.com> |
| **Envoyé:** | February-24-16 2:59 PM |
| **À:** | Tremblay, Tommy |
| **Objet:** | Response to Legal Letter Regarding Posts About Digital Shape Technologies, Inc. on Glassdoor |
| **Pièces jointes:** | Glassdoor Legal FAQs October 2014.pdf |

Dear Mr. Tremblay,

We have received your letter requesting that we remove from our site certain content concerning Digital Shape Technologies, Inc.

By way of response, I've attached a Legal FAQ (also found here: http://help.glassdoor.com/category/Legal_FAQs/en_US) that explains the application of our content policies to moderation, the protections afforded Glassdoor under applicable law, and our approach to legal action in connection with the content on our site. We have taken another look at the cited content and, for the reasons described in the attached Legal FAQ, we will not be removing it at this time. In addition, your request that we disclose the identifying information of the user(s) who posted the cited content and/or reviewed, the Legal FAQ explains why we do not disclose this information in response to a demand letter.

Please note: our Community Guidelines, found here http://help.glassdoor.com/article/Community-Guidelines/en_US/, explain the following: "We do allow comments about individuals who represent the public face of the company if they have great influence over the broad work environment (CEO, C-Suite, President, Owner, etc.) and the comments are related to their behavior in the work environment. We believe this information is generally representative of the company and informative to job seekers." If a review discusses senior management behavior in the workplace, we believe this information may be relevant to a job-seeker.

In addition, comments are not deemed "malicious" or personal attacks if they can be interpreted as serving the purpose of providing information to job-seekers about what it's like to work at company; this includes statements that can be construed as a warning to prospective employees about the workplace conduct and style of the management team.

As explained in the final section of the FAQ, the employer has the option of responding to reviews directly on our site. We encourage employers to reply to all of the reviews, both positive and negative, with professional replies. In our experience, when an employer replies to a review, it can not only balance out a critical review, but actually cast an even more positive light on the company. We allow employers to post these responses for free when they sign up for a free Employer Account.

Lastly, we understand that you would like your client's company to be removed from Glassdoor. We have noted the following in the Legal FAQs provided to you: Because we believe in creating a robust and transparent resource for all employees, and because it is not unlawful for us to host discussion of specific companies on our forum, we do not remove companies from our website.

Regards,

**Glassdoor Legal** | Glassdoor

legalinquiries@glassdoor.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

Q: **Why won't Glassdoor remove a review after being informed that the review contains false facts?**

A: When it comes to whether or not the substance of the reviews on Glassdoor are true or false, it is often impossible for us to make that determination. We do not remove content in these circumstances, as we do not feel that we can act as the finder of fact. Glassdoor's general position is that a review is valid from the standpoint that it is one person's personal experience and understanding of their job and company.

Each review on our site contains the author's own subjective opinions and may also contain factual statements reflecting that individual's personal experience working at a company. When members accept our Terms of Use by submitting reviews, they are representing to us that the factual statements they make (those capable of being proven true or false) are indeed true.

We endeavor to screen from our site posts that, in our discretion, contain obvious falsehoods (i.e. those that do not involve weighing the believability of the author vs. a party who objects to a post). But we do not act as judge and jury for factual disputes. And our Terms of Use makes clear that the user alone is responsible for what they post.

Q: **Why won't Glassdoor remove a review after being informed that the review represents a breach of an employee or candidate contractual obligation (such as confidentiality or non-disparagement)?**

A: Our Terms of Use prohibit users from posting content that violates contractual obligations. This means that when users accept our Terms of Use by submitting content, they are representing to us that they are not violating a binding contractual obligation. When it comes to determining whether or not the author of the post is violating a binding obligation, it is often impossible for us to make that determination. We are not in a position to conclusively determine the existence of an obligation, its applicability to the posted content, and whether the obligation is enforceable under applicable federal and state law. We do not remove content in these circumstances, as we do not feel that we can act as the finder of fact.

Employers should also bear in mind that employee policies and contractual provisions that restrict the rights of workers to share information with each other about wages and working conditions are unlawful under Federal law.

We endeavor to screen from our site posts that appear to us, in our sole discretion, to contain valuable trade secret information (e.g. source code, customer lists, manufacturing techniques, R&D activities, budgets, technical know-how). But we do not act as judge and jury for factual disputes about violations of contractual obligations. And our Terms of Use makes clear that the user alone is responsible for what they post.

