Case 3:16-mc-80150-JSC   Document 8-12   Filed 09/08/16   Page 1 of 8

Desjean v. Intermix Media Inc., 2006 FC 1395, 2006 CF 1395, 2006 CarswellNat...
2006 CarswellNat 3918, 2006 CarswellNat 5595, 2006 FC 1395, 2006 CF 1395...

2006 FC 1395, 2006 CF 1395
Federal Court

Desjean v. Intermix Media Inc.

2006 CarswellNat 3918, 2006 CarswellNat 5595, 2006 FC 1395, 2006 CF 1395, [2006] F.C.J. No. 1754, [2007] 4 F.C.R. 151, 153 A.C.W.S. (3d) 577, 28 B.L.R. (4th) 315, 304 F.T.R. 68 (Eng.), 57 C.P.R. (4th) 314

Patrick Desjean (Plaintiff) and
Intermix Media, Inc. (Defendant)

de Montigny J.

Heard: June 13, 2006
Judgment: November 17, 2006
Docket: T-846-05

Counsel: Chantal Desjardins, Stéphane Nadeau for Plaintiff
Louis Brousseau, Sarah Woods for Defendant

Subject: International; Torts; Corporate and Commercial; Civil Practice and Procedure

**Table of Authorities**

**Cases considered by** *de Montigny J.*:

*Amchem Products Inc. v. British Columbia (Workers' Compensation Board)* (1993), 1993 CarswellBC 1257, [1993] I.L.Pr. 689, [1993] 3 W.W.R. 441, 14 C.P.C. (3d) 1, [1993] 1 S.C.R. 897, 150 N.R. 321, 23 B.C.A.C. 1, 39 W.A.C. 1, 102 D.L.R. (4th) 96, 77 B.C.L.R. (2d) 62, 1993 CarswellBC 47 (S.C.C.) — considered

*Bancroft & Masters Inc. v. Augusta National Inc.* (2000), 223 F.3d 1082 (U.S. C.A. 9th Cir.) — referred to

*Braintech Inc. v. Kostiuk* (1999), 171 D.L.R. (4th) 46, 1999 CarswellBC 546, 120 B.C.A.C. 1, 196 W.A.C. 1, 63 B.C.L.R. (3d) 156, [1999] 9 W.W.R. 133, 1999 BCCA 169 (B.C. C.A.) — considered

*Calder v. Jones* (1984), 465 U.S. 783 (U.S. S.C.) — referred to

*Gajraj v. DeBernardo* (2002), 28 M.V.R. (4th) 10, 213 D.L.R. (4th) 651, 40 C.C.L.I. (3d) 163, 24 C.P.C. (5th) 258, 2002 CarswellOnt 1766, 160 O.A.C. 60, 60 O.R. (3d) 68, 13 C.C.L.T. (3d) 194 (Ont. C.A.) — referred to

*Hunt v. T & N plc* (1993), 1993 CarswellBC 1271, 1993 CarswellBC 294, (sub nom. *Hunt v. T&N plc*) [1993] 4 S.C.R. 289, [1994] 1 W.W.R. 129, 21 C.P.C. (3d) 269, (sub nom. *Hunt v. Lac d'Amiante du Québec Ltée*) 37 B.C.A.C. 161, (sub nom. *Hunt v. Lac d'Amiante du Québec Ltée*) 60 W.A.C. 161, (sub nom. *Hunt v. T&N plc*) 109 D.L.R. (4th) 16, 85 B.C.L.R. (2d) 1, (sub nom. *Hunt v. Lac d'Amiante du Québec Ltée*) 161 N.R. 81 (S.C.C.) — considered

*Lemmex v. Bernard* (2002), 2002 CarswellOnt 1812, 213 D.L.R. (4th) 627, 160 O.A.C. 31, 60 O.R. (3d) 54, 26 C.P.C. (5th) 259, 13 C.C.L.T. (3d) 203 (Ont. C.A.) — referred to

*Leufkens v. Alba Tours International Inc.* (2002), 2002 CarswellOnt 1811, 213 D.L.R. (4th) 614, 160 O.A.C. 43, 60 O.R. (3d) 84, 26 C.P.C. (5th) 247, 13 C.C.L.T. (3d) 217 (Ont. C.A.) — referred to

