UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGITAL SHAPE TECHNOLOGIES, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>GLASSDOOR, INC.,<br><br>　　　　　Defendant. | Case No.16-mc-80150-JSC<br><br>**ORDER RE: DIGITAL SHAPE TECHNOLOGIES INC. AND RADOMIR NIKOLAJEV'S MOTION TO COMPEL**<br><br>Re: Dkt. No. 5 |

The dispute before the Court concerns a subpoena served pursuant to 28 U.S.C. § 1782. (Dkt. No. 4.) The Court previously granted Petitioners' application to issue a subpoena to non-party Glassdoor, Inc., ("Glassdoor") regarding a review posted on Glassdoor's website. The review is the subject of a defamation action in Canada. Glassdoor objected to the subpoena and Petitioners now move to compel compliance. (Dkt. No. 5.) Having considered the parties' briefs and having had the benefit of oral argument on October 6, 2016, the Court GRANTS the motion to compel.

**BACKGROUND**

Digital Shape Technologies, Inc. ("DST"), and its president, Radomir Nikolajez, (together "DST" or "Petitioners") are plaintiffs in an action in the Quebec Superior Court, District of Montreal, Canada (the "Canadian Action"). *See Digital Shape Technologies Inc. and Radomir Nikolajev v. Kelly Mikulec*, Case No. 500-17-080160-131. In the action, DST alleges that Kelly Mikulec, a former DST employee, made false and defamatory statements on Glassdoor's Canadian website about DST and Nikolajev. (Dkt. No. 2 at ¶ 6.) Glassdoor is not a party to the Canadian Action.

DST sought documents from Glassdoor in support of its claim for damages. (Dkt. No. 3-1

at ¶ 3.) Glassdoor declined to provide the documents voluntarily so DST filed an application in the Canadian Action to obtain the discovery. (*Id*.) Glassdoor argued in response that it was not subject to jurisdiction in Canada. (*Id*.; Ex. A at ¶ 5.) The Canadian court nonetheless granted DST's application noting that Ms. Mikulec had admitted she made the statements at issue (known as the "March 7, 2013 review"). (*Id*. at ¶ 4.) The court subsequently issued an amended order regarding the discovery which DST served by U.S. mail on Glassdoor. (Dkt. No. 3-1 at 8 (Ex. B).)

After Glassdoor failed to provide the requested discovery, DST filed the underlying ex parte application in this Court on July 15, 2016. (Dkt. No. 1.) It asked the Court to permit DST "to subpoena documents from Glassdoor consistent with the order made by the Quebec court, as well as the testimony of a custodian of records to establish foundation for the documents." (Dkt. No. 1 at 10.) The Court granted the application concluding that DST had satisfied the minimum statutory requirements for relief, but noted that Glassdoor had not had an opportunity to respond to whether the request was unduly burdensome or intrusive and ordered that Glassdoor be given 30 days to do so following service of the subpoena. (Dkt. No. 4.) Glassdoor objected to the subpoena (Dkt. No. 5-1 at Ex. B) and DST filed the underlying motion to compel compliance (Dkt. No. 5). Prior to filing the motion, the parties met and conferred and resolved all but two of DST's document requests. (Dkt. No. 5-1 at ¶¶ 3-7.)

**LEGAL STANDARD**

"Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege." *See In re Ex Parte Application of Apple Inc., Apple Retail Ger. GMBH, and Apple Sales Int'l*, Case No. 3:12–mc–80013–JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (citing 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246–47, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004)). A district court may issue such an order where: (1) the discovery is sought from a person residing in the district to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782(a).

A litigant in a foreign action qualifies as an "interested person" under Section 1782. *See Intel*, 542 U.S. at 256. To apply for discovery pursuant to Section 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Id.* at 258-59. Instead, all that is necessary is that a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *Id.* at 259 (holding that discovery was proper under Section 1782 even though the applicant's complaint was still only in the investigative stage).

The court retains wide discretion to grant discovery under Section 1782. *See Intel*, 542 U.S. at 260-61. In exercising its discretion, the court considers the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65; *see also In re Request for Judicial Assistance from the Seoul Dist. Crim. Ct.*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted) (noting that the only requirements explicit in the statute are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal, but also holding "that the investigation in connection with which the request is made must be related to a judicial or quasi-judicial controversy").

## DISCUSSION

The Court previously concluded that Petitioners satisfied the minimum requirements of Section 1782: (1) Glassdoor's principal place of business was in Mill Valley, California which is within the Northern District of California; (2) the requested discovery was for use in a Canadian lawsuit; and (3) DST is a party to the Canadian proceeding which arises from allegedly defamatory statements that were made about DST on Glassdoor's Canadian site. The Court noted that the *Intel* factors weighed in Petitioners' favor, although the ex parte nature of the request limited the information available regarding the intrusiveness of the request. (Dtk. No. 4.) It is the last factor—whether the request is unduly intrusive or burdensome—that the parties dispute.