Q: **Will Glassdoor consider evidence offered to substantiate that a review is false or was posted in breach of a contractual obligation?**

A: We are not well suited to determine the accuracy, completeness, or authenticity of evidence supplied by an interested party objecting to a particular post. And evidence supplied by an interested party is nearly always open to some degree of dispute. We do not want to find ourselves censoring the viewpoints expressed on our site when we cannot be certain it is warranted.

Q: **How do you verify the information is really from employees and job candidates?**

A: Since we're unable to fully verify the identity of an anonymous user, we require each user to certify their employee relationship to the company when they post any content. We also require all users to validate their email address before their posts are made available to the community. This verification process allows us to put measures in place to identify suspicious users and/or posts. And all of these, combined with active community moderation and our commitment to review every post, allow us to have confidence in our information.

Q: **Will Glassdoor remove my company from the site?**

A: No. Because we believe in creating a robust and transparent resource for all employees, and because it is not unlawful for us to host discussion of specific companies on our forum, we do not remove companies from our website.

[1]

Q: **Can Glassdoor be held liable for the content of the reviews hosted on its site?**

A: Glassdoor cannot be held liable for the user-generated content we host on our site. In 1996, the US Congress – recognizing the threat to the development of the internet if web platforms were held responsible for the accuracy of every piece of content posted by their users – enacted Section 230 of the **Communications Decency Act**, 47 U.S.C. §230, (the "CDA"). The CDA provides that, with limited exceptions for certain intellectual property claims and federal criminal activity, web platforms cannot be held liable for the content authored and posted by third parties. Specifically, the CDA states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Because Glassdoor is not the "publisher" or "speaker" of the content submitted by our users, we are not liable for most types of claims arising from this content.

Q: **Does Glassdoor waive its immunity under the CDA by moderating content to decide whether or not to display a post?**

A: No. A website's decision whether or not to display a post does not, by itself, amount to participation in the creation of that content and thus does not constitute a waiver of immunity. In addition, the CDA specifically provides (in 47 U.S.C. §230 (c)(2)): "No provider or user of an interactive computer service shall be held liable on account of – (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or users considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable whether or not such material is constitutionally protected." Wikipedia has an informative entry to explain that Section 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.

Q: **Does Glassdoor waive its immunity under the CDA by leaving content up after Glassdoor has been notified it is defamatory?**

A: No. Websites do not have to remove content from their site if they receive notice that the material is defamatory. For more information on this point and others, the Digital Medial Law Project has an informative entry on online activities covered by the CDA.

Q: **What if an Employer believes a posting violates Glassdoor's Community Guidelines but Glassdoor will not remove the post?**

A: Glassdoor's Community Guidelines are recommendations for how users can write reviews so that other members of our community will find them credible and useful. They also represent an effort to encourage a certain quality of discourse on our site. But while the Guidelines help inform our decision on whether or not to remove a particular post, they do not operate as a guarantee that we will remove a post whenever a user claims to have identified an infraction.

If a user believes a post does not follow the recommendations of a Community Guideline, we ask that the user flag the post for further review. Our content team will then re-review the flagged post and decide whether we think the challenged content should be considered "Prohibited Content" under the Terms of Use. If we agree with the user who flagged the post, we will remove the content.

We ask our users to understand that we apply the same standard of review for all content (irrespective of whether or not the content concerns an employer client of Glassdoor). Ultimately, content decisions are within our sole discretion and we do not negotiate about our application of a Guideline to our final decision as to whether or not a piece of content warrants removal.

Q: **Does Glassdoor breach its own Terms of Use by declining to remove content that an employer believes to be a violation of those terms?**

A: No. Our Terms of Use make clear that the user alone is responsible for what they post on our site. Moreover we are normally not in a position to determine whether a particular piece of content is actually "Prohibited Content" as defined by our Terms of Use. Given the important free speech principles involved, we may defer to the relevant court to make that determination. Lastly, Section 4.3 of our Terms of Use explains that our enforcement of the Terms of Use by removal of content is our right but not an obligation.