*Millennium Enters Inc. v. Millennium Music LP* (1999), 33 F.Supp.2d 907 (U.S. Dist. Ct.) — considered

*Morguard Investments Ltd. v. De Savoye* (1990), 46 C.P.C. (2d) 1, 15 R.P.R. (2d) 1, 76 D.L.R. (4th) 256, 122 N.R. 81, [1991] 2 W.W.R. 217, 52 B.C.L.R. (2d) 160, [1990] 3 S.C.R. 1077, 1990 CarswellBC 283, 1990 CarswellBC 767 (S.C.C.) — considered

*Muscutt v. Courcelles* (2002), 213 D.L.R. (4th) 577, 2002 CarswellOnt 1756, 160 O.A.C. 1, 60 O.R. (3d) 20, 26 C.P.C. (5th) 206, 13 C.C.L.T. (3d) 161 (Ont. C.A.) — followed

*People Solutions Inc. v. People Solutions Inc.* (July 25, 2000), Doc. 399-CV-2339-L (U.S. Dist. Ct. N.D. Tex.) — referred to

*Sinclair v. Cracker Barrel Old Country Store Inc.* (2002), 213 D.L.R. (4th) 643, 2002 CarswellOnt 1755, 160 O.A.C. 54, 60 O.R. (3d) 76, 26 C.P.C. (5th) 239, 13 C.C.L.T. (3d) 230 (Ont. C.A.) — referred to

*Society of Composers, Authors & Music Publishers of Canada v. Canadian Assn. of Internet Providers* (2004), (sub nom. *SOCAN v. Canadian Assn. of Internet Providers*) 240 D.L.R. (4th) 193, 2004 SCC 45, 2004 CarswellNat 1919, 2004 CarswellNat 1920, 322 N.R. 306, (sub nom. *Socan v. Canadian Assn. of Internet Providers*) [2004] 2 S.C.R. 427, (sub nom. *SOCAN v. Canadian Assn. of Internet Providers*) 32 C.P.R. (4th) 1 (S.C.C.) — considered

*Tolofson v. Jensen* (1994), [1995] 1 W.W.R. 609, 22 C.C.L.T. (2d) 173, 100 B.C.L.R. (2d) 1, 32 C.P.C. (3d) 141, 7 M.V.R. (3d) 202, 26 C.C.L.I. (2d) 1, 175 N.R. 161, 120 D.L.R. (4th) 289, (sub nom. *Lucas (Litigation Guardian of) v. Gagnon*) [1994] 3 S.C.R. 1022, 77 O.A.C. 81, 51 B.C.A.C. 241, 84 W.A.C. 241, 1994 CarswellBC 1, 1994 CarswellBC 2578 (S.C.C.) — considered

**Statutes considered:**

*Competition Act*, R.S.C. 1985, c. C-34
Generally — referred to

Case 3:16-mc-80150-JSC Document 8-12 Filed 09/08/16 Page 2 of 8

Desjean v. Intermix Media Inc., 2006 FC 1395, 2006 CF 1395, 2006 CarswellNat...
2006 CarswellNat 3918, 2006 CarswellNat 5595, 2006 FC 1395, 2006 CF 1395...

s. 36(1)(a) — referred to

s. 36(3) — referred to

s. 52(1) — referred to

s. 52(1.1) [en. 1999, c. 2, s. 12(1)] — referred to

s. 52(2)(e) — referred to

*Constitution Act, 1867*, (U.K.), 30 & 31 Vict., c. 3, reprinted R.S.C. 1985, App. II, No. 5

s. 101 — referred to

*Foreign Extraterritorial Measures Act*, R.S.C. 1985, c. F-29

Generally — referred to

s. 8(1)(a) — referred to

**Rules considered:**

*Federal Court Rules, 1998*, SOR/98-106

R. 221 — pursuant to

R. 299.12(3) [en. SOR/2002-417] — referred to

R. 299.18 [en. SOR/2002-417] — referred to

R. 299.41(1) [en. SOR/2002-417] — referred to

R. 400(1) — referred to

MOTION by defendant to strike statement of claim for want of jurisdiction.