DST's document requests Nos. 3 and 4 are at issue. They seek the following:

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show the email address and IP address of the user who posted the March 7, 2013 review and rating of Digital Shape Technologies Inc. (attached hereto as Exhibit 1), as well as the URL corresponding to their submission.

(Dkt. No. 5-1 at 6.)

**REQUEST FOR PRODUCTION NO. 4:**

The Google Analytics statistics reports relating to the March 7, 2013 review and rating of Digital Shape Technologies Inc. (Exhibit 1), including the number of users having viewed the March 7, 2013 review and rating (Exhibit 1), the time and date of viewing, the city associated with the IP addresses of these users, as well as their IP addresses.

(Dkt. No. 5-1 at 6.)

Petitioners contend that they need documents responsive to these requests to support their damages claim and determine whether any actual or potential clients, employees, service providers, or competitors read, commented on, or endorsed the posts. Glassdoor objects to production on the grounds that: (1) Petitioners have no current need for the discovery sought, (2) the discovery violates non-parties' privacy rights, and (3) the discovery seeks confidential and proprietary information.

**A. The Canadian Court's Prior Order**

As a threshold matter, Petitioners argue that the Court must defer to the Canadian court's ruling regarding the relevance of this discovery. The Canadian court granted DST's request for discovery and ordered Glassdoor to provide:

> (1) a copy of all reviews, ratings and comments with respect to Digital Shape Technologies Inc, notwithstanding the fact that they have since been removed;
> (2) the submission (posting) date and time of the reviews, ratings and/or comments as well as the period during which they were published;
> (3) the email address and IP address of the user who posted the March 7, 2013 review and rating [], as well as the URL corresponding to their submission;
> (4) the Google Analytics statistics reports relating to the March 7, 2013 review and rating [], including the number of users having reviewed the March 7, 2013 review and rating [], the time and date of viewing, the city associated with the IP addresses of these users, as well as their IP addresses;
> (5) the number of individuals having indicated that the March 7, 2013 review and rating [] was "helpful", their IP addresses as well as the URL corresponding to the submission of such forms, and the

4

submission date

(Dkt. No. 3-1 at ¶ 25.) The court also ordered "that the IP address be held under seal and be only available to the attorneys of the parties and their experts subject to complete confidentiality." (*Id.* at ¶ 26.)

Petitioners argue that interests of comity compel this Court to defer to the Canadian court's order and reasoning. While the Court is mindful of the interests of comity, the *Intel* court was clear that "a district court [may, but] is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264. Indeed, the receptiveness of the foreign tribunal is just one of the discretionary factors courts should consider when reviewing 1782 applications: "a court presented with a § 1782(a) request *may* take into account...the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id*. (emphasis added); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001)("the district court was not obliged to grant their application simply by virtue of the English court's order or for any other reason."); *Comcast Cable Commc'ns, LLC v. Hourani*, No. 15-CV-1724 (RMC), 2016 WL 2992053, at *5 (D. D.C. May 23, 2016) (granting declaratory judgment declining to enforce an order from a United Kingdom court requiring Comcast to provide subscriber information for a third-party).

The Court thus declines to blindly defer to the Canadian court's ruling and reviews the requests under the rules applicable to discovery here.

**B. Intrusiveness of the Discovery Sought**

Courts look to the Federal Rules of Civil Procedure to determine the proper scope of discovery arising out of a § 1782 application. *In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019-20 & n.3 (9th Cir. 1994); *see also Knaggs v. Yahoo! Inc.*, No. 15-MC-80281-MEJ, 2016 WL 3916350, at *7 (N.D. Cal. July 20, 2016) (collecting cases). Federal Rule of Civil Procedure 26(b) allows a party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense provided that it is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006). "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales*, 234 F.R.D. at 680 (citation omitted). The party issuing the subpoena has the burden of demonstrating the relevance of the information sought, but once that showing is made, the burden shifts to the recipient to establish that the requested discovery should be denied. *Arizona v. Arpaio*, 314 F.R.D. 664, 667 (D. Ariz. 2016).

"[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 246. Requests are "unduly intrusive and burdensome where they are not narrowly tailored, request confidential information[,] and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Appl. of Qualcomm Inc.*, 162 F.Supp.3d 1029, 1043 (N.D. Cal. Feb. 18, 2016); *see also In re Appl. of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006) (courts must look at whether the discovery requested is "sufficiently tailored to the litigation issues for which production is sought.").

**1) Request No. 3**

Glassdoor's primary objection to the request for the email and IP address of the user who posted the March 7, 2013 review is that Petitioners do not need the information since Ms. Mikulec already admitted she authored the review. Petitioners respond that they nonetheless need the email and IP addresses: (1) in case Ms. Mikulec seeks to recant her admission, (2) because it may lead to others who participated in the posting, and (3) to determine whether Ms. Mikulec sought to bolster her reviews by liking her review.