Q: **What happens if, despite the CDA, someone sues Glassdoor for a claim arising from the user-generated content hosted by Glassdoor?**

A: Every party filing a lawsuit has a duty to review the facts and the law before they file suit so that they can demonstrate that the lawsuit was filed in good faith. Glassdoor conducts its business so that we do not run afoul of any exceptions to our CDA immunity from liability for third party content. If someone chooses to ignore the clear application of CDA immunity to Glassdoor and attempts to sue us for the content provided by our users, that party could be required to pay attorneys' fees and be subject to sanctions for having filed a frivolous lawsuit.

# glassdoor

Q:  **Can Glassdoor be sued outside the United States?**

A:  Glassdoor is incorporated in Delaware, USA and located in California, USA. We operate our website and host all our content within the USA. Proper jurisdiction for a lawsuit is in the U.S. For suits filed outside the U.S., the SPEECH Act precludes enforcement in the US of foreign defamation judgments that are contrary to (1) the US Constitution's First Amendment protections for speech or (2) the immunity for internet service providers hosting such speech under the CDA (an immunity that applies to Glassdoor's hosting of employee reviews). Wikipedia provides some useful background on the SPEECH Act.

Foreign parties should consider the application of the SPEECH Act and the penalties for failure to prevail in a US enforcement action before undertaking legal action in a foreign jurisdiction in connection with a post on Glassdoor.

Q:  **How does Glassdoor respond to civil subpoenas requesting identifying information of our users?**

A:  Glassdoor is located in Marin County, California. The California Civil Code requires that subpoenas for out-of-state actions must be domesticated in California by way of a validly-issued and properly-served California subpoena in order to be enforceable in California. In addition, other states' discovery procedures require such subpoenas to be served in compliance with the law of the state where the recipient of the subpoena is located – in this case, California. Subpoenas should be served on our registered agent in California: Glassdoor, Inc., c/o CT Corporation, 818 W Seventh Street, Los Angeles, CA 90017.

Because such subpoenas request the identifying information of individuals exercising their qualified First Amendment privilege of anonymous free speech, and because our users have an expectation that we will safeguard their privacy when they post on our site, we do not simply hand over this information upon receipt of a civil subpoena. We require the party requesting this information to make the proper legal showing to demonstrate that the user has waived their First Amendment privilege.

Q:  **Why does Glassdoor have this policy regarding demand letters and subpoenas?**

A:  If Glassdoor were to comply with demand letters requesting the removal of content where we cannot independently determine a violation of our Terms of Use, or if we released the identifying information of a user promptly upon receipt of a civil subpoena (or left it solely to our users to challenge such subpoenas), the resulting chilling effect on free speech would undermine the utility of our site as a public forum for job seekers to share and discover the full spectrum of views about workplace experiences.

Q:  **Does Glassdoor remove negative reviews for employers who buy its services?**

A:  No. We apply the same standard of review for all content (whether or not the content concerns an employer client of Glassdoor). We take this policy extremely seriously. If we decline to remove a negative review before an employer becomes a client, that employer won't have any better luck convincing us to remove the review once they do become a client (no matter how much they spend with us).

Furthermore, we believe each employer has the right to respond to a review left by a member for free. The tools we offer employers to manage their reviews are the same for client and non-client companies alike. Non-client companies can gain access to these tools for free by requesting a Free Employer Account. So when we suggest an employer engage with Glassdoor to manage its reviews on our site, it is not restricted in any way by whether they are a paid client or not.

Q:  **How do employers manage their reviews on Glassdoor?**

A:  In our experience, those companies that recognize the value of social media, notwithstanding their concerns about individual reviews, benefit from the decision to manage their reviews through meaningful engagement with our website. Employers can flag reviews on our site that they feel violate our terms. Those reviews will be given a second look by the content moderation team to see if we missed something the first time. If we do not find a violation of our Terms of Use and an employer believes a review is not representative of the workplace experience at their company, we recommend that the employer provide an employer response to the post at issue – a response which is the only comment we allow. In our experience, thoughtful, professional employer responses go a long way to diffusing the effect of negative posts (especially those posts not so professional in tone). Also, those companies that encourage their workforce to provide unbiased reviews generally benefit from the resulting larger sample size of content: the greater number of reviews, the more likely that extreme reviews will interpreted as outliers (to the extent they do not reflect the prevailing view of employees) – and readers tend to discount the reliability of outlier reviews. Here's a link to our tips for managing reviews on Glassdoor.

This Legal FAQ is provided for informational purposes only and does not constitute legal advice. You should not rely upon this information without seeking advice from an attorney who is competent in the relevant field of law.

[3]

R-11

Mr. Tommy Tremblay
Tel : 514-954-2520
ttremblay@blg.com

Montréal, April 5, 2016

**By email**
*(legalinquiries@glassdoor.com)*

**Glassdoor.ca**
C/o Legal Department
1 Harbor Drive
Suite 300
Sausalito, California  94965
USA

Re:     Posts and comments regarding Digital Shape Technologies Inc.
        published on *www.glassdoor.ca*

Sir, Madam,

As previously announced, we are the attorneys of Digital Shape Technologies ("**DST**") and its President, M. Radomir Nikolajev (hereinafter collectively "**our Clients**"), who have instructed us to send you the present letter. The present letter follows ours dated February 11, 2016 as well as your response dated February 24, 2016.

We wish to reiterate that our Clients must obtain additional information regarding the number of people having read and/or commented a March 7, 2013 post concerning them (the "**Posts**") in order to evaluate the extent of the damages that they have suffered resulting from same.

We understand from your February 24, 2016 response that, as per your terms and conditions, you are not willing to disclose any identifying information regarding your users.

However, we respectfully submit that the following information requested in our letter is not identifying and/or confidential information and is not provided for in your terms and conditions:

1) a copy of all comments made with respect to our Clients, notwithstanding the fact they have since been removed, as well as the submission date (such information has been or still is public);

2) the number of individuals having read the Posts and the comments (this information is not identifying information);

Avocats | Agents de brevets et de marques de commerce          Lawyers | Patent & Trade-mark Agents

3) the number of individuals having indicated that the Posts and/or comments were "helpful" as well as the submission date (this information is not identifying information).

We await your confirmation that you will be able to provide us with the information requested in points 1 to 3 outlined above, on or before April 15, 2016.

We thank you for your collaboration in this matter.

Sincerely,

BORDEN LADNER GERVAIS

Tommy Tremblay
n/a

2

R-12

## Volpe, Michelle

| | |
|---|---|
| **De:** | Legal Inquiries <legalinquiries@glassdoor.com> |
| **Envoyé:** | April-07-16 4:53 PM |
| **À:** | Tremblay, Tommy |
| **Cc:** | Gaudet, Eve |
| **Objet:** | Re: DST / Posts and comments published |

Thank you for your reply. We appreciate your arguments and understand your concerns in needing this information to assess damages.  However, Glassdoor generally does not retain such information upon user deletion and as such is no longer privy to the information subject your inquiry.

Regards,

**Glassdoor Legal** | Glassdoor

legalinquiries@glassdoor.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

2016-04-05 8:49 GMT-07:00 Tremblay, Tommy <TTremblay@blg.com>:

Sir, Madam,

Please find attached the undersigned's letter addressed to the Legal Department of Glassdoor.

Thank you.

Tommy Tremblay

Partner

514.954.2520

Michelle Volpe



Legal Assistant Mr. Guy J. Pratte / Mr. Tommy Tremblay

Tél. 514.954.2555 p. 22053| F / Téléc. 514.954.1905 | ttremblay@blg.com

1000, rue De La Gauchetière Ouest, Suite / Bureau 900, Montréal, QC, Canada  H3B 5H4

**Borden Ladner Gervais** LLP / S.E.N.C.R.L., S.R.L. | It begins with service / D'abord le service

Calgary | Montréal | Ottawa | Toronto | Vancouver

blg.com

To unsubscribe please click on unsubscribe@blg.com ou pour vous désabonner, veuillez cliquer
sur  desabonnement@blg.com

 Please consider the environment before printing this email. / Veuillez penser à l'environnement avant d'imprimer ce courriel.

This message is intended only for the named recipients. This message may contain information that is privileged, confidential or exempt from disclosure under applicable law. Any dissemination or copying of this message by anyone other than a named recipient is strictly prohibited. If you are not a named recipient or an employee or agent responsible for delivering this message to a named recipient, please notify us immediately, and permanently destroy this message and any copies you may have. Warning: Email may not be secure unless properly encrypted.

Ce message est destiné uniquement aux destinataires dûment nommés. Il peut contenir de l'information privilégiée ou confidentielle ou encore de l'information exemptée des obligations de divulgation en vertu du droit applicable. Il est strictement défendu à toute personne qui n'est pas un destinataire dûment nommé de diffuser ce message ou d'en faire une copie. Si vous n'êtes pas un destinataire dûment nommé ou un employé ou mandataire chargé de livrer ce message à un destinataire dûment nommé, veuillez nous aviser sans tarder et supprimer ce message ainsi que toute copie qui peut en avoir été faite. Avertissement : Le courriel qui n'est pas chiffré comme il se doit peut ne pas être protégé.

R-13

## Saint Laurent, Hugo

| | |
|---|---|
| **De:** | Tremblay, Tommy |
| **Envoyé:** | April-15-16 11:20 AM |
| **À:** | Legal Inquiries |
| **Cc:** | Gaudet, Eve |
| **Objet:** | RE: DST / Posts and comments published |

Sir, Madam,

We thank you for your response below. We understand from your position expressed below that Glassdoor does not "generally" retain "such" information upon user deletion. However, our clients need more specific answers to their inquiries.

Our clients will file a Motion for communication of documents relating to a dispute in order to obtain responses to their inquiries. However, if you confirm as soon as possible that you do not have, in your possession, any of the information requested in our letters dated February 11 and April 5, 2016, including in your back-ups, and that you cannot access it in any way, our clients will refrain from making said Motion, which will save both Glassdoor and our clients unnecessary legal costs.

Best regards,


Tommy Tremblay
**Associé / Partner**
Tel 514.954.2520 | Télec. / F 514.954.1905 | ttremblay@blg.com
1000, rue De La Gauchetière Ouest, Bureau / Suite 900, Montréal, QC, Canada  H3B 5H4

**Borden Ladner Gervais** S.E.N.C.R.L., S.R.L. / LLP | D'abord le service / It begins with service
Calgary | Montréal | Ottawa | Toronto | Vancouver
blg.com


**From:** Legal Inquiries [mailto:legalinquiries@glassdoor.com]
**Sent:** April-07-16 4:53 PM
**To:** Tremblay, Tommy
**Cc:** Gaudet, Eve
**Subject:** Re: DST / Posts and comments published

Thank you for your reply. We appreciate your arguments and understand your concerns in needing this information to assess damages. However, Glassdoor generally does not retain such information upon user deletion and as such is no longer privy to the information subject your inquiry.

Regards,

**Glassdoor Legal** | Glassdoor

legalinquiries@glassdoor.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

2016-04-05 8:49 GMT-07:00 Tremblay, Tommy <TTremblay@blg.com>:

Sir, Madam,

Please find attached the undersigned's letter addressed to the Legal Department of Glassdoor.

Thank you.

Tommy Tremblay

Partner

514.954.2520

Michelle Voipe

 **Legal Assistant Mr. Guy J. Pratte / Mr. Tommy Tremblay**

Tél. 514.954.2555 p. 22053| F / Télec. 514.954.1905 | ttremblay@blg.com

1000, rue De La Gauchetière Ouest, Suite / Bureau 900, Montréal, QC, Canada  H3B 5H4

**Borden Ladner Gervais** LLP / S.E.N.C.R.L., S.R.L. | It begins with service / D'abord le service

Calgary | Montréal | Ottawa | Toronto | Vancouver

blg.com

To unsubscribe please click on unsubscribe@blg.com ou pour vous désabonner, veuillez cliquer sur  desabonnement@blg.com

 Please consider the environment before printing this email. / Veuillez penser à l'environnement avant d'imprimer ce courriel.

# SUPERIOR COURT

DISTRICT OF MONTREAL

N° : **500-17-080160-131**

**DIGITAL SHAPE TECHNOLOGIES INC.**

-et-

**RADOMIR NIKOLAJEV**

Plaintiffs /
Cross-Defendants

**KELLY MIKULEC**

Defendant /
Cross-Plaintiff

**Application for disclosure and
communication of documents relating to a
dispute and Exhibits R-1 to R-13**

*(Art. 251 C.p.c.)*

ORIGINAL



1000, rue De La Gauchetière Ouest
Bureau 900
Montréal, QC, Canada  H3B 5H4
Tél.     514.879.1212
Téléc.   514.954.1905
egaudet@blg.com

B.M. 2545

Me Eve Gaudet
Dossier : 295918-000003