*de Montigny J.*:

1    On May 13, 2005, Patrick Desjean filed a statement of claim for a proposed class action, alleging that Intermix Media, Inc. (Intermix) violated the misleading representations provisions of the *Competition Act*, R.S.C. 1985, c. C-34 (subsections 52(1), 52(1.1) and 52(2)(e)).

2    Mr. Desjean alleges that Intermix violated the above-mentioned provisions of the *Competition Act* by bundling "spyware" or "adware" with the free software that it offered on various Internet websites - in particular, "MyCoolScreen.com" (the Website) - without disclosing the bundling of such spyware or adware to consumers who downloaded the free software.

3    On August 1, 2005, Intermix filed a notice of motion and moved this Court for an order dismissing Mr. Desjean's statement of claim pursuant to rule 221 of the *Federal Courts Rules* on the basis that: a) this Court lacks jurisdiction over Intermix and the matter; b) Mr. Desjean's claim is frivolous or vexatious; and c) Mr. Desjean's claim constitutes an abuse of the process of the Court. Intermix made alternative arguments that this Court is not the appropriate forum for Mr. Desjean's claim, and that Mr. Desjean's claim comprises submissions which are not based on either the *Competition Act* or the laws of Canada.

4    For the reasons to be more fully developed below, I have come to the conclusion that Intermix must succeed because Mr. Desjean's statement of claim fails to establish this Court's jurisdiction. As a result, I need not deal with the other grounds Intermix brought forward to dismiss this action.

5    I hasten to add that I am much indebted to Intermix's counsel for their very able written submissions, from which I have extensively borrowed in writing these reasons.

**Background**

6    In his statement of claim for a proposed class action, Mr. Desjean alleges that Intermix offers ostensibly free software programs, such as screensavers and games, that anyone can download. Without disclosure to consumers, however, Intermix surreptitiously tacks onto these programs one or more additional programs that deliver ads and other invasive content. Thus, when Mr. Desjean installed a "free" Intermix screensaver or game on his computer, he also unwittingly installed one or more spyware programs. In this manner, known as "bundling", Intermix has spread its advertising programs onto Mr. Desjean's hard drive.

7    Spyware programs that Intermix has spread in this manner include "Search Miracle", a program that shows pop-up advertisements; "IncrediFind", a program that redirects web addresses to Intermix websites; "Updater", a program that allows Intermix to add or update programs and functionality to a user's computer; and various "Toolbar" programs, which overlay a "toolbar" onto users' web browsers linking to Intermix's services and clients. Because these programs are permanently installed on the user's hard drive and run during subsequent browsing sessions, they continue to advertise Intermix's clients and report information about the user long after the user has left the websites of Intermix or its agents.

8    Mr. Desjean further alleges that Intermix does not adequately inform consumers that its software has been installed on their computers. The only hint of disclosure that additional software was bundled with the screensaver is the vague statement in very tiny font on a single web page, telling users that "by downloading this screensaver, [they] agree to our Terms of Service." This "Terms of Service" page, in

Case 3:16-mc-80150-JSC   Document 8-12   Filed 09/08/16   Page 3 of 8

Desjean v. Intermix Media Inc., 2006 FC 1395, 2006 CF 1395, 2006 CarswellNat...
2006 CarswellNat 3918, 2006 CarswellNat 5595, 2006 FC 1395, 2006 CF 1395...

turn, apparently addresses primarily legal issues and does not adequately warn users of what they will be receiving.

9      Exacerbating the harm from its installation of hidden spyware programs, Intermix is alleged to employ deceptive methods to prevent users from detecting and removing its software. For example, Mr. Desjean contends that Intermix designs its spyware programs so that when users uninstall the program with which the spyware was bundled (for example, a screensaver), Intermix's spyware products remain behind, installed and fully operational. Intermix also prevents its spyware programs from being listed in the commonly accessed "Add/Remove Programs" utility in the Microsoft Windows operating system, making removal yet more difficult. Additionally, it fails to provide its own "uninstall" utility within many of its spyware programs' files or folders.

10      Mr. Desjean alleges that Intermix, by engaging in the acts and practices described above, has engaged in deceptive, fraudulent and illegal practices, and false advertising in the distribution of spyware and adware, thereby enabling third parties to expose Mr. Desjean to all sorts of schemes and causing computer users to waste time and money to rid computers of the software that caused their computers to come to a halt or crash altogether. By so doing, Intermix has allegedly contravened subsections 52(1), 52(1.1) and paragraph 52(2)(e) of the *Competition Act*. Mr. Desjean claims he is entitled to seek recovery of damages pursuant to paragraph 36(1)(a) and subsection 36(3) of the same Act. He also contends that he has disclosed a reasonable cause of action to apply to certify this action as a class action in accordance with rule 299.12(3) of the *Federal Courts Rules*, SOR/2002-417, s. 17.

11      Mr. Desjean has asked the Court to issue a judgment against Intermix as follows, ordering that it:

> Direct Defendant to provide Plaintiff with all records of all Defendant's advertising, ad-serving, redirecting and toolbar programs installed onto consumers' computers, including all records concerning or reflecting any disclosure provided to consumers prior to or during installation;
>
> Direct Defendant to provide Plaintiff with an accounting of all revenues generated from the distribution of its advertising, ad-serving, redirecting and toolbar programs and that a money judgment be entered against Defendant in the sum of unjust enrichment;
>
> Direct that a money judgment in civil penalties pursuant to sections 36. (1) (a) and 36 (3) of the Competition Act be entered against Defendant in favour of the Plaintiff based upon the sum of Five Hundred Dollars ($500);
>
> Direct that a money judgment be entered against Defendant in favour of Plaintiff as to the costs pursuant to Rule 400 (1) of the Federal Court Rules;
>
> Grant Plaintiff such other and further relief as this Court finds just and proper.

12      Needless to say, Intermix vigorously disputes the facts as put forward by Mr. Desjean. By way of an affidavit signed by Todd Smith, Vice-President of Business and Development for Intermix Network LLC (a wholly-owned subsidiary of Intermix), it is alleged that Intermix never knowingly distributed or installed many of the applications to which Mr. Desjean refers from any of its websites. He also affirms that Intermix offered consumers full disclosure with one or multiple separate download windows explaining what the user would be installing with the free screensaver. Finally, Mr. Smith deposed that Intermix in no way impeded or prevented its programs from being listed in the commonly accessed "Add/Remove Programs", and provided its own "uninstall" utility, which works properly and removes all files and installed functionality.

13      In another affidavit sworn by Brett Brewer, President of Intermix, another set of facts was also presented relating more particularly to the issue of jurisdiction. It appears Intermix is a publicly-traded Delaware corporation with its principal offices in Los Angeles, California. Intermix does not have any offices in Canada although it has, in the past, subsidized office space for contractors working on two websites purchased by Intermix.

14      According to Intermix's Director of Human Resources, Intermix does not have nor has it ever had any employees in Canada. On the other hand, Intermix currently has a contractual relationship with two independent contractors in Canada that provide newsletter edition services unrelated to the matters at issue in the present litigation.

15      Intermix has no bank accounts in Canada, nor does it pay taxes to either the federal government or any provincial government. Intermix is not registered as doing business in any Canadian jurisdiction.

16     Intermix has no direct advertising, marketing or solicitation directed at the Canadian market. No person affiliated with Intermix, either directly or indirectly, as an employee or director, has ever attended trade shows or any other Internet-industry promotional events in Canada. Intermix's websites in general and, in particular, the Website Mr. Desjean refers to, does not target Canada or Canadian consumers in any specific way. It contains no specific references to Canada, no specialized content for a Canadian audience, no French language content.

17     According to the affidavit of Mr. Smith, Intermix has no servers in Canada. MyCoolScreen.com is not hosted on servers located in Canada, but on a server in California.

18     Approximately 66 per cent of all downloads from either Intermix websites or third parties distributing Intermix applications are by American users, the remaining 34 per cent being divided throughout the world (with Canada accounting for 2.5 to 5.3 per cent of the downloads, depending on the application).

19     The Licence Agreement users enter into before downloading Intermix applications contains a jurisdiction and choice of law clause providing that the laws of the State of California will govern the agreement, without giving effect to any conflict of law principles.

20     These facts, at least as they relate to Intermix's activities and its corporate structure, must be taken as accepted for Mr. Desjean has not challenged them - nor has he thought fit to cross-examine Mr. Smith or Mr. Brewer on these aspects of their affidavits.

**Issues**

21     The issues to be decided upon this motion are threefold:

> • Does this Court have jurisdiction over the defendant and the matter?
>
> • Is the statement of claim frivolous or vexatious?
>
> • Does the statement of claim constitute an abuse of the process of the Court?

**Analysis**

22     The assumption of jurisdiction by a court against an out-of-the country defendant always raises complex issues. The Supreme Court of Canada has revisited these issues in the last fifteen years to take into account the new realities of our modern world. These problems, however complex, are compounded when applied in the context of claims arising out of the use of an evolving technology that does not know of national boundaries. While Canadian courts have dealt with these issues on a few occasions, it is fair to say that the development of the law is still in its infancy stage and that legislatures throughout the world are increasingly trying to catch up and adapt their legal system to new virtual communications technology. As our Supreme Court itself recognized in *Society of Composers, Authors & Music Publishers of Canada v. Canadian Assn. of Internet Providers*, 2004 SCC 45, [2004] 2 S.C.R. 427 (S.C.C.) at paragraph 41:

> The issue of global forum shopping for actions for Internet torts has scarcely been addressed. The availability of child pornography on the Internet is a matter of serious concern. E-commerce is growing. Internet liability is thus a vast field where the legal harvest is only beginning to ripen.

23     There are three ways in which a court may assert jurisdiction over an out-of-country defendant. It may assume jurisdiction if the defendant is physically present within the territory of the court. Second, the foreign resident may consent to submit the dispute to the Canadian court's jurisdiction. Third, the court may declare itself competent to hear the case, in appropriate circumstances. This case raises the third possibility.

24     While the common law rules governing these jurisdictional issues had been quite stable in the nineteenth and twentieth centuries, the Supreme Court of Canada revisited them in four seminal decisions to ensure they were in keeping with modern social and economic realities.

25     In *Morguard Investments Ltd. v. De Savoye*, [1990] 3 S.C.R. 1077 (S.C.C.), Justice Gérard La Forest recognized that it is unfair to compel a plaintiff to begin an action in the province where the defendant resides, whatever the inconvenience and costs this may bring. On the other hand, he also acknowledged that fairness to the defendant requires that the judgment be issued by a court acting with properly restrained jurisdiction. This equilibrium, in his view, could be achieved by the necessity of establishing what he called "a real and substantial connection." As he wrote, at paragraph 51:

> It seems to me that the approach of permitting suit where there is a real and substantial connection with the action provides a reasonable balance between the rights

**Desjean v. Intermix Media Inc., 2006 FC 1395, 2006 CF 1395, 2006 CarswellNat...**
2006 CarswellNat 3918, 2006 CarswellNat 5595, 2006 FC 1395, 2006 CF 1395...

Case 3:16-mc-80150-JSC   Document 8-12   Filed 09/08/16   Page 5 of 8

of the parties. It affords some protection against being pursued in jurisdictions having little or no connection with the transaction or the parties. In a world where even the most familiar things we buy and sell originate or are manufactured elsewhere, and where people are constantly moving from province to province, it is simply anachronistic to uphold a "power theory" or a single situs for torts or contracts for the proper exercise of jurisdiction.

26     Both in *Morguard*, above, *Tolofson v. Jensen,* [1994] 3 S.C.R. 1022 (S.C.C.), and in *Hunt v. T & N plc,* [1993] 4 S.C.R. 289 (S.C.C.), the Court affirmed that the same test and the same need for restraint apply to both assumed jurisdiction and jurisdiction for recognition and enforcement purposes. Finally, in *Amchem Products Inc. v. British Columbia (Workers' Compensation Board),* [1993] 1 S.C.R. 897 (S.C.C.), the Supreme Court elaborated the doctrine of *forum non conveniens*, according to which a court can use its discretion to decline jurisdiction where the case would be more appropriately dealt with in another jurisdiction.

27     The language the Supreme Court used in all these cases to describe a real and substantial connection was deliberately vague, allowing for flexibility in the application of the test and for its adaptability to new situations. While maintaining a flexible approach, the Ontario Court of Appeal, in *Muscutt v. Courcelles* (2002), 213 D.L.R. (4th) 577 (Ont. C.A.), developed eight factors which courts should look to when dealing with questions of assumed jurisdiction, in order to ensure jurisprudential clarity and certainty. These factors, which were applied in four companion cases decided the same day (*Leufkens v. Alba Tours International Inc.* (2002), 213 D.L.R. (4th) 614 (Ont. C.A.); *Lemmex v. Bernard* (2002), 213 D.L.R. (4th) 627 (Ont. C.A.); *Sinclair v. Cracker Barrel Old Country Store Inc.* (2002), 213 D.L.R. (4th) 643 (Ont. C.A.); *Gajraj v. DeBernardo* (2002), 213 D.L.R. (4th) 651 (Ont. C.A.)), are:

   1. The connection between the forum and the plaintiff's claim;

   2. The connection between the forum and the defendant;

   3. Unfairness to the defendant in assuming jurisdiction;

   4. Unfairness to the plaintiff in not assuming jurisdiction;

   5. Involvement of other parties to the suit;

   6. The court's willingness to recognize and enforce an extra-provincial judgment rendered on the same jurisdictional basis;

   7. Whether the case is interprovincial or international in nature; and

   8. Comity and the standards of jurisdiction, recognition and enforcement prevailing elsewhere.

28     In the present case, the application of these factors, none of which is determinative in and of itself, clearly indicates that the connection between the forum and the defendant or between the forum and the subject matter is not substantial enough to warrant this Court's intervention.

29     While the plaintiff allegedly suffered damages to a computer located in Canada, that is not enough to confirm this Court's jurisdiction. There is clearly no connection between the forum and the defendant. Intermix has no servers in Canada. The impugned Website is not hosted on servers located in Canada, but on a server situated in California.

30     Intermix does not have, nor has it ever had, any employees in Canada. Intermix currently has a contractual relationship with two independent contractors in Canada that provide newsletter edition services unrelated to the matters at issue in the present litigation.

31     Intermix does not have any offices in Canada. It did, in the past, subsidize office space for contractors working on two websites Intermix had purchased, but ceased doing so more than three years ago and has never itself maintained or leased office space in Canada.

32     Further, Intermix has in no way availed itself of Canadian laws as it does not do any business in Canada through the Website at issue.

33     Intermix has no bank accounts in Canada. Intermix does not pay taxes to either the federal government or any provincial government and it is not registered for GST or PST/HST purposes. Intermix is not registered as doing business in any Canadian jurisdiction.

34     Intermix has no direct advertising, marketing or solicitation aimed at the Canadian market. No person affiliated with Intermix, either directly or indirectly, as an employee or director, has ever attended trade shows or any other Internet industry promotional events in Canada. The only three transactions which Intermix entered into with

Case 3:16-mc-80150-JSC Document 8-12 Filed 09/08/16 Page 6 of 8

Desjean v. Intermix Media Inc., 2006 FC 1395, 2006 CF 1395, 2006 CarswellNat...
2006 CarswellNat 3918, 2006 CarswellNat 5595, 2006 FC 1395, 2006 CF 1395...

Canadian companies were for short-term purposes and fall far short of establishing a significant connection between Canada and Intermix.

35     Furthermore, it would be manifestly unfair to subject Intermix to this Court's jurisdiction since it would, in effect, mean a U.S.-based operator of a website, with no business assets in Canada and no physical presence in the jurisdiction, could be sued in this country as well as in any other country from which a plaintiff might choose to download its products. Despite the inconvenience for plaintiffs in similar situation of having to pursue their claims in foreign jurisdictions, this is only one factor to be taken into consideration. As the law now appears to stand, this is not enough to bring a claim within the jurisdiction of a Canadian court. It would put much too great an onus on foreign website operators or any foreign commercial undertakings with no real presence in Canada which happen to deal with Canadian residents.

36     With respect to the fourth factor, Intermix could not reasonably expect to be sued in Canada for allegedly breaching the criminal provisions of Canadian competition legislation because of alleged false advertising on its website — one which is solely supported by a server located in the U.S. Clearly, any alleged false representations, if made, were made by Intermix in the U.S., hosted by a server situated in the U.S. and thus not within this Court's jurisdiction. Jurisdiction cannot be founded simply upon the fact that the plaintiff was in Canada when he downloaded the foreign content. Plaintiff's inconvenience in suing Intermix in the U.S. is also insufficient to justify this Court's jurisdiction.

37     The sixth factor also favors Intermix. The *Foreign Extraterritorial Measures Act*, R.S.C. 1985, c. F-29, is a clear expression by Canada that foreign antitrust judgments involve its national interests. More specifically, paragraph 8(1)(a) of the Act allows the Attorney General of Canada to declare, in appropriate circumstances, that a foreign antitrust judgment should not be "recognized or enforceable in any manner in Canada." If Canada reserves the right to refuse enforcement of American antitrust judgments, this Court should not be placed in the position of applying Canadian competition law to American corporations doing business in the U.S. and having no assets in Canada, thereby compelling a plaintiff to seek enforcement in the U.S. of a Canadian antitrust judgment.

38     Finally, the seventh and the eighth factors lead to the same conclusion. As the Ontario Court of Appeal recognized in *Muscutt*, above, at paragraph 95, "[t]he decisions in *Morguard*, *Tolofson* and *Hunt* suggest that the assumption of jurisdiction is more easily justified in interprovincial cases than in international cases." Moreover, there are only limited circumstances where damages sustained within a jurisdiction because of a wrong committed elsewhere would be accepted as a basis for assumed jurisdiction (*Lemmex*, above, at paragraph 48).

39     One of the first and only Canadian cases on Internet jurisdiction is that of *Braintech Inc. v. Kostiuk* (1999), 171 D.L.R. (4th) 46 (B.C. C.A.). In that case, the British Columbia Court of Appeal stated that whether an Internet presence of a non-resident can constitute a real and substantial connection with the forum will depend upon the character of the website. This includes whether the site is passive, is used to interact with residents of Canada, or is used to conduct business with Canadian residents. Beyond that case, Canada's jurisprudence is essentially devoid of any substantial guidance on the question of Internet jurisdiction.

40     American courts have dealt with this issue, however, and they have developed an approach that is quite instructive for the purpose of this case. It is now well established that the due process clause requires that a defendant, if not present in the state, have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The "minimum contacts" required can be satisfied either through contacts sufficient to support specific jurisdiction, or contacts that adequately support general jurisdiction. General jurisdiction will attach where the defendant's contacts with the forum state are not related to the plaintiff's cause of action, but are continuous and systematic. Specific jurisdiction arises when the defendant has purposefully directed activities toward the forum state from which the litigation arises or to which it relates: *People Solutions Inc. v. People Solutions Inc.* [(July 25, 2000), Doc. 399-CV-2339-L (U.S. Dist. Ct. N.D. Tex. 2000)]; 2000 U.S. Dist. LEXIS 10444; *Millennium Enters Inc. v. Millennium Music LP*, 33 F.Supp.2d 907 (U.S. Dist. Ct. 1999), 1999 U.S. Dist. LEXIS 3709; *Bancroft & Masters Inc. v. Augusta National Inc.*, 223 F.3d 1082 (U.S. C.A. 9th Cir. 2000), 2000 U.S. App. LEXIS 20917; *Calder v. Jones*, 465 U.S. 783 (U.S. S.C. 1984).

41     Considering the absence of Intermix's real, concrete and ongoing presence on Canadian soil, it seems to me the only possible way to conclude that Intermix has minimum contact with Canada is through the specific jurisdiction theory. In *Millennium Enters Inc.*, above, the U.S. District Court for the District of Oregon summed up the various possibilities in this respect in the following way, at pages 915-916:

Case 3:16-mc-80150-JSC   Document 8-12   Filed 09/08/16   Page 7 of 8

**Desjean v. Intermix Media Inc., 2006 FC 1395, 2006 CF 1395, 2006 CarswellNat...**
2006 CarswellNat 3918, 2006 CarswellNat 5595, 2006 FC 1395, 2006 CF 1395...

At one end of the scale are circumstances where a defendant "conducts business" over the Internet with residents of the forum, allowing for the assertion of personal jurisdiction in most cases. *Zippo*, 952 F. Supp. at 1124. In such situations, the assertion of jurisdiction is almost always proper. At the opposite end are situations where a defendant simply posts information on a Web site which is accessible to users in the forum state as well as others. "A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." Id. In the middle are situations where a defendant operates an interactive Web site, allowing a user to exchange information with the host computer. In such a case, a court must review the "level of interactivity and commercial nature of the exchange of information" to determine whether jurisdiction should be exercised. Id.

42   The record in the present case does not allow me to come to the conclusion that the websites Intermix operates are interactive in nature. These websites do not allow users to communicate and exchange information with the sponsors of the site, or to order products online. But even if they could be characterized in such a way, I do not think Intermix could be found to have the level of interactivity with Canada that could justify a finding of minimum contact. The software that can be downloaded from Intermix's websites is free, there has been no targeting of Canada or of Canadian consumers in any specific way, there is no specific content for a Canadian audience, and Intermix has never purposely availed itself of Canada's laws. Bearing in mind that the test to find a defendant has minimum contact must necessarily be more stringent when a foreign country is involved (as opposed to another state in the same country), I am unable to conclude that Intermix has minimum contact with Canada or with the subject matter of the present claim.

43   Even if I were to conclude that this Court can assume jurisdiction, it would not be reasonable to do so as there is another more appropriate forum capable of assuming jurisdiction. As Justice John Sopinka explained in *Amchem*, above, at paragraph 20, "[f]requently there is no single forum that is clearly the most convenient or appropriate for the trial of the action but rather several which are equally suitable alternatives." In those cases, courts have developed several factors to determine the most appropriate forum for the action. In *Muscutt*, above, at paragraph 41, Justice Robert Sharpe gave a non-exhaustive list of the factors to be taken into consideration:

- The location of the majority of the parties;

- The location of key witnesses and evidence;

- Contractual provisions that specify applicable law or accord jurisdiction;

- The avoidance of a multiplicity of proceedings;

- The applicable law and its weight in comparison to the factual questions to be decided;

- The geographical factors suggesting the natural forum;

- Whether declining jurisdiction would deprive the plaintiff of a legitimate juridical advantage available in the domestic court.

44   In the present case, at least two factors strongly suggest that California (or, possibly, another U.S. state) would be a better forum to hear a claim related to Intermix's allegedly anticompetitive behaviour. The evidence that Mr. Desjean is seeking from Intermix is presumably all located in the U.S., as well as the key witnesses who could testify in relation to that evidence. There is also a clause in the Licence Agreement which provides that the laws of the State of California will govern the agreement, without giving effect to any conflict of law principles.

45   In light of the foregoing, I do not think that this Court could, or even should, assume jurisdiction over Mr. Desjean's claim. As a result, there is no necessity to pronounce on Intermix's subsidiary arguments - that is, whether the statement of claim is frivolous or vexatious and constitutes an abuse of the process of the Court. Nor is it relevant to determine if this Court would be acting within the confines of section 101 of the *Constitution Act, 1867* if it were to rule on this claim. This question can only be addressed properly if it is first decided that a Canadian court is a proper forum for a claim of this nature.

46   As a result, the statement of claim must be struck for this Court's lack of jurisdiction over the defendant and the matter. Consequently, the motion for the certification of this action as a class action must be dismissed, as it does not meet the requirements set out in rule 299.18 of the *Federal Courts Rules*, SOR/2002-417, s. 17 as amended. In accordance with Rule 299.41(1), no order is made as to costs.

**Desjean v. Intermix Media Inc., 2006 FC 1395, 2006 CF 1395, 2006 CarswellNat...**
2006 CarswellNat 3918, 2006 CarswellNat 5595, 2006 FC 1395, 2006 CF 1395...

Case 3:16-mc-80150-JSC   Document 8-12   Filed 09/08/16   Page 8 of 8

**Judgment**

*THIS COURT ORDERS THAT:* The statement of claim must be struck for this Court's lack of jurisdiction over the defendant and the matter. Consequently, the motion for the certification of this action as a class action must be dismissed, as it does not meet the requirements set out in rule 299.18 of the *Federal Courts Rules*, SOR/2002-417, s. 17 as amended. In accordance with Rule 299.41(1), no order is made as to costs.

*Motion granted.*

---

**End of Document**　　Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.