Under the federal rules a party has the right to the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The email and IP addresses associated with the March 7, 2013 review are relevant to Petitioners' defamation claim based on that review. Ms. Mikulec's admission that she

authored the review does not make the IP address and email address irrelevant. Glassdoor offers no evidence that Ms. Mikulec's authorship has been found as a matter of law; that is, that the trier of fact is required to find that she authored the review. Petitioners are therefore entitled to evidence relevant to prove that fact.

Glassdoor's insistence that a privacy right protects this information is unpersuasive. These circumstances do not involve anonymous speech—Ms. Mikulec admitted she authored the March 7, 2013 review and thus no longer has an expectation of anonymity. Nor does she have an expectation of privacy with respect to her email address or IP address. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).; *see also Chevron Corp. v. Donziger*, No. 12-MC-80237 CRB (NC), 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013) (concluding that production of a user's email address and IP address to a third-party "viscerates any subjective expectation of privacy.").

Nor does this discovery implicate the First Amendment right of some unknown third-party speaker to remain anonymous, assuming that the discovery reveals Ms. Mikulec is not the review author despite her admission. Anonymous speech on the internet, as other types of anonymous speech, enjoys First Amendment protection and the anonymous speaker should not be identified unless certain requirements are met. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). In the cases upon which Glassdoor relies, the discovery sought was of the user's identity. *See, e.g.*, *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (seeking to compel Twitter to reveal identifying information for the anonymous Twitter users who are the Doe defendants); *Kechara House Buddhist Ass'n Malaysia v. Does*, No. 15-CV-00332-DMR, 2015 WL 5538999, at *1 (N.D. Cal. Sept. 18, 2015) (seeking to "unearth the identity of the five unnamed defendants"); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) (seeking identification of anonymous posters of messages critical of corporation). Here, in contrast, Petitioners seek the user's email address and IP address—not the speaker's identity. While once Petitioners have the IP address and email address they could seek a further subpoena that would identify the user, that request is not yet before the Court. And it will likely never be before the Court as at oral argument Petitioners represented that they will not take

the further step of seeking the user's identity. That concession does not make the user's email and IP address irrelevant; such information is relevant to confirm Ms. Mikulec's admission and make it less likely she will recant at trial.

Finally, if—as Glassdoor's counsel suggested at oral argument—the anonymous user opened his or her Glassdoor account using an email address that contains his or her first and last name, i.e., johndoe@gmail.com, then he or she is not anonymous. As the court in *Chevron* noted in ordering production of IP logs and email subscriber information pursuant to a subpoena, while "the Doe movants may believe that using their email addresses will protect their identities, that belief is simply not reflected by the reality of the world we live in. Email addresses are labels we voluntarily present to the outside world, through which we allow the world to contact us, and in that way identify us." *Chevron*, 2013 WL 4536808, at *8.

Glassdoor shall provide Petitioners with the information responsive to Request No. 3.

**2) Request No. 4**

Glassdoor also objects on privacy grounds to providing the IP addresses for the users who viewed Ms. Mikulec's review because once Petitioners have the IP addresses they can seek to subpoena the Internet Service Providers (ISPs) associated with the IP addresses to discover the identity of any individual who viewed the review. At oral argument, however, Petitioners represented that they will not seek to subpoena the identities of those who read the review; instead, using the IP addresses, and in particular, the geographical location and number of different IP addresses utilized to view the reviews, they may be able to argue that they lost business because of Ms. Mikulec's review. This information is thus relevant to damages.

Further, as noted above, there is no right to privacy with respect to an IP address because an IP address alone does not provide any personal identifying information. It may be used to obtain such information, but the IP address itself is not private. *See Forrester*, 512 F.3d at 510; *see also Chevron*, 2013 WL 4536808, at *10 ("There is no reasonable expectation of privacy in the routing and identifying information given to the ISPs to connect to and relay messages on the internet."). Glassdoor's objection is thus premature.

Glassdoor's objection to providing the statistical information regarding the review is

likewise unavailing.  Glassdoor suggests that the statistical information is confidential and propriety and that if competitors had access to information regarding the size of Glassdoor's user base or location of its users, the competitor could draw inferences regarding the success of Glassdoor's business strategies.  It is difficult to see how a competitor could glean any useful information from statistics regarding one review from March of 2013.  Nonetheless, any such concern can be addressed through production of this information pursuant to a protective order.  Thus, because information regarding the number of people who viewed the review is relevant to the question of damages, Glassdoor shall provide this information subject to a protective order.

Glassdoor shall respond to Request No. 4.

## CONCLUSION

For the reasons stated above, Petitioners' motion to compel is GRANTED.  Petitioners and Glassdoor shall meet and confer regarding a stipulated protective order and Glassdoor shall provide the responsive information within 21 days of the date of this Order.

This Order disposes of Docket No. 5.

**IT IS SO ORDERED.**

Dated: October 12, